**IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| KATHRYN L. FITZGIBBON,<br>LAUREN M. FLEMING, and<br>ALL SIMILARLY SITUATED CURRENT<br>AND FORMER EMPLOYEES OF<br>ING BANK, fsb, AND ITS WHOLLY<br>OWNED SUBSIDIARIES,<br>　　　Plaintiffs, | *<br>*<br>*<br>*<br>*<br>*<br>* | |
| | * | C.A. NO. 07-735 (JJF) |
| | * | |
| 　　　　　　v. | *<br>* | |
| ING BANK, fsb, (a Delaware corporation),<br>and ALL OTHER WHOLLY OWNED<br>SUBSIDIARIES OF ING BANK, fsb,<br>WHICH HAVE EMPLOYED<br>SIMILARLY  SITUATED CURRENT<br>AND FORMER EMPLOYEES SINCE<br>November 15, 2004, | *<br>*<br>*<br>*<br>*<br>*<br>*<br>* | JURY TRIAL DEMANDED |
| 　　　Defendants. | * | |

**PLAINTIFFS' OPENING BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS
AND MOTION FOR JUDGMENT ON THE PLEADINGS**

Respectfully submitted,

Timothy J. Wilson, Esquire (#4323)
Jeffrey K. Martin, Esquire (#2407)
*MARTIN & WILSON, P.A.*
1508 Pennsylvania Avenue
Wilmington, Delaware 19806
(302) 777-4681 phone
(302) 777-5803 facsimile
twilson@martinandwilson.com
jmartin@martinandwilson.com
*Attorneys for Plaintiffs*

Dated:  January 9, 2008

## I. INTRODUCTION

Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c), Plaintiffs Kathryn L. Fitzgibbon and Lauren M. Fleming ("Plaintiffs"), submit the following in support of their Motion to Dismiss Defendant ING Bank, fsb's ("Defendant") Counterclaims and Motion for Judgment on the Pleadings.

## II. NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs filed their Complaint on November 16, 2007 alleging violations of the Fair Labor Standards Act, as amended, 29 U.S.C. § 216(b) ("FLSA"), 28 U.S.C. § 1331 and for common law breach of contract pursuant to this Court's supplemental jurisdiction found at 28 U.S.C. § 1367. (*See, Ex. A*).

On December 10, 2007 Defendant filed an Answer to the Complaint and Counterclaims alleging Fraudulent Misrepresentation and Breach of the Covenant of Good Faith and Fair Dealing arising from Plaintiffs' execution of severance agreements with Defendants. (*See, Ex. B*).

This is Plaintiffs' Opening Brief in support of their Motion to Dismiss Defendant's Counterclaims and Motion for Judgment on the Pleadings.

## III. SUMMARY OF ARGUMENT

1.    Defendant's Counterclaims must be dismissed for failing to state a claim upon which relief can be granted because, as a matter of law, the releases obtained by Defendant contain illegal provisions rendering them void as against public policy, and to

recognize Defendant's Counterclaims would be akin to validating those illegal and void provisions.

2.      The Severance Agreements contain illegal terms, which according to the Severance Agreements, must be stricken from the contracts and the remainder of the Severance Agreements enforced.

## IV. STATEMENT OF FACTS

Plaintiffs are former employees of Defendant who did not receive overtime compensation due to them under the FLSA. (Compl. at ¶¶ 6 – 8, 19, 39 - 40). On August 27, 2007, Defendant terminated Plaintiffs' employment. (Counterclaim at ¶ 7). In connection with their termination, Defendant offered Plaintiffs severance packages in the form of written severance agreements ("Severance Agreements"). (Counterclaim at ¶ 8). The Severance Agreements contain the clause:

> WHEREAS, the parties now desire and agree to fully and finally resolve any and all existing or potential issues, claims, grievances and disputes that relate to or arise out the Employee's employment relations with the Bank or the termination therof by the Bank.

(Counterclaim at ¶ 9).   On September 9, 2007, Plaintiffs each executed separate Severance Agreements with Defendant entitling them to additional compensation and benefits. (Compl. at ¶ 41).   Shortly after the Severance Agreements were executed, Defendant began paying Plaintiffs according to the terms of those Severance Agreements. (Compl. at 44; and Counterclaim at ¶ 26).

On October 5, 2007 Plaintiffs' attorney a sent letters to Defendant on behalf of Plaintiffs identifying Defendant's violations of the FLSA with respect to Plaintiffs'

employment with Defendant. (Compl. at ¶ 45). Immediately after Defendant received those correspondences, it ceased performing under the terms of severance agreements. (Compl. at 46).

## V. ARGUMENT

### A.    Motion to Dismiss

#### 1.    Motion to Dismiss Standard

"The standards for determining a motion to dismiss a counter-claim are the same as for determining a motion to dismiss a complaint." Milton Roy Co. v. Bausch & Lomb, Inc.,418 F.Supp. 975, 978 (D. Del. 1976). When "analyzing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all material allegations of the [counterclaim] and it must construe the [counterclaim] in favor of the [counterclaimant]." Shamrock Holdings Inc. v. Arennson, 456 F.Supp. 2d 599, 605 (D. Del. 2006)(bracketed language supplied). "A [counterclaim] should be dismissed only if, after accepting as true all of the facts alleged in the [counterclaim], and drawing all reasonable inferences in the [counterclaimant's] favor, no relief could be granted under any set of facts consistent with the allegations of the [counterclaim]." Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir.1998)(bracketed language supplied). "Claims may be dismissed pursuant to a Rule 12(b)(6) motion only if the [counterclaimant] cannot demonstrate any set of facts that would entitle him to relief." Shamrock, 456 F.Supp. 2d at 605 (bracketed language supplied).

#### 2.    *Defendant's Counterclaims Must Be Dismissed For Failing to State a Claim Upon Which Relief Can Be Granted Because, as a Matter of Law, the Releases Obtained by Defendant Contain Illegal Provisions Rendering Them Void as Against Public Policy, and to Recognize Defendant's Counterclaims Would be Akin to Validating Those Illegal and Void Provisions.*

3

It is well settled that an employee may not waive his or her right to file a claim under the FLSA. <u>Brooks v. Village of Ridgefield Park</u>, 185 F.3d 130, 136 (3rd Cir. 1999). Private settlement agreements of FLSA cases are void as against public policy – and have been for over 60 years. <u>Brooklyn Savings Bank v. O'Neil</u>, 324 U.S. 697, 704 (1945); <u>Barrentine v. Arkansas-Best Freight System, Inc.</u>, 450 U.S. 728, 740 (1981); <u>Spanos Painting Contractors, Inc. v. Union Bldg. & Constr. Corp.</u>, 334 F.2d 457, 459 (2d Cir. 1964) ("[t]o permit a laborer to waive his rights under the act would undermine the very purpose of fair labor legislation"); <u>Stilwell v. Hertz Drivurself Stations</u>, 174 F.2d 714 (3rd Cir. 1949).

In <u>Brooklyn Savings Bank</u>, <u>supra</u>, an employee of the bank worked overtime for which his employer failed to compensate him. The bank computed the overtime owed to the employee and offered to pay him the amount owed in return for his signing a release of his claims against the bank in that regard. The employee agreed and waived his rights to assert further legal action against the employer. Thereafter, the employee sued the bank for statutory liquidated damages provided for in Section 16(b) of the FLSA.

The Court determined that waivers by employees to their rights under the FLSA were prohibited. 324 U.S. at 704, 713. "[A] statutory right conferred on a private party but affecting the public interest may not be waived or released if such waiver or release contravenes the statutory policy." <u>Id.</u> at 704.

Likewise, in <u>Schulte</u> <u>supra</u>, the United States Supreme Court invalidated a release/waiver by the employee for liquidated damages on his FLSA claim. Significant to the present case is the Court's recognition that the employee knew of his claim for liquidated damages under the FLSA prior to executing the agreement and affirmatively

4

waived that right, but later asserted a claim for the liquidated damages waived in the signed release. The Court permitted the claim to proceed. 328 U.S. at 117.

While the specific issue of fraud was not directly addressed by the Court in these cases, implicit in the decisions is there was no requirement by the Court that the employees pay back the moneys paid under the releases. Moreover, significant in the Schulte decision is the fact that both the employee and the employer knew of the employee's right to liquidated damages *prior to executing the release*. Thereafter, the parties negotiated the release terms and the employee knowingly waived his rights to assert such an action; yet that employee was permitted to prosecute a claim for those damages after receiving the benefit of the release agreement.

In this case, Defendant contends that Plaintiffs knew of their rights under the FLSA prior to executing the Severance Agreements, and it was this knowledge that forms the basis for its Counterclaims. Even if the Court accepts this as true, as Brooklyn Savings Bank, supra, and Shulte, supra, established, Plaintiffs knowledge of their FLSA rights prior to and contemporaneous with their execution of the agreement is of no moment in the present analysis. Clearly, no claim for fraud can lie when that claim is based upon an illegal term in a contract.

This concept is supported by Fineman v. Armstrong World Industries, Inc., 774 F.Supp. 225 (D. N.J. 1991). There, the court examined a situation where a party sought to pursue a tortuous interference claim by a seller of video magazine subscriptions against the buyer. The contract was determined to be illegal by the court because it was contrary to public policy. The court held that "an illegal contract, or one that is against

public policy, should not form the basis of such a claim because allowing the tortuous interference claims is akin to recognizing the contract."

While <u>Fineman</u> does not pertain to a claim for fraud, the case is analogous to the present case. A cause of action can not arise from an illegal contract. The rule in <u>Fineman</u> is supported by general rules of contract law. "The general rule of law is that a contract made in violation of a statute is void, and that, when a [party] cannot establish his cause of action without relying upon an illegal contract, he cannot recover." <u>Miller v. Ammon</u>, 145 U.S. 421, 426 (1892). Delaware courts will not enforce illegal contracts. <u>Della Corp. v. Diamons</u>, 210 A.2d 847, 849 (Del. 1965).

In the present case, Defendant's Counterclaims are necessarily based upon the basic premise that the Severance Agreements contained a waiver for FLSA claims and Plaintiffs waived those rights.[1] Without this basic premise, there is no underlying contract clause from which Defendant's Counterclaims may attach. However, as the courts have clearly held, Plaintiffs simply could not waive their rights to bring this action, *even if they intended to do so*, because waivers of FLSA rights are void as contrary to public policy. <u>Brooklyn Savings Bank</u>, <u>supra</u>, <u>Spanos Painting</u>, <u>supra</u>, and <u>Stilwell</u>, <u>supra</u>. Simply put, if FLSA waivers were included in the Severance Agreements, such

---

[1] Plaintiffs do not agree that a waiver of FSLA rights were intended to be included in the Severance Agreements. Paragraph 4 of each Severance Agreement specifically identifies virtually every viable cause of action capable of being legally released by an employee against her employer. They include claims for wrongful termination, tort and contract claims, discrimination claims based upon age, race, sex, religion, handicap, national origin, marital status or any other claim of employment discrimination under the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964 and 1991 as amended, the Employee Retirement Income Security Act, the Americans With Disabilities Act, the Rehabilitation Act of 1973 and the Family Medical Leave Act. The conspicuous absence of the waiver of claims under the FLSA is telling. Simply put, an employer as sophisticated as Defendant certainly was aware, or reasonably should have been aware, that an employee may not waive such a claim. Hence, Defendant intentionally excluded listing causes of action under the FLSA in the laundry list of employment statutes identified in ¶ 4 because including such language would effectively void the contract. For Defendants to feign surprise at this point and claim that it contemplated that all claims were waived in the agreement, even if illegal, is disingenuous.

inclusions, render the Severance Agreements illegal contracts as a matter of law because they violate public policy.

Because Defendant's Counterclaims for fraud and breach of the covenant of good faith and fair dealing arise from Plaintiffs asserting their rights under the FLSA, Defendant's Counterclaims must be foreclosed because the FLSA waivers render the contracts illegal. To hold otherwise would be akin to recognizing the validity of the waivers of Plaintiff's FLSA rights in the Severance Agreements.

### B.    Motion for Judgment on the Pleadings

#### 1.    *Motion for Judgment on the Pleadings Standard*

"A motion under Rule 12(c) is reviewed under the same standard as a motion to dismiss under Rule 12(b)(6)." Pfizer Inc. v. Ranbaxy Laboratories Ltd., 321 F.Supp.2d 612, 614 (D. Del. 2004). "When deciding a Rule 12(c) motion for judgment on the pleadings, a district court must view the facts and inferences to be drawn from the pleadings in the light most favorable to the non-moving party." Shamrock Holdings, Inc. v. Arenson, 456 F.Supp.2d 599, 604 (D. Del. 2006). "Judgment on the pleadings should be granted only if it appears beyond doubt that the [counterclaimant] can prove no set of facts in support of his claims which would entitle him to relief." Pfizer, 321 F.Supp.2d at 615 (quoting Conley v. Gibson, 355 U.S. 41, 45 (1957))(internal quotations omitted)(bracketed language supplied).

#### 2.    *The Severance Agreements Contain Illegal Terms Which Must Be Stricken From the Severance Agreements and the Remainder of the Severance Agreements Enforced*

7

In its Counterclaim, Defendant looks to the "Whereas Clauses" of the Severance Agreements as the bases upon which its Counterclaims arise. (See Ex C). Stated differently, Defendant contends that the waiver of Plaintiffs' FLSA rights is included in the "Whereas Clauses." [2] It is in light of the fact that waivers of FLSA rights are unenforceable and void as against public policy that the final Paragraph of the Severance Agreements must be read.

> If any terms or provisions of this Agreement are found null, void or inoperative, for any reason, the remaining provisions will remain in full force and effect.

(See, Ex. C at ¶ 13). According to the Severance Agreements own terms, and even accepting the averments in the Counterclaim as true; that the "Whereas Clauses" contain the waiver of rights to sue under the FLSA, those "Whereas Clauses" are null, void, inoperative *and* by the terms contained in ¶ 13 of the Severance Agreements, *must* be stricken from the Severance Agreements and the remainder of the Severance Agreements enforced "in full force and effect." (Id.).

Once the Severance Agreements are purged of any language or meaning pertaining to Plaintiffs' alleged waiver of their FLSA rights, Defendant's Fraud and Breach of Covenant of Good Faith and Fair Dealing claims are vitiated. As such, there is absolutely no basis upon which Defendant may validly withhold the consideration promised to Plaintiffs in the Severance Agreements. Therefore, Defendant is duty bound by the terms of the Severance Agreements to perform under those Agreements.

**WHEREFORE**, Plaintiffs respectfully request this Honorable Court to Dismiss Defendant's Counterclaims in their entirety and grant Plaintiffs' Motion for Judgment on

---

[2] Again, Plaintiffs do not agree that there was a waiver of FLSA claims anywhere in the Severance Agreements.

the Pleadings, thereby issuing an order commanding that Defendant perform its obligations to Plaintiffs under the Severance Agreements.

MARTIN & WILSON, P.A.

Timothy J. Wilson, Esquire (#4323)
Jeffrey K. Martin, Esquire (#2407)
1508 Pennsylvania Avenue
Wilmington, Delaware 19806
(302) 777-4681 phone
(302) 777-5803 facsimile
twilson@martinandwilson.com
jmartin@martinandwilson.com
*Attorneys for Plaintiffs*

Dated:  January 9, 2008

9

**IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE**

KATHRYN L. FITZGIBBON,        *
LAUREN M. FLEMING, and        *
ALL SIMILARLY SITUATED CURRENT *
AND FORMER EMPLOYEES OF      *
ING BANK, fsb, AND ITS WHOLLY   *
OWNED SUBSIDIARIES,        *
       Plaintiffs,          *
                       *      C.A. NO. 07-735 (JJF)
                       *

       v.                *
                       *

ING BANK, fsb, (a Delaware corporation), *
and ALL OTHER WHOLLY OWNED   *     JURY TRIAL DEMANDED
SUBSIDIARIES OF ING BANK, fsb,   *
WHICH HAVE EMPLOYED       *
SIMILARLY  SITUATED CURRENT    *
AND FORMER EMPLOYEES SINCE   *
November 15, 2004,          *
                       *
       Defendants.        *

## CERTIFICATE OF SERVICE

       I, Timothy J. Wilson, the undersigned counsel for Plaintiff in the above-captioned case, hereby certify that the foregoing *Plaintiff's Opening Brief in Support of Their Motion to Dismiss Defendant's Counterclaims and Motion for Judgment on the Pleadings* was filed via CM/EMF on January 9, 2008 to the following:

Darryl A. Parson, Esquire
Drinker Biddle & Reath LLP
1100 N. Market Street
Wilmington, DE 19801-1254

MARTIN & WILSON, P.A.

TIMOTHY J. WILSON, ESQUIRE
DE Bar I.D. No.: 4323
1508 Pennsylvania Ave
Wilmington, DE 19806
(302) 777-4681
twilson@martinandwilson.com
*Attorney for Plaintiffs*

DATED:        January 9, 2008

**EXHIBIT A**

07-735    COPY

# CIVIL COVER SHEET

JS 44 (Rev. 11/04)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS** Kathryn L. Fitzgibbon, Lauren M. Fleming and all similarly situated current and former employees of ING Bank, fsb and its wholly owned subsidiaries

**DEFENDANTS** ING Bank, fsb (a Delaware Corporation) and all other wholly owned subsidiaries of ING Bank, fsb, which have employed similarly situated current and former employees

**(b)** County of Residence of First Listed Plaintiff  New Castle County
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  New Castle County
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
1508 Pennsylvania Ave
Martin & Wilson, P.A.  Wilmington, DE 19806  (302) 777-4681

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** ☐ 310 Airplane | **PERSONAL INJURY** ☐ 362 Personal Injury - Med. Malpractice | ☐ 610 Agriculture ☐ 620 Other Food & Drug | ☐ 422 Appeal 28 USC 158 ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment ☐ 410 Antitrust ☐ 430 Banks and Banking |
| ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument | ☐ 315 Airplane Product Liability ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability ☐ 368 Asbestos Personal Injury Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 ☐ 630 Liquor Laws ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** ☐ 820 Copyrights ☐ 830 Patent | ☐ 450 Commerce ☐ 460 Deportation ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit ☐ 490 Cable/Sat TV |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** ☐ 861 HIA (1395ff) | ☐ 810 Selective Service ☐ 850 Securities/Commodities/ Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage ☐ 385 Property Damage Product Liability | **LABOR** ☐ 710 Fair Labor Standards Act ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI | ☐ 875 Customer Challenge 12 USC 3410 ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract ☐ 195 Contract Product Liability ☐ 196 Franchise | ☐ 360 Other Personal Injury | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) **FEDERAL TAX SUITS** ☐ 870 Taxes (U.S. Plaintiff | ☐ 891 Agricultural Acts ☐ 892 Economic Stabilization Act ☐ 893 Environmental Matters |
| **REAL PROPERTY** ☐ 210 Land Condemnation | **CIVIL RIGHTS** ☐ 441 Voting | **PRISONER PETITIONS** ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation ☐ 791 Empl. Ret. Inc. Security Act | or Defendant) ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure ☐ 230 Rent Lease & Ejectment ☐ 240 Torts to Land | ☐ 442 Employment ☐ 443 Housing/ Accommodations ☐ 444 Welfare | **Habeas Corpus:** ☐ 530 General ☐ 535 Death Penalty ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment ☐ 446 Amer. w/Disabilities - Other ☐ 440 Other Civil Rights | ☐ 550 Civil Rights ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of State Statutes |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
29 U.S.C. § 201 et seq.

Brief description of cause:
COLLECTIVE ACTION FOR OVERTIME COMPENSATION; INDIVIDUAL ACTIONS FOR RETALIATION

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint: BREACH OF CONTR

JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):

JUDGE                    DOCKET NUMBER

DATE  11/16/07          SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

District of              Delaware

KATHRYN L. FITZGIBBON, LAUREN M. FLEMING, and
ALL SIMILARLY SITUATED CURRENT AND FORMER
EMPLOYEES OF ING BANK, fsb, and ITS WHOLLY
OWNED SUBISDIARIES
              Plaintiffs,  V.

## SUMMONS IN A CIVIL CASE

ING Bank, fsb (a Delaware Corporation) and
ALL OTHER WHOLLY OWNED SUBSIDIARIES OF
ING BANK, fsb, WHICH HAVE EMPLOYED
SIMILARLY SITUATED CURRENT AND F
ORMER EMPLOYEES SINCE NOVEMBER 15, 2004,
              Defendants.

CASE NUMBER:      0 7 - 7 3 5 -

TO: (Name and address of Defendant)

ING Bank, fsb
The Ombudsman
ING DIRECT
1 S Orange St
Wilmington, DE 19801

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Timothy J. Wilson, Esquire
Martin & Wilson, P.A.
1508 Pennsylvania Ave
Wilmington, DE 19806
(302) 777-4681

an answer to the complaint which is served on you with this summons, within     30     days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

PETER T. DALLEO

| | |
|---|---|
| CLERK | DATE   11/16/07 |
| (By) DEPUTY CLERK | |

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KATHRYN L. FITZGIBBON, LAUREN M. FLEMING, and ALL SIMILARLY SITUATED CURRENT AND FORMER EMPLOYEES OF ING BANK, fsb, AND ITS WHOLLY OWNED SUBSIDIARIES, <br> Plaintiffs, | * * * * * * * * * | |
| | * | C.A. NO.    ᐧ 0 7 - 7 3 5 - |
| | * | |
| v. | * * | |
| ING BANK, fsb, (a Delaware corporation), and ALL OTHER WHOLLY OWNED SUBSIDIARIES OF ING BANK, fsb, WHICH HAVE EMPLOYED SIMILARLY SITUATED CURRENT AND FORMER EMPLOYEES SINCE November 16, 2004, <br><br> Defendants. | * * * * * * * * * | JURY TRIAL DEMANDED |

**COMPLAINT**

**INTRODUCTION**

1.    Named Plaintiffs, Kathryn L. Fitzgibbon ("Ms. Fitzgibbon") and Lauren M. Fleming ("Ms. Fleming")(collectively "Named Plaintiffs"), for themselves individually, and on behalf of all similarly situated current and former employees of Defendant ING Bank, fsb (collectively and individually "Plaintiffs"), file this action against Defendant ING Bank, fsb, ("ING") and all other wholly owned subsidiaries of ING that have employed Plaintiffs (collectively and singularly "Defendants") for past wages owed in the nature of unpaid wages and overtime pay as well as other damages and remedies.

FILED
2007 NOV 16 PM 3:
CLERK, U.S. DISTRICT COURT
DISTRICT OF DELAWARE

2.      Plaintiffs contend that Defendants willfully violated the *Fair Labor Standards Act* ("FLSA"), as amended, 29 U.S.C. § 201 et seq., as well as the applicable United States Department of Labor Regulations, including 29 C.F.R. § 541.103 et seq., when it willfully failed to pay them for overtime worked and intentionally misclassified them as "exempt" employees under the FLSA.

3.      Named Plaintiffs also assert individual claims of retaliation against ING in response to their asserting claims for unpaid overtime in violation of the FLSA, and for breach of contract for ING failing to perform under their severance agreements.

## JURISDICTION

4.      This Court has federal question jurisdiction over this cause of action pursuant to Section 16(b) of the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. § 216(b), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Named Plaintiffs' breach of contract claims pursuant to 28 U.S.C. § 1367.

5.      Venue is proper in this Court pursuant to 29 U.S.C. § 1132 and/or § 1451, as well as 28 U.S.C. § 1391(b).

## PARTIES

6.      Plaintiff, Kathryn L. Fitzgibbon, is an individual residing at 1327 North Clayton Street, Wilmington, DE 19806 and a former employee of ING.

7.      Plaintiff, Lauren M. Fleming, is an individual residing at 5107 Diana Drive, Wilmington, DE 19808 and a former employee of ING.

8.    Additional Plaintiffs are current and former employees of Defendants who, between November 16, 2004 and present, did not receive all overtime compensation due to them under the FLSA.

9.    All of the Named Plaintiffs have filed written consents to join this action. (See Ex. A).

10.    Former and current employees may file written consents to join this representational action.

11.    Defendant, ING Bank, fsb, is a Delaware corporation duly organized and existing under the laws of the State of Delaware, whose registered agent for the service of process is Deneen Stewart, One South Orange Street, Wilmington, DE 19801. ING DIRECT (the operating name of ING Bank, fsb) is headquartered in Wilmington, Delaware at 802 Delaware Avenue, Wilmington DE 19801, and operates an ING DIRECT Café in Wilmington, Delaware.

12.    ING is a member of the FDIC (Federal Deposit Insurance Corporation) which insures bank deposits up to $100,000.

13.    Additional Defendants include all of ING's wholly owned subsidiaries, affiliates or any other wholly owned entity.

14.    Defendants are global financial institutions offering banking, insurance and asset management to over 60 million private, corporate and institutional clients in more than 50 countries.

15.    Defendants employ more than 10,000 people in the United States, including Minnesota, California, Delaware, New York, Illinois and Pennsylvania.

## FACTUAL BACKGROUND

16.     At all relevant times herein, Defendants' business activities were/are related and performed through unified operations or common control for a common business purpose and constituted/constitute an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

17.     At all relevant times herein, Defendants employed and continue to employ persons in its places of business in furtherance of the activities of the above enterprises while engaged in commerce and, also at all relevant times herein, Defendants engaged and continue to engage in commerce by selling and/or providing goods or services to its customers.

18.     At all relevant times herein, Defendants' businesses and enterprises had/has an annual gross volume of sales made and/or business done in an amount of not less than Five Hundred Thousand Dollars ($500,000.00).

19.     ING previously employed the Named Plaintiffs in nonexempt positions in their public relations and marketing departments. Defendants have employed or currently employs other Plaintiffs in various similar nonexempt positions in their public relations and/or marketing departments and/or in similar nonexempt positions.

20.     Defendants' foster a workplace environment that decreases the importance of the individual employees' titles. Moreover, Defendants' employees typically identify themselves with the department in which they work rather than by their job title.

21.     Defendants have exercised and continue to exercise direction and control over the employment and compensation of Plaintiffs.

22.    Defendants suffered or permitted, and continue to suffer or permit, Plaintiffs to work in excess of forty (40) hours during their work weeks without compensating them as required under the FLSA.

23.    Named Plaintiffs are situated similarly to a number of current and former employees of Defendants who worked in the public relations and/or marketing departments and/or in similar nonexempt positions during the three years immediately preceding the filing of this lawsuit.

24.    The remaining Plaintiffs had the same or closely similar job duties as the Named Plaintiffs. Such duties and include, but are not limited to:

    a.    Preparing and disseminating information about Defendants' companies, services and products;

    b.    Disseminating this information through intermediaries such as advertisements, internet or newspaper articles;

    c.    Assuring that the information conformed to Defendants' brand positioning and style guide;

    d.    Executed Defendants' communications plans; and

    e.    Plaintiffs' duties were highly concentrated on utilizing the computer-based applications Word, Excel and PowerPoint.

25.    Conversely, Plaintiffs were:

    a.    Permitted little discretion in their communications, in that the communications were either required to be approved prior to the dissemination of the communication and/or the communications disseminated were required to conform to strict company guidelines;

b.    Unable to hire or fire other employees;

c.    Not customarily and regularly involved in the direction of the work of two or more other full-time employees; and

d.    Not permitted to exercise discretion and independent judgment with respect to matters of significance.

26.    Plaintiffs were paid by Defendants in the same manner and under the same policy in violation of the FLSA.

27.    Accordingly, the Named Plaintiffs are representative of all similarly situated Plaintiffs employed in a nonexempt capacity by Defendants in their public relations and/or marketing departments and/or other similarly situated positions who function at Named Plaintiffs' level or responsibility and/or salary grade and below. Due to Defendants' atmosphere of decreased importance on employees' job titles, Plaintiffs are unable at present to specifically identify the job titles of the employees who are similarly situated.

28.    For the three-year period immediately preceding the filing of this Complaint, Defendants failed to pay Plaintiffs the compensation to which they were entitled under the FLSA for, on average, at least 10 to 16 hours per work week. Some Plaintiffs worked in excess of this amount with no compensation – overtime or otherwise.

29.    Defendants willfully and knowingly misclassified Plaintiffs as "exempt" employees under the FLSA as Plaintiffs do not fall within an exemption permitted by the FLSA.

30.    Defendants knew and showed reckless disregard for the fact that its pay policies and/or practices with respect to Plaintiffs violated the FLSA. Defendants'

violations in this regard were committed willfully and recklessly in that Defendants knew that Plaintiffs were working in excess of 40 hours per work week and that Plaintiffs were not receiving the compensation to which Plaintiffs were entitled under the FLSA.

31.    Defendants' deceptive and misleading conduct prevented Plaintiffs and the Class Members from discovering or asserting their FLSA claims any earlier than they did. This deceptive and misleading conduct includes, but is not limited to concealing from Plaintiffs the existence of their FLSA claims and intentionally misleading Plaintiffs to believe that their pay policies were not unlawful.

32.    The precise amount of compensation due to Plaintiffs is unknown because the information required (i.e. time records, work schedules, etc.) are under the exclusive control of Defendants. However, given the amount of hours over forty (40) per work week that were worked by Plaintiffs, that amount is substantial.

## COUNT I
## <u>VIOLATION OF THE FAIR LABOR STANDARDS ACT</u>
*(By Plaintiffs vs. Defendants)*

33.    Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 32 by reference as if specifically set forth herein.

34.    Defendants have at all times herein, continuously and willfully violated, and continues to willfully violate, Sections 7 and 5(a)(2) of the FLSA, 29 U.S.C. §§ 207 and 216(a)(2), by misclassifying Plaintiffs as employees who are exempt from the overtime requirements of the FLSA and applicable regulations and in failing and refusing to pay time-and-a-half to Plaintiffs who worked in excess of forty (40) hours per work week.

35.    The FLSA violations set forth in the preceding paragraphs were knowing and willful.

36.    Defendant is bound by federal law to pay all non-exempt employees time-and-a-half for every work hour completed above and beyond a standard forty (40)-hour work week.

## COUNT II
## FLSA RETALIATION
*(By Named Plaintiffs vs. ING)*

37.    Named Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 3 by reference as if specifically set forth herein.

38.    Ms. Fitzgibbon began her employment with ING in or about September 2004 and was terminated from her employment on August 27, 2007.

39.    Ms. Fleming began her employment with ING on or about June 9, 2003 and was also terminated from her employment on August 27, 2007.

40.    On September 9, 2007, Named Plaintiffs each executed separate severance agreements with ING entitling them to additional compensation and benefits.

41.    The right to assert a claim for overtime compensation under the FLSA is one that may not be legally waived or released.

42.    Any waiver of their rights to assert a claim under the FLSA contained in said severance agreements would have made the severance agreements null and void as against established law and/or public policy.

43.    Shortly after the severance agreements were executed, ING began paying Named Plaintiffs according to the terms of those severance agreements.

44.    On October 5, 2007 Named Plaintiffs' attorney a sent letters to ING on behalf of Named Plaintiffs identifying ING's violations of the FLSA with respect to Named Plaintiffs employment.

45.    Immediately after ING received that correspondence, it ceased paying Named Plaintiffs in accordance with the terms of severance agreements.

46.    ING's actions in this regard are a direct response to, and in retaliation for, named Plaintiffs exercising their rights under the FLSA.

47.    Named Plaintiffs have suffered damages due to ING's retaliation for their asserting their federal rights under the FLSA.

## COUNT III
## BREACH OF CONTRACT
*(By Named Plaintiffs vs. ING)*

48. Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 47 by reference as if specifically set forth herein.

49. The severance agreements between named Plaintiffs and ING are valid contracts.

50. ING failed to perform under those contracts thereby breaching the contracts.

51. Named Plaintiffs have suffered and continue to suffer damages due to ING's breach of the severance agreement contracts in terms of lost monies and benefits due and owing under the severance agreements.

**WHEREFORE**, Plaintiffs respectfully move this Court to enter judgment in their favor and award the following relief:

a)    Pursuant to the procedure the United States Supreme Court set forth in *Hoffman-LaRoche v. Sperling*, 493 U.S. 165, 110 S.Ct. 482 (1989), approve the sending of a Notice and Consent form to all Plaintiffs who Defendants employed as non-exempt employees in the public relations and/or marketing departments and/or other similarly situated positions who function at Named Plaintiffs' level or responsibility and/or salary grade and below whose primary job functions are the communication of information pertaining to Defendants' companies, services or products between November 16, 2004 and the present time. The notice shall inform each such individual of this lawsuit and the right to file a written consent to join the lawsuit as a Plaintiff;

b)    Award Plaintiffs all compensation due for all hours worked during the three years before the filing of this Complaint;

c)    Award Plaintiffs an equal and additional amount as liquidated damages;

d)    Award Plaintiffs costs and reasonable attorney's fees;

e)    Award Plaintiffs interest accruing from each week that Defendants failed to compensate Plaintiffs for overtime worked;

f)    Award Named Plaintiffs an amount equal to that which they are entitled under their severance agreements with ING;

g)    Award Named Plaintiffs an equal and additional amount to which they are entitled under the severance agreements with ING as liquidated damages;

h)    Award Named Plaintiffs costs and reasonable attorneys' fees;

i)    Award Named Plaintiffs interest accruing from the time that ING breached their severance agreements;

j)      Declare that Defendants' policies and/or practices identified herein are and continue to be in direct violation of the FLSA and enjoin Defendants from continuing said policies and/or practices;

k)      Any and all such other relief as the Court deems appropriate under the circumstances.

MARTIN & WILSON, P.A.


Timothy J. Wilson, Esquire (#4323)
Jeffrey K. Martin, Esquire (#2407)
1508 Pennsylvania Avenue
Wilmington, Delaware 19806
(302) 777-4681 phone
(302) 777-5803 facsimile
twilson@martinandwilson.com
jmartin@martinandwilson.com
*Attorneys for Plaintiffs*

Dated: November 15, 2007

## ING BANK, fsb PLAINTIFF CONSENT FORM

I hereby consent to join the action against ING BANK, fsb, and all of its wholly owned subsidiaries ("ING") as a Plaintiff to assert claims for overtime pay. If this case does not proceed collectively, I also consent to join a subsequent action to assert these same claims. During the past three years, there were occasions when I worked over 40 hours per week for ING as a public relations associate, marketing associate or other similar nonexempt positions at ING pay grade G14 when I did not receive overtime compensation.

> Lauren M. Fleming
> 5107 Diana Drive
> Wilmington, DE 19808
>
> If any of the above information has changed, please update.
>
> _Lauren M Fleming_    11/9/07
> Signature                              Date
>
> _302 - 373 - 8333_
> Best Telephone Numbers
>
> _lfleming5@gmail.com_
> Email Address
>
> _4922_
> Last Four Digits of Social Security Number
>
> _Gloria Fleming 302 239 3846_
> Emergency Contact (in case we lose contact)

Fax, Mail or Email to:     Martin & Wilson, P.A.
                           Attn. Timothy J. Wilson
                           1508 Pennsylvania Ave.
                           Wilmington, DE 19806
                           (302) 777-4681 Telephone
                           (302) 777-5803
                           twilson@martinandwilson.com
                           Web: www.overtimelawyers.org



## ING BANK, fsb PLAINTIFF CONSENT FORM

   I hereby consent to join the action against ING BANK, fsb, and all of its wholly owned subsidiaries ("ING") as a Plaintiff to assert claims for overtime pay. If this case does not proceed collectively, I also consent to join a subsequent action to assert these same claims. During the past three years, there were occasions when I worked over 40 hours per week for ING as a public relations associate, marketing associate or other similar nonexempt positions at ING pay grade G14 when I did not receive overtime compensation.

Kathryn L. Fitzgibbon
1327 North Clayton Street
Wilmington, DE 19806

If any of the above information has changed, please update.

_Kathryn L. Fitzgibbon_          4/3/07
Signature                               Date

302-743-0721 (cell)- 302-504-5254
Best Telephone Numbers                     (work)

Kfitzgib107@gmail.com
Email Address

1110
Last Four Digits of Social Securityy Number

Patrick Callihan - 302-983-3928
Emergency Contact (in case we lose contact)

Fax, Mail or Email to:        Martin & Wilson, P.A.
                              Attn. Timothy J. Wilson
                              1508 Pennsylvania Ave.
                              Wilmington, DE 19806
                              (302) 777-4681 Telephone
                              (302) 777-5803
                              twilson@martinandwilson.com
                              Web: www.overtimelawyers.com

**EXHIBIT B**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

RECEIVED
DEC 12 2007

|  |  |  |
|---|---|---|
| KATHRYN L. FITZGIBBON, | : | |
| LAUREN M. FLEMING, and ALL | : | |
| SIMILARLY SITUATED CURRENT | : | |
| AND FORMER EMPLOYEES OF | : | CIVIL ACTION |
| ING BANK, fsb, AND ITS WHOLLY | : | |
| OWNED SUBSIDIARIES | : | NO. 07-735 (JJF) |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| ING BANK, fsb and ALL OTHER | : | |
| WHOLLY OWNED SUBSIDIARIES | : | |
| OF ING BANK, fsb, WHICH HAVE | : | |
| EMPLOYED SIMILARLY SITUATED | : | |
| CURRENT AND FORMER EMPLOYEES | : | |
| SINCE November 16, 2004 | : | |
| | : | |
| Defendants. | : | |

### DEFENDANT ING BANK FSB'S ANSWER TO
### COMPLAINT AND COUNTERCLAIMS

Defendant ING Bank, fsb ("Defendant" or "ING Bank"), by and through its undersigned

counsel, hereby answers the allegations directed to it in the correspondingly-numbered

paragraphs of the Complaint. Plaintiffs have improperly attempted to name "All Wholly Owned

Subsidiaries of ING Bank" as additional defendants to this action. Plaintiffs have not named or

served any defendants other than ING Bank. Thus, to the extent the allegations in the Complaint

are directed to persons other than ING Bank, it avers it has no obligation to respond and responds

only on behalf of itself.

1.     ING Bank admits only that Kathryn Fitzgibbon and Lauren Fleming ("Named

Plaintiffs") are former ING Bank employees and that they have brought the present action

against ING Bank. ING Bank denies all remaining allegations in paragraph 1, including that

Named Plaintiffs are similarly situated to any other current or former ING Bank employees for purposes of this action.

2.    The allegations of paragraph 2 are conclusions of law to which ING Bank has no obligation to respond, and therefore they are deemed denied. To the extent paragraph 2 alleges facts, ING Bank denies them.

3.    ING Bank admits that Named Plaintiffs have asserted individual claims against it as set forth in the Complaint. ING Bank denies that these claims have merit and denies that Named Plaintiffs are entitled to any relief under the laws they attempt to invoke.

4.    The allegations of paragraph 4 are conclusions of law to which ING Bank has no obligation to respond, and therefore they are deemed denied.

5.    The allegations of paragraph 5 are conclusions of law to which ING Bank has no obligation to respond, and therefore they are deemed denied.

6.    ING Bank admits that it formerly employed Kathryn Fitzgibbon. As to all other allegations of paragraph 6 of the Complaint, ING Bank lacks knowledge or information sufficient to form a belief as to their truth and therefore denies them.

7.    ING Bank admits that it formerly employed Lauren Fleming. As to all other allegations of paragraph 7 of the Complaint, ING Bank lacks knowledge or information sufficient to form a belief as to their truth and therefore denies them.

8.    Denied.

9.    Admitted.

10.    Denied as stated. By way of further answer, ING Bank is unaware of any other of its former or current employees who wish to join in this action.

11.    ING Bank admits only that its operating name is ING DIRECT and that it operates an ING DIRECT Café in Wilmington, Delaware. ING Bank denies all remaining allegations in paragraph 11 of the Complaint.

12.    Admitted.

13.    Denied.

14.    Denied.

15.    Denied.

16.    The allegations in paragraph 16 are conclusions of law to which ING Bank has no obligation to respond, and therefore they are deemed denied.

17.    The allegations in paragraph 17 are conclusions of law to which ING Bank has no obligation to respond, and therefore they are deemed denied.

18.    Denied as stated. ING Bank admits only that its annual gross income exceeds $500,000.

19.    Denied.

20.    Denied as stated. ING Bank admits only that it emphasizes cooperation and collaboration between its employees across its various departments and the disciplines within each department. ING Bank denies that its employees are either unaware or disregard their respective job titles.

21.    ING Bank admits only that, while it employed them, it exercised direction and control over the Named Plaintiffs' employment and compensation.

22.    Denied.

23.    The allegations in paragraph 23 are conclusions of law to which ING Bank has no obligation to respond, and therefore they are deemed denied. To the extent paragraph 23 of the Complaint avers facts, they are also denied.

24 (a) – (e).    The allegations in paragraph 24 are conclusions of law to which ING Bank has no obligation to respond, and therefore they are deemed denied. To the extent paragraph 24 of the Complaint and its subparagraphs aver facts, it is premature for ING Bank to answer because the "remaining Plaintiffs" described in this paragraph have not yet been identified.

25 (a) – (e).    Denied.

26.    ING Bank denies that it violated the FLSA. The remaining allegations in Paragraph 26 are ambiguous and subject to multiple interpretations. Thus, ING Bank can neither admit nor deny such allegations.

27.    The allegations in paragraph 27 of the Complaint are conclusions of law to which ING Bank has no obligation to respond, and therefore they are deemed denied. To the extent paragraph 27 alleges facts, they are also denied because ING Bank can neither admit nor deny whom, if anyone, Plaintiffs are able to identify.

28.    Denied.

29.    The allegations in paragraph 29 of the Complaint are conclusions of law to which ING Bank has no obligation to respond, and therefore they are deemed denied. To the extent paragraph 29 alleges facts, they are also denied.

30.    The allegations in paragraph 30 of the Complaint are conclusions of law to which ING Bank has no obligation to respond, and therefore they are deemed denied. To the extent paragraph 30 alleges facts, they are also denied.

31.    Denied.

32.    Denied.  No additional compensation is owed to the Plaintiffs.

### As To Count I of the Complaint

33.    ING Bank incorporates by reference its answers to Paragraphs 1 through 32 of the Complaint.

34.    Denied.

35.    Denied.

36.    The allegations in paragraph 36 of the Complaint are conclusions of law to which ING Bank has no obligation to respond, and therefore they are deemed denied.

### As To Count II of the Complaint

37.    ING Bank incorporates by reference its answers to Paragraphs 1 through 36 of the Complaint.

38.    Admitted.

39.    Admitted.

40.    Admitted upon information and belief as to Ms. Fleming.  Denied as to Ms. Fitzgibbon.

41.    The allegations in paragraph 41 of the Complaint are conclusions of law to which ING Bank has no obligation to respond, and therefore they are deemed denied.

42.    The allegations in paragraph 42 of the Complaint are conclusions of law to which ING Bank has no obligation to respond, and therefore they are deemed denied.

43.    Admitted.

44.    Denied as stated.  ING Bank admits only that counsel for Named Plaintiffs sent a letter to ING Bank on October 5, 2007, the contents of which speak for itself.

45.     Denied as stated.  ING Bank admits only that it ceased making payments to Named Plaintiffs when they revealed they made material misrepresentations during the negotiation process and/or in the body of their severance agreements.

46.     Denied.

47.     Denied.

### As To Count III of the Complaint

48.     ING Bank incorporates by reference its answers to Paragraphs 1 through 47 of the Complaint.

49.     The allegations in paragraph 49 of the Complaint are conclusions of law to which ING Bank has no obligation to respond, and therefore they are deemed denied.

50.     The allegations in paragraph 50 of the Complaint are conclusions of law to which ING Bank has no obligation to respond, and therefore they are deemed denied.  To the extent paragraph 50 alleges facts, they are also denied.

51.     Denied.

### FIRST AFFIRMATIVE DEFENSE

Plaintiffs' Complaint, in whole or in part, fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part by the applicable statutes of limitation.

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs are not proper parties to this action.

## FOURTH AFFIRMATIVE DEFENSE

The Court lacks and/or should decline to exercise supplemental jurisdiction over Named Plaintiffs' state law claims.

## FIFTH AFFIRMATIVE DEFENSE

After their employment with ING Bank concluded, Named Plaintiffs were not "employees" for the purposes of the Fair Labor Standards Act.

## SIXTH AFFIRMATIVE DEFENSE

Some of the remedies sought by Plaintiffs are not available under the causes of actions alleged.

## SEVENTH AFFIRMATIVE DEFENSE

This case is inappropriate for treatment as a collective action because Named Plaintiffs are not similarly situated to each other and/or to other ING Bank employees whom they or their counsel seek or purport to represent.

## EIGHTH AFFIRMATIVE DEFENSE

Throughout Plaintiffs' tenure with ING Bank, they were bona fide exempt employees by virtue of the duties they performed.

## NINTH AFFIRMATIVE DEFENSE

ING Bank acted at all times in good faith with reasonable grounds to believe that it was not in violation of the Fair Labor Standards Act.

## TENTH AFFIRMATIVE DEFENSE

To the extent any violation of the FLSA may be found to have occurred, it was not willful.

## ELEVENTH AFFIRMATIVE DEFENSE

Named Plaintiffs' claims are barred by Named Plaintiffs' own breaches of the terms, conditions and provisions, express and implied, of the severance agreements with ING Bank.

## TWELFTH AFFIRMATIVE DEFENSE

Named Plaintiffs' claims are barred, in whole or in part, by Named Plaintiffs' breaches of the covenant of good faith and fair dealing.

## THIRTEENTH AFFIRMATIVE DEFENSE

Named Plaintiffs' claims are barred because their alleged damages resulted from their own intentional and wrongful acts, and not through any wrongful acts by ING Bank.

## FOURTEENTH AFFIRMATIVE DEFENSE

ING Bank's actions were taken for legitimate, non-retaliatory reasons.

## FIFTEENTH AFFIRMATIVE DEFENSE

Enforcement of the severance agreements in favor of Plaintiffs would be unconscionable and contrary to public policy.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' severance agreements are void or voidable because of Plaintiffs' fraudulent misrepresentations.

## SEVENTEENTH AFFIRMATIVE DEFENSE

To the extent Plaintiffs are due any damages, such damages are offset by monies ING Bank already paid to them or on their behalf.

WHEREFORE Defendant ING Bank prays that the Court dismiss the Complaint with prejudice, tax costs against Plaintiffs and grant Defendant ING Bank such other and further relief as the Court deems proper and just.

### DEFENDANT ING BANK, FSB'S COUNTERCLAIMS AGAINST
### PLAINTIFFS KATHRYN L. FITZGIBBON AND LAUREN M. FLEMING

ING Bank, fsb, by and through its undersigned counsel, hereby asserts the following

Counterclaims against Kathryn L. Fitzgibbon and Lauren M. Fleming.

1.      The allegations of the Answer and the Affirmative Defenses set forth in ING

Bank's Answer are incorporated herein by reference in their entirety.

### JURISDICTION AND VENUE

2.      This Court has jurisdiction over ING Bank's Counterclaims pursuant to 28 U.S.C.

§ 1367.

3.      Venue is proper in this Court because the causes of action asserted herein are

based substantially upon transactions and occurrences that took place in this judicial district.

### PARTIES AND FACTUAL BACKGROUND

4.      ING Bank is an FDIC-insured federally chartered savings bank that operates

under the name ING DIRECT and is headquartered at 1 South Orange Street, Wilmington,

Delaware, 19801.

5.      Ms. Fitzgibbon is a former employee of ING Bank.  She maintains that she

resides at the address set forth in paragraph 6 of the Complaint.

6.      Ms. Fleming is a former employee of ING Bank.  She maintains that she resides

at the address set forth in paragraph 7 of the Complaint.

7.      On August 27, 2007, ING Bank terminated Ms. Fitzgibbon's and Ms. Fleming's

employment.

8.      In connection with their separation, ING Bank offered both Ms. Fitzgibbon and

Ms. Fleming severance packages, as set forth in written severance agreements.

9.    The written severance agreements contained, *inter alia*, the following clause (the "Whereas Clause"):

> WHEREAS, the parties now desire and agree to fully and finally resolve any and all existing or potential issues, claims, grievances and disputes that relate to or arise out of the Employee's employment relationship with the Bank or the termination thereof by the Bank.

10.    Shortly after Ms. Fitzgibbon's and Ms. Fleming's receipt of the draft severance agreements, Ms. Fitzgibbon's and Ms. Fleming's counsel, Jeffrey Martin, Esquire, contacted ING Bank to negotiate the terms of the agreements.

11.    During the course of these negotiations, which occurred over several days and multiple communications, Mr. Martin requested several changes to each of the agreements and, in an effort to accommodate some of Ms. Fitzgibbon's and Ms. Fleming's requests, ING Bank made certain changes to the agreements.

12.    Ms. Fleming executed her severance agreement on September 9, 2007.

13.    Prior to her execution of the severance agreement, Ms. Fleming concluded that she wished to assert claims for unpaid overtime compensation against ING Bank.

14.    Ms. Fleming's representation in the Whereas Clause that she "desire[d] . . . to fully and finally resolve any and all existing or potential issues, claims, grievances, and disputes that relate to or arise out of" her employment with ING Bank was false.

15.    Prior to her execution of the severance agreement, Ms. Fleming, Mr. Martin and/or both of them knew that the representation that Ms. Fleming gave in the Whereas Clause was false.

16.    At no time prior to her execution of her severance agreement did Ms. Fleming, or Mr. Martin on her behalf, attempt to negotiate a revision to the Whereas Clause or request that the Whereas Clause be deleted.

17.    At no time prior to her execution of her severance agreement did Ms. Fleming, or Mr. Martin on her behalf, inform ING Bank that the representations contained in the Whereas Clause were false.

18.    Ms. Fitzgibbon executed her severance agreement on September 10, 2007.

19.    Prior to her execution of the severance agreement, Ms. Fitzgibbon concluded that she wished to assert a claim for unpaid overtime compensation against ING Bank.

20.    Ms. Fitzgibbon's representation in the Whereas Clause that she "desire[d] . . . to fully and finally resolve any and all existing or potential issues, claims, grievances, and disputes that relate to or arise out of" her employment with ING Bank was false.

21.    Prior to her execution of the severance agreement, Ms. Fitzgibbon, Mr. Martin and/or both of them knew that the representation that Ms. Fitzgibbon gave in the Whereas Clause was false.

22.    At no time prior to her execution of her severance agreement did Ms. Fitzgibbon, or Mr. Martin on her behalf, attempt to negotiate a revision to the Whereas Clause or request that the Whereas Clause be deleted.

23.    At no time prior to her execution of her severance agreement did Ms. Fitzgibbon, or Mr. Martin on her behalf, inform ING Bank that the representations contained in the Whereas Clause were false.

24.    On September 10, 2007, ING Bank executed Ms. Fitzgibbon's and Ms. Fleming's severance agreements.

25.    ING Bank reasonably relied on Ms. Fitzgibbon's and Ms. Fleming's representations in their respective severance agreements, including those in the Whereas Clause, in executing the agreements.

26.    In late September 2007, ING Bank began making payments to Ms. Fitzgibbon and Ms. Fleming, in accordance with the terms of the severance agreements.

27.    On October 5, 2007, Mr. Martin sent letters to ING Bank on behalf of Ms. Fitzgibbon and Ms. Fleming.  Mr. Martin represented in the letters that, notwithstanding the representations contained in the severance agreements, including the Whereas Clause, Ms. Fitzgibbon and Ms. Fleming intended to assert legal claims against ING Bank.

28.    On November 15, 2007, Ms. Fitzgibbon and Ms. Fleming filed the present action, further revealing the fraudulent nature of the representations they made to ING Bank in the severance agreements.

### COUNT I – FRAUDULENT MISREPRESENTATION

29.    Defendant ING Bank repeats and incorporates herein by reference the allegations of paragraphs 1 through 28 of its Counterclaims above as fully as if the same were set forth at length.

30.    As a condition of entering into the severance agreements, ING Bank sought Ms. Fitzgibbon's and Ms. Fleming's commitment that they "desire[d] and agree[d] to fully and finally resolve any and all existing or potential issues, claims, grievances and disputes that relate to or arise out of [their] employment relationship with the Bank or the termination thereof by the Bank."

31.   Ms. Fitzgibbon and Ms. Fleming made this commitment to ING Bank by agreeing to the Whereas Clause as originally proposed, despite ample opportunity to revise or amend the clause.

32.   Ms. Fitzgibbon's and Ms. Fleming's representations concerning their intentions were false and fraudulent because Ms. Fitzgibbon and Ms. Fleming each intended to bring a claim for unpaid overtime compensation after executing their severance agreements, notwithstanding the representations they made in the severance agreements.

33.   Ms. Fitzgibbon's and Ms. Fleming's fraudulent misrepresentations induced ING Bank to enter into the severance agreements.

34.   ING Bank would not have entered into the severance agreement with either Ms. Fitzgibbon or Ms. Fleming if it had known that they planned to file suit against ING Bank only weeks after representing an intention to the contrary.

35.   Ms. Fitzgibbon's and Ms. Fleming's fraudulent misrepresentations have caused ING Bank to suffer damages.

## COUNT II – BREACH OF IMPLIED DUTY OF GOOD FAITH
## AND FAIR DEALING

36.   Defendant ING Bank repeats and incorporates herein by reference the allegations of paragraphs 1 through 35 of its Counterclaims above as fully as if the same were set forth at length.

37.   The severance agreements between ING Bank and Ms. Fitzgibbon and Ms. Fleming impose an implied covenant of good faith and fair dealing.  This covenant required Ms. Fitzgibbon and Ms. Fleming to refrain from fraud, deceit or misrepresentation during the negotiation process that preceded the execution of the severance agreements.

38.    Rather than observing their good faith and fair dealing obligations, Ms. Fitzgibbon and Ms. Fleming filed suit against ING Bank after fraudulently misrepresenting to ING Bank during the negotiation process and/or in the severance agreements that, at the time, they desired to resolve all disputes that they had with ING Bank relating to their employment with ING Bank.

39.    Ms. Fitzgibbon's and Ms. Fleming's fraudulent misrepresentations were made in bad faith and were designed to deny ING Bank of the fruit of the severance agreements.

40.    As a direct and proximate result of Ms. Fitzgibbon's and Ms. Fleming's bad faith, ING Bank has suffered damages.

WHEREFORE, Defendant ING Bank requests that the Court enter judgment in its favor and against Plaintiffs:

A.    Voiding the severance agreements executed by Plaintiffs;

B.    Returning to ING Bank all monies paid by ING Bank to Named Plaintiffs or on their behalf pursuant to the severance agreements;

C.    Awarding ING Bank additional damages in an amount to be determined at trial;

D.    Awarding ING Bank its costs and disbursements in this action, as authorized by law;

E.    Awarding ING Bank prejudgment and post-judgment interest at the highest sum permitted by law; and

       F.      Granting such other and further relief as the Court deems equitable, just

and proper.


Dated: December 10, 2007          /s Darryl A. Parson
                                   Darryl A. Parson
                                   DRINKER BIDDLE & REATH LLP
                                   1100 N. Market Street
                                   Wilmington, DE 19801-1254
                                   (302) 467-4220
                                   (302) 467-4201 fax


                                   David J. Woolf (pro hac admission pending)
                                   Edward N. Yost (pro hac admission pending)
                                   DRINKER BIDDLE & REATH LLP
                                   One Logan Square
                                   18th & Cherry Streets
                                   Philadelphia, PA 19103
                                   (215) 988-2700


                                   Attorneys for Defendant / Counterclaim Plaintiff
                                   ING Bank, fsb

## CERTIFICATE OF SERVICE

I, Edward N. Yost, do hereby certify that, on this date, a true and correct copy of the foregoing Answer was timely served by first class mail, postage prepaid, upon the counsel for Plaintiffs on the following: Timothy J. Wilson, Esquire, 1508 Pennsylvania Avenue, Wilmington, Delaware 19806.

Dated: December 10, 2007                    /s Edward N. Yost

PHLIT\622341\3

**EXHIBIT C**

**"SEALED DOCUMENT"**