## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF DELAWARE

KATHRYN L. FITZGIBBON,       \*
LAUREN M. FLEMING, and       \*
ALL SIMILARLY SITUATED CURRENT \*
AND FORMER EMPLOYEES OF      \*
ING BANK, fsb, AND ITS WHOLLY   \*
OWNED SUBSIDIARIES,      \*
     \*
     Plaintiffs,      \*
     \*     C.A. NO. 07-735 (JJF)
     \*
    v.      \*
     \*
ING BANK, fsb, (a Delaware corporation), \*
and ALL OTHER WHOLLY OWNED   \*    JURY TRIAL DEMANDED
SUBSIDIARIES OF ING BANK, fsb,   \*
WHICH HAVE EMPLOYED     \*
SIMILARLY  SITUATED CURRENT   \*
AND FORMER EMPLOYEES SINCE   \*
November 16, 2004,      \*
     \*
     Defendants.      \*

## PLAINTIFFS' MOTION TO PROCEED AS A COLLECTIVE ACTION, TO FACILITATE NOTICE AND TO REQUIRE DEFENDANT TO PROVIDE INFORMATION

Pursuant to 29 U.S.C. 216(b), Plaintiffs Kathryn L. Fitzgibbon and Lauren M. Fleming ("Named Plaintiffs"), submit their Motion to Proceed as a Collective Action and Facilitate Notice Under 29 U.S.C. § 216(b) and state as follows:

1.      Plaintiffs filed their Complaint on November 16, 2007 alleging violations of the Fair Labor Standards Act, as amended, 29 U.S.C. § 216(b) ("FLSA"), 28 U.S.C. § 1331 and for common law breach of contract pursuant to this Court's supplemental jurisdiction found at 28 U.S.C. § 1367.  On December 10, 2007 Defendant filed an Answer to the Complaint and Counterclaims alleging Fraudulent Misrepresentation and

Breach of the Covenant of Good Faith and Fair Dealing arising from Plaintiffs' execution of severance agreements with Defendants.     Plaintiffs filed a Motion to Dismiss Defendant's Counterclaims and Motion for Judgment on the Pleadings on January 9, 2007.

      2.    When "determining whether to allow opt-in notification and certification under the FLSA, the Third Circuit applies the "two-step certification" approach set forth in Lusardi v. Xerox Corp., 118 F.R.D. 351 (D.N.J. 1987)." Herring v. Hewitt Associates, Inc., 2007 WL 2121693 (D.N.J. 2007)(attached hereto at Ex. 1); see also Thiessen v. General Electric Capital Corp., 267 F.3d 1095 (10th Cir. 2001).  At the "notice stage," the first stage in the two step certification, the court typically has very minimal evidence before it and thus, determination is made using a fairly lenient standard. Bouder v. Prudential Financial, Inc., 2007 WL 3396303 (D.N.J. 2007)(attached hereto at Ex. 2). All that is required to meet this lenient standard is "a colorable argument regarding a class of similarly-situated [employees], working within the same corporate department/division, and alleging the same unlawful conduct and seeking the same relief-conditional certification." Pontius v. Delta Financial Corp., 2005 WL 6103189 (W.D. PA. 2005)(attached herto at Ex. 3).  A court may grant conditional class certification in an exempt misclassification case involving several different job titles and multiple locations. Herring supra.  "Plaintiffs' counsel's [has] a right to solicit potential clients." Bouder supra., (citing Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165 (1989)).

      3.    Here, both Named Plaintiffs are former public relations associates and marketing associates while employed by Defendant. (See Declarations of Kathryn L. Fitzgibbon and Lauren M. Fleming, attached hereto at Ex. 4).  They allege that they were

misclassified as "exempt" employees by Defendant and therefore did not receive overtime compensation due to them under the FLSA. (Compl. at ¶¶ 6 – 8, 19, 39 - 40). Named Plaintiffs are situated similarly to a number of current and former employees of Defendants who worked in the public relations and/or marketing departments and/or held similar job duties during the three years immediately preceding the filing of this lawsuit. (Compl. at ¶ 23 – 24; and Ex. 4). Named Plaintiffs filed written consents to join this action. (See Ex. 5). Named Plaintiffs are aware of other such similarly situated employees who may be interested in joining this lawsuit. (See, Ex. 4)

4.    Based upon the allegations set forth in the Complaint, the written consents filed by Named Plaintiffs, as well as the supporting declaration from both Named Plaintiffs confirming that there are other ING employees similarly-situated who may desire to opt into this lawsuit, Named Plaintiffs have met their burden under the standards set forth above to be granted conditional class certification.

**WHEREFORE**, Plaintiffs respectfully request this Honorable Court to:

i.    Grant conditional certification of the Plaintiff class;

ii.    Authorize Plaintiffs' attorneys to provide notice to potential class members concerning the case and their right to participate by "opting in" as plaintiffs; and

iii.    Require Defendant to provide Plaintiffs' attorney with the names and last known addresses of all potential plaintiff class members to facilitate providing such notice.

MARTIN & WILSON, P.A.

Timothy J. Wilson, Esq. (#4323)
Jeffrey K. Martin, Esq. (#2407)
1508 Pennsylvania Ave.
Wilmington, DE 19806
(302) 777-4680 telephone
(302) 777-5803 facsimile
twilson@martinandwilson.com
jmartin@martinandwilson.com

May 19, 2008

4

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF DELAWARE

KATHRYN L. FITZGIBBON,　　　　　*
LAUREN M. FLEMING, and　　　　　 *
ALL SIMILARLY SITUATED CURRENT *
AND FORMER EMPLOYEES OF　　　 *
ING BANK, fsb, AND ITS WHOLLY　 *
OWNED SUBSIDIARIES,　　　　　　 *
　　　　Plaintiffs,　　　　　　　　*
　　　　　　　　　　　　　　　　 *　　C.A. NO. 07-735 (JJF)
　　　　　　　　　　　　　　　　 *
　　　　　　v.　　　　　　　　　　*
　　　　　　　　　　　　　　　　 *
ING BANK, fsb, (a Delaware corporation), *
and ALL OTHER WHOLLY OWNED　 *　　JURY TRIAL DEMANDED
SUBSIDIARIES OF ING BANK, fsb,　 *
WHICH HAVE EMPLOYED　　　　　 *
SIMILARLY  SITUATED CURRENT　　 *
AND FORMER EMPLOYEES SINCE　　 *
November 15, 2004,　　　　　　　　*
　　　　　　　　　　　　　　　　 *

## <ins>NOTICE OF MOTION TO PROCEED AS A COLLECTIVE ACTION, TO FACILITATE NOTICE AND TO REQUIRE DEFENDANT TO PROVIDE INFORMATION</ins>

TO:　　Darryl A. Parson, Esquire
　　　　Drinker Biddle & Reath LLP
　　　　1100 N Market St
　　　　Wilmington, DE 19801-1254

　　　　PLEASE TAKE NOTICE, that the undersigned attorney will present the attached

Motion to Proceed as a Collective Action, To Facilitate Notice and to Require Defendant

to Provide Information before the Honorable Judge Joseph J. Farnan on June 6, 2008 at

2:00 pm.

MARTIN & WILSON, P.A.

TIMOTHY J. WILSON, ESQUIRE
Del. Bar I.D. No.: 4323
1508 Pennsylvania Ave
Wilmington, DE 19806
twilson@martinandwilson.com
(302) 777-4681
*Attorney for Plaintiffs*

DATED:     May 19, 2008

EXHIBIT 1

Westlaw.

Slip Copy
Slip Copy, 2007 WL 2121693 (D.N.J.)
(Cite as: 2007 WL 2121693 (D.N.J.))

Page 1

**H**
Herring v. Hewitt Associates, Inc.
D.N.J.,2007.
Only the Westlaw citation is currently available.NOT FOR PUBLICATION
United States District Court,D. New Jersey.
Carol HERRING, individually and on behalf of all persons similarly situated, Plaintiff,
v.
HEWITT ASSOCIATES, INC., Defendant.
**Civ. No. 06-267 (GEB).**

July 24, 2007.

Seth R. Lesser, Law Offices of Gene Locks, PLLC, Cherry Hill, NJ, for Plaintiff.
Christopher H. Lowe, Sevfarth Shaw LLP, New York, NY, for Defendant.

### MEMORANDUM OPINION

BROWN, Chief Judge.
*1 This matter comes before the Court upon the motion of plaintiff Carol Herring ("Plaintiff") to facilitate notice pursuant to 29 U.S.C. § 216(b). The Court has read and considered all documents filed and submitted and has decided the motion based upon the parties' submissions and without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Plaintiff's motion to facilitate notice is granted.

## I. BACKGROUND

### A. Procedural History

On January 20, 2006, Plaintiff filed a class action Complaint against Defendant in the United States District Court, District of New Jersey. (Docket No. 1). Plaintiff alleges that she and all other similarly situated benefits analysts employed by Defendant were classified incorrectly as exempt from receiving overtime premium payments under the Fair Labor Standards Act ("FLSA"), 29 U .S.C. §§ 201

et seq. and the New Jersey Wage Payment Law ("NJWPL"), 34:11-56a1 et seq. (Compl., ¶¶ 23-28). The Complaint states an opt-in nationwide collective action on behalf of Hewitt employees who were misclassified as exempt. (Compl., §§ 8-13). On July 21, 2005, Angela Bryant filed a lawsuit in the Northern District of California, which was subsequently transferred to the Southern District of Texas on October 14, 2005. Ms. Bryant's complaint also stated an opt-in nationwide collective action on behalf of Hewitt employees who were misclassified as exempt. In February 2006, Ms. Bryant filed a motion to dismiss without prejudice in the Southern District of Texas, and filed a written consent to join in the Herring litigation in this district. The motion to dismiss was granted in that matter on May 3, 2006.

### B. Factual History

Defendant employs benefits analysts to provide human resources outsourcing services to various businesses, including large corporations. According to Plaintiff, benefits analysts throughout the United States provide these services and have the same job duties and responsibilities. (Herring Decl., ¶¶ 6, 9, 12; Bryant Decl., ¶¶ 4, 6-7). Defendant's plan administration service is organized by client teams, and each client has benefit plans governed by unique terms and provisions that must be learned and understood by the benefits analysts on that team. (Stiroh Decl., ¶ 3). There are three benefits analyst job titles (each with its own internal job code) corresponding to the type of benefit plan administered by Defendant. (Def.'s Br. at 5). The three benefits analyst positions are Defined Benefit ("DB"), Defined Contribution ("DC") and Health and Welfare Benefits Analysts ("H & W").*Id.* Plaintiff and Ms. Bryant are H & W benefits analysts in New Jersey and Texas, respectively.

Defendant created a written job description for the benefits analysts as well as a role portrait, which

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2121693 (D.N.J.)
(Cite as: 2007 WL 2121693 (D.N.J.))

Page 2

provides a general overview of the position. (Roberson Decl., Exh. D, E, F). A benefits analyst is an entry level position.*Id.* According to the job description, the responsibilities of a benefits analyst include duties such as: process improvement, data file processing and job scheduling/monitoring, executing inbound and outbound file processing (e.g. human resources data, payroll, pensions, eligibility), resolving data edits and completing manual calculations. (Roberson Decl., Exh. D). Benefits analysts also perform system updates and year end processing and reporting, review transactions for accuracy and perform other human resource data entry tasks and data processing tasks. (Roberson Decl., Exh. D, E). According to Plaintiff, these responsibilities are primarily data entry, non-management, non-discretionary duties. (Herring Decl., ¶¶ 7, 9-12; Bryant Decl., ¶¶ 7-11).

*2 Plaintiff and Ms. Bryant explain that, for example, they entered and maintained benefits information into computers for Hewitt's client corporations, which involved identifying data errors, manually updating subscriber information and answering client or subscriber questions regarding benefits plans and subscriptions. *Id.* According to Plaintiff, benefits analysts do not have managerial responsibilities and exercise little, if any, independent judgment with respect to significant matters. (Herring Decl., ¶¶ 9, 11, 13; Bryant Decl., ¶ 10). Plaintiff also claims that benefits analysts can take few steps without first obtaining manger approval, and exercised little discretion. *Id.* Defendant, however, contends that the benefits analyst's role requires the exercise of discretion on matters of significance. (Bryant Dep., 70-72).

Plaintiff and Ms. Bryant claim that they commonly work in excess of 40 hours per week without overtime. (Bryant Decl., ¶ 12). The typical hours for benefits analysts can vary between 45 and 50 hours a week, and Defendant encourages the analysts to work more than 40 hours per week. (Brown Dep., 107:21-25; Stiroh Dep., 26:3-10, 26:11-15). Full-time benefits analysts are not paid overtime pay for

the overtime hours worked. (Sherman Dep., 25:24-26:13; Stiroh Dep., 20:9-12). The benefits analysts are paid as salaried employees. (Sherman Dep., 17:6-11, 21:21-24). Plaintiff estimates that there are two to five hundred benefits analysts currently working in the United States. (Compl., ¶ 9; Stiroh Dep., 14:17-18). Defendant notes that Plaintiff has advertised their case on the Internet, and out of a putative class of approximately 1,172 individuals who held one of three benefits analyst job titles, a total of three additional plaintiffs have opted-in. (Def.'s Opp., at 2).

## II. DISCUSSION

### A. *Standard for Facilitating Notice Pursuant to 29 U.S.C. § 216(b)*

Section 216(b) of the FLSA provides in pertinent part:

An action to recover ... liability ... may be maintained against any employer ... by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

A collective action affords plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources."*Hoffman-LaRoche Inc. v. Sperling,* 493 U.S. 165, 170 (1989)."No employee shall be a party plaintiff to any such action [under the FLSA] unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."29 U.S.C. § 216(b). For an action to proceed as a collective action, § 216(b) sets two basic requirements: (1) class members must be "similarly situated" and (2) members must affirmatively consent to join the action. *Id.* There a two-stage test involved in establishing a collective action. *Morisky v. Public Serv. Elec. & Gas Co.,* 111 F.Supp.2d 493, 496 (D.N.J.2000).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2121693 (D.N.J.)
**(Cite as: 2007 WL 2121693 (D.N.J.))**

The first stage is the notice stage, when the court determines whether notice should be given to a potential class member. *Id.* at 497. The court's determination "typically results in conditional certification of a representative class." *Id.* At the second stage, when the court has more evidence and the case is ready for trial, the court makes a final certification. *Id.*

\*3 Plaintiff bears the burden of showing she is similarly situated to the remainder of the proposed class. *Morisky*, 111 F.Supp.2d at 496. In determining whether to allow opt-in notification and certification under the FLSA, the Third Circuit applies the "two-step certification" approach set forth in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J.1987); *see also Morisky*, 111 F.Supp.2d at 497.

The first step in this test is conducted early in the litigation process, when the court has minimal evidence. This step is a preliminary inquiry into whether the plaintiff's proposed class is constituted of similarly situated employees. At this stage, the court grants only conditional certification of the class for the purposes of notice and discovery, and this is done under a comparatively liberal standard.

*Bosley v. Chubb Corp.*, No. 04-4598, 2005 WL 1334565, at \* 2 (E .D. Pa. June 3, 2005) (internal citations omitted); *see also Morisky*, 111 F.Supp.2d at 497. The second step usually occurs "after the completion of class-related discovery." *Bosley*, 2005 WL 1334565, at \* 2. "During the second step, the court conducts a specific factual analysis of each employee's claim to ensure that each claimant is an appropriate party. Plaintiffs bear the burden of showing they are similarly situated to the remainder of the proposed class." *Id.*

At the notice stage, the court "usually has only minimal evidence before it" and thus, "this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." *Morisky*, 111 F.Supp.2d at 497 (quoting *Thiessen v. General Electric Capital*

*Corp.*, 996 F.Supp. 1071, 1080 (D.Kan.1998)). Some courts require "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan [in violation of law]." *Id.; see also Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J.1988). Next, the court "makes a second determination after discovery is largely complete and the case is ready for trial." *Morisky*, 111 F.Supp.2d at 497 (quoting *Thiessen*, 996 F.Supp. at 1080). During this stage of the analysis, the court determines whether the plaintiffs are "similarly situated," employing a stricter standard as there is much more information on which to base its decision. *Id.*

**B. *Class Certification***

***1. This Court Will Not Proceed to the Second Stage of Class Certification at This Time***

The parties dispute whether enough discovery has been completed to date for this Court to consider proceeding to the second stage of the certification test. At the second stage, the Court is asked to make a conclusive factual determination regarding whether the plaintiffs are "similarly situated." *Armstrong v. Weichert Realtors*, No. 05-3120, 2006 U.S. Dist. LEXIS 31351, at \*3 (D.N.J. May 19, 2006). The Defendant notes that when discovery relating to the issue of collective action certification has occurred, the "two 'step' method collapses into one" and the Court may proceed directly to the second stage of the *Lusardi* analysis. *Morisky*, 111 F.Supp.2d at 497-98. The court in *Lusardi* considered several factors when determining class certification, such as, the disparate factual and employment settings of the individual plaintiffs, the various defenses available to defendants and fairness and procedural considerations. *Lusardi*, 118 F.R.D. at 359.

\*4 Defendant claims that substantial discovery has taken place on the certification issue, specifically, that the named Plaintiffs and three Hewitt representatives have been deposed, and Hewitt has produced thousands of pages of documents and elec-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2121693 (D.N.J.)
(Cite as: 2007 WL 2121693 (D.N.J.))

tronic data. (Def.'s Opp., at 10). Plaintiff, however, contends that significant discovery has not been conducted in this matter, and that the discovery has been restricted by the Court until after resolution of the current motion. (Pl.'s Reply, at 2). Plaintiff also claims that there are still documents that have not been produced by Defendants relating to this certification issue. *Id.* at 3. The parties were directed by this Court to complete discovery regarding conditional class certification. (Docket No. 26, Scheduling Order).

As stated above, the Court is required to first make a determination at the notice stage-the point at which it must be determined whether notice of this matter should be given to potential class members. *Morisky,* 111 F.Supp.2d at 497. The Court may make this determination with only minimal evidence before it at this stage, in some cases nothing more than substantial allegations by the plaintiff. *Id.* Here, the parties have conducted some discovery specifically targeted at conditional class certification, and thus, the Court has more than enough evidence before it to consider certification at stage one. To engage in a more substantial, factual determination at stage two requires discovery to be largely complete and the case ready for trial. *Id.* Defendant contends that when discovery relating to the issue of collective action certification has occurred, the "two 'step' method collapses into one" and the Court may proceed directly to the second stage of the *Lusardi* analysis. *Morisky,* 111 F.Supp.2d at 497-98. In *Morisky,* 100 potential plaintiffs had already opted into the lawsuit, and the court determined that it was "clearly beyond the first tier of the [above] analysis" and discovery was complete. *Id.* Here, only three plaintiffs have opted into this lawsuit of the potential 1,172 class members. Additionally, while discovery relating to the issue of certification has been conducted, discovery as a whole is not yet complete. Thus, this case is not "ready for trial" and it is premature for this Court to make factual findings regarding certification. Accordingly, this Court will only address stage one of the *Lusardi* analysis regarding certific-

ation for notice purposes. Once discovery is complete and the case becomes trial-ready, this Court will address stage two of class certification as set forth in *Lusardi.*

## 2. Notification and Conditional Certification

To determine whether this case should be conditionally certified for purposes of notice, the Court must inquire into whether the "Plaintiff's proposed class is constituted of similarly situated employees."*Bosley,* 2005 WL 1334565, at *2. The " 'similarly situated' showing at this stage establishes nothing more than the right of plaintiffs to 'maintain' a collective action."*Sperling,* 118 F.R.D. at 407. The finding "provides for unified trial preparation, prosecution, and defense on what appears to be a single discriminatory decision...."*Id.*The court in *Sperling* also noted that there is nothing to prevent a court from "modifying or reversing a decision on 'similar situations' at a later time in an action, as new facts emerge."*Id.* (citing *Lusardi,* 99 F.R.D. at 93). The preliminary determination at this preliminary stage "does not prejudice the defendants precisely because it is preliminary. It may be revisited (by motion for decertification) if it later appears, after appropriate discovery, that the additional plaintiffs who opt in the lawsuit are not similarly situated."*Aquilino v. The Home Depot, Inc.,* No. 04-4100, 2006 U.S. Dist. LEXIS 66084, at *5-6 (D.N.J. Sept. 6, 2006) (quoting *Patton v. Thomson Corp.,* 364 F.Supp.2d., 263, 268 (E.D.N.Y.2005)).

*5 Plaintiff bears the burden of showing she is similarly situated to the remainder of the proposed class. *Morisky,* 111 F.Supp.2d at 496. "Plaintiffs must show 'a factual nexus between their situation and the situation of other current and former [employees] sufficient to determine that they are 'similarly situated.' " *Aquilino,* 2006 U.S. Dist. LEXIS 66084, at *5 (quoting *Hoffman v. Sbarro, Inc.,* 9892 F.Supp. 249, 262 (S.D.N.Y.1997). Courts typically examine the pleadings and affidavits in support of or in opposition to the proposed collective action to make this determination. *Id.*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2121693 (D.N.J.)
(Cite as: 2007 WL 2121693 (D.N.J.))

(citing *Masson v. Ecolab, Inc.,* 2005 U.S. Dist. LEXIS 18022, at * 13 (S.D.N.Y 2005)). This inquiry requires a "relatively lenient evidentiary standard in determining whether a collective action is appropriate." *Id.* (quoting *Masson,* 2005 U.S. Dist. LEXIS 18022, at * 13). "[T]he merits of plaintiffs' claims need not be evaluated nor discovery be completed in order for such a notice to be approved and disseminated." *Id.* (quoting *Masson,* 2005 U.S. Dist. LEXIS 18022, at * 13).

Here, Plaintiff claims that Ms. Herring and Ms. Bryant are similarly situated to the potential class members for purposes of 216(b). Plaintiff contends that Herring and Bryant held the same job as the proposed class, had the same responsibilities and job expectations and were subject to the same company-wide policies of classifying them as exempt and denying them overtime pay. (Pl.'s Br ., at 12). Plaintiff submits that Herring and Bryant and the potential class members regularly worked, and were expected to work, in excess of 40 hours a week and uniformly were not paid overtime compensation for that time due to their exempt status. *Id.* Plaintiff also cites to statements contained in declarations of managers and benefits analysts, claiming these declarations demonstrate that the analysts are similarly situated. For example, benefits analysts "are not regarded by Hewitt as managers; rather they are supervised by benefit operations managers and benefits service managers" (Kalinowska Dep. 20:10-12, 75:12-14; Able Dep. 39:15-16; Glover Dep. 16:21-17:23, 144:15-17; Malone Dep. 52:4-7; Teitelbaum Dep. 6:18-24); "all work with and are trained on Hewitt's proprietary databases and systems, including the Total Benefit Administration (TBA) process as well as the templates used for processing 'workflows' " (Hensel Dep. 53:21-54:1; Able Dep. 58:14-59:8; Basile Dep. 90:16-91:11; Glover Dep. 36:16-37:3; Gary Dep. 50:16-51:17; Malone Dep. 66:23-25; 67:12-14; Teitelbaum Dep. 32:18-33:2, 45:24-46:9); and "[do not] have authority to hire, fire, promote, demote, discipline, conduct formal performance reviews, or set pay scales of other employees (Hensel Dep. 101:6-13; Able

Dep. 54:10-55:15; Templeman Dep. 57:2-60:10; Daniels Dep. 109:19-111:13)." (Pl.'s Reply, at 6-7). Plaintiff claims that there is no requirement that all class members have identical experiences to be "similarly situated." *Id.* at 8 (citing *Hayes v. Laroy Thomas, Inc.,* 2006 WL 1004991, at *6 fn 3 (E.D.Tex.2006) ( "Plaintiffs need only show that their positions are similar but not identical.")).

*6 Defendant, however, contends that a court must deny a motion for conditional certification and notice when determining whether the potential plaintiffs are similarly situated will require a highly-individualized and fact-specific analysis into the disparate factual and employment settings of each putative plaintiff. (Def.'s Opp., at 12 (citing *Reich v. Homier Distrib. Co.,* 362 F.Supp.2d 1009, 1013-15 (N.D.Ind.2005)). Defendant contends that Herring and Bryant were not the victims of an unlawful scheme. *Id.* at 13.Further, Defendant claims that Herring and Bryant worked as H & W Benefits Analysts in New Jersey and Texas, and that the DB and DC Benefits Analysts' job duties differ greatly from H & W Benefits Analysts. *Id.* at 22.For example, in a study of eight client teams, Hewitt found as a percentage of their total work time that DC Benefits Analysts spent 22 percent less time performing workflows than H & W Benefits Analysts (29 percent vs. 51 percent) and 23 percent more time resolving other general issues unrelated to workflows (30 percent vs. 7 percent). (Def.'s Opp., at 22; Stiroh Decl., ¶ 8). Defendant claims that benefits analyst tasks, such as workflows and issue resolution, are inherently diverse and varied because each workflow is a custom, one-of-a-kind analysis. *Id.;* Teitelbaum Decl., ¶ 7. Defendants claim that "just as a determination of [plaintiff's] exempt or nonexempt status requires a detailed factual analysis of [their] daily activities and responsibilities, so does a determination of every individual [benefits analysts'] exempt or non-exempt status." *Diaz v. Elec. Boutique of Am., Inc.,* No. 04-840, 2005 WL 2654270, at *3 (W.D.N.Y. Oct. 17, 2005) (citing *Morisky,* 111 F.Supp. at 499).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

At this notice stage of the proceedings, Plaintiff is not required to make a substantial showing that she is substantially similar to the potential class members. Rather, courts employ a lenient standard when determining if a potential class is similarly situated and should be noticed, and do not impose the stricter standard to certify a class prior to trial. Accordingly, this Court concludes that Plaintiff has submitted sufficient evidence to demonstrate that the potential class members are similarly situated for purposes of conditionally certifying this potential class for notice purposes pursuant to Section 216(b).

## C. Plaintiff's Case is Appropriate for Court-Facilitated Notice

The benefits of a collective action "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate."*Hoffman-LaRoche,* 493 U.S. at 170. "[D]istrict courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) (1982 ed.), as incorporated by 29 U.S.C. § 626(b) (1982 ed.), [in ADEA actions] by facilitating notice to potential plaintiffs."*Id.* Moreover, "because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the parties."*Id.* at171 (quoting *Gulf Oil Co. V. Bernard,* 452 U .S. 89, 100 (1989))."Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action."*Id.* at 172.

*7 "The exempt or non-exempt status of any particular employee must be determined on the basis of whether his duties, responsibilities and salary meet all the requirements of the appropriate section of the regulations...."29 C.F.R. § 542.201(b)(2). In order to determine whether an employee's duty is administrative or productive "is extremely individual and fact-intensive, requiring 'a detailed analysis of

the time spent performing administrative duties' and 'a careful factual analysis of the full range of the employee's job duties and responsibilities.' " *Morisky,* 111 F.Supp.2d at 499 (quoting *Cooke v. General Dynamics Corp.,* 993 F.Supp. 56, 59-61 (D.Conn.1997)).

Plaintiff claims that this action is appropriate for collective treatment because the benefits analysts are similarly situated and hold essentially the same job duties. Plaintiff also points out that the claims of the potential opt-in plaintiffs are being extinguished or diminished every day due to the running of the statute of limitations. (Pl.'s Br., at 13 (citing *Redman v. U.S. West Bus. Res., Inc.,* 153 F.3d 691, 695 (8th Cir.1998)). According to Plaintiff, in § 216(b) collective actions, the statute of limitations for those who have not filed consent forms is not tolled with the commencement of the action. *Id.* Plaintiff claims that court-facilitated notice can prevent the continued erosion of these claims. (Pl.'s Br., at 13). Plaintiff also claims that providing notice will create significant judicial economies. *Id.* Plaintiff contends that many courts have granted conditional certification in misclassification cases under the FLSA, particularly at the notice stage where plaintiffs have successfully met the lenient standard showing that the putative class is similarly situated. (Pl.'s Reply, at 11 (citing *Goldman v. Radio Shack,* No. 03-032, 2003 WL 21250571, at *8 (E.D.Pa. Apr. 16, 2003)). Plaintiff argues that differences in individual experiences do not preclude conditional class certification at the notice stage as long as class members are similarly situated, as the positions and experiences of potential class members need not be identical, only similar. (Pl.'s Reply, at 11 (citing *Hayes,* 2006 WL 1004991, at *6 fn 3);*see also Moss v. Crawford,* 201 F.R.D. 398, 410 (W.D.Pa.2000) ("variations in the plaintiffs' duties, job locations and hourly billing rates do not differentiate the collective basis of the class to the extent that it defeats the primary objectives of a § 216(b) action.").

Defendant claims that this action is not appropriate

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

for collective action treatment. Defendant claims that determining whether plaintiffs performed exempt job duties requires a highly individualized and fact-sensitive inquiry. (Def.'s Opp., at 15). Defendant cites to the *Diaz* case, stating that "just as a determination of [the named plaintiff's] exempt or nonexempt status requires a detailed factual analysis of his daily activities and responsibilities, so does a determination of every individual [benefits analyst's] exempt or nonexempt status."*Diaz,* 2005 WL 2654270, at *3 (citing *Morisky,* 111 F.Supp. At 499). Defendant claims that Plaintiffs' duties "clearly included the exercise of discretion and independent judgment."*Id.* at 14.Defendant claims that Plaintiff cites no objective facts or documents to support the conclusory statements regarding benefits analyst duties in their declarations. *Id.* at 15.Defendant contends that benefits analyst's actual day-to-day job duties are determined, to a large extent, by their client's needs and expectations. *Id.* at 16.Defendant maintains that the job duties vary by the size of the client and the number of plans at issue. *Id.* at 18 (Bley Decl., ¶ 5). Defendant points out that some analysts spend a substantial portion of their time drafting and updating Standard Operating Procedures for lower ranking staff members to follow when a standard problem arises (Daniels Decl., ¶ 7), while others spend limited time on this function (Broghammer Decl., ¶ 17; Winkler Decl., ¶ 19). Defendant also claims that a benefits analyst's actual job duties are dependent on the analyst's level of competence and experience. (Def.'s Opp., at 19; Teitelbaum Decl., ¶ 6; Hampton Decl., ¶ 7).

*8 In addition to the differences Defendant claims exist among the benefits analyst positions, Defendant contends that Plaintiff did not address the DB and DC Benefits Analysts in their motion, which it claims differ markedly from the H & W Benefits Analysts. (Def.'s Opp., at 22). Defendant also notes that if any potential plaintiff were to opt into this case, his or her claims would be based largely on a different time period having little overlap with the time period applicable to the existing plaintiffs'

claims. *Id.* at 23-24 (citing *Reed v. Mobile Cty. Sch. Sys.,* 246 F.Supp. 1227, 1232 (S.D.Ala.2003)). Defendant submits that the amount of unpaid overtime allegedly worked by the named plaintiffs varies significantly and will require highly individualized proof. *Id.* at 25.

Plaintiff has provided this Court with a sufficient showing that the potential class members are similarly situated to be conditionally certified for notice purposes. While Defendant claims that the highly individualized positions of the benefits analysts prevent this case from being treated as a collective action, courts have permitted exemption lawsuits to be treated as collective actions as long as class members are found to be similarly situated at the notice stage. *Goldman,* 2003 WL 21250571, at *8;*Gerlach v. Wells Fargo & Co.,* No. 05-585, 2006 WL 824652 (N.D.Cal. March 28, 2006). We will not consider the substance of Defendant's arguments on the merits at this stage because only a motion for conditional certification is presently before us. *Goldman,* 2003 WL 21250571, at *8 (declining to consider the merits of an FLSA action involving exempt or nonexempt employees at the notice stage); *see also Eisen v. Carlisle & Jacqueline,* 417 U.S. 156, 178 (1974) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits...."). Accordingly, this Court concludes that this action may proceed as a collective action.

**D.** *Production of the Names and Contact Information of Potential Class Members*

Plaintiff also asks this Court to direct Defendant to produce potential class member names and contact information. (Pl.'s Br., at 14). Plaintiff requests that Defendant be ordered to produce the following within 10 days of the Court's order:

A list, in electronic format, of all persons employed by Defendant as benefit analysts three years from the date of the order to the present including: name,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

address, telephone number, dates of employment, location of employment, employee number, if any, and date of birth.

*Id.* Defendant, however, contends that it has provided the identities of 1,172 potential plaintiffs to plaintiffs' counsel during discovery. (Def.'s Opp., at 27). The Court directs the parties to consult with the Magistrate Judge to determine what, if any, contact information is needed in order to facilitate notice to the potential class members.

**E. *Proposed Form of Notice***

**\*9** Plaintiff submitted a form of notice to this Court to notify potential class members of this action. Defendant did not submit any objection to the form of notice. The Supreme Court has instructed, "[i]n exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action."*Hoffman-LaRoche,* 493 U.S. at 174. Before submitting this notice to the potential class members, the Court instructs the parties to meet and confer with regard to the proposed notice and then submit the proposed notice to the Court immediately thereafter. The parties are instructed to do so within 15 days of the date of this opinion and accompanying order to ensure that timely notice is provided to the potential class members.

**III. CONCLUSION**

For the foregoing reasons, Plaintiff's motion to facilitate notice pursuant to 29 U.S.C. § 216(b) is granted. The parties are also directed to consult with the Magistrate Judge to determine what information regarding potential class members is needed and to meet and confer regarding the form of notice within 15 days of the date of this opinion and submit the form of notice to this Court immediately thereafter. An appropriate form of order accompanies this Memorandum Opinion.

D.N.J.,2007.
Herring v. Hewitt Associates, Inc.
Slip Copy, 2007 WL 2121693 (D.N.J.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 2

Westlaw.

Slip Copy                                                                                                    Page 1
Slip Copy, 2007 WL 3396303 (D.N.J.)
**(Cite as: 2007 WL 3396303 (D.N.J.))**

Bouder v. Prudential Financial, Inc.
D.N.J.,2007.
Only the Westlaw citation is currently available.NOT FOR PUBLICATION
United States District Court,D. New Jersey.
Jeffrey BOUDER, Brian C. Kennedy and Carol
Kennedy, individually, and on behalf of all others
similarly situated, Plaintiffs,
v.
PRUDENTIAL FINANCIAL, INC., The Prudential
Insurance Company of America, Does 1-50 (said
names being fictitious individuals), and ABC Cor-
porations 1-50 (said names being fictitious compan-
ies, partnerships, joint ventures and/or corpora-
tions), Defendants.
**Civil Action No. 06-CV-4359 (DMC).**

Nov. 8, 2007.

James V. Bashian, Law Office of James V. Bashi-
an, PC, Fairfield, NJ, for Plaintiffs.
Christopher H. Lowe, Seyfarth Shaw, LLP, Tara
Smith Williams, Seyfarth Shaw, LLP, New York,
NY, for Defendants.

**OPINION**

DENNIS M. CAVANAUGH, District Judge.
*1 This matter comes before the Court upon motion
by Defendants Prudential Financial, Inc. and The
Prudential Insurance Company of America
(collectively "Defendants") to require Plaintiffs to
cease and desist from their attempted notice and
mass communications to putative plaintiffs. Pursu-
ant to FED.R.CIV.P. 78, no oral argument was
heard. After carefully considering the submissions
of the parties, and based upon the following, it is
the finding of this Court that Defendants' motion to
require Plaintiffs to cease and desist from their at-
tempted notice and mass communications to putat-
ive plaintiffs is **granted.**

**I. BACKGROUND**[FN1]

FN1. The facts set forth in this Opinion are
taken from the undisputed facts set forth in
the parties' FED.R.CIV.P. 56.1 statements
in their respective moving papers.

The Complaint, filed by Plaintiffs on September 15,
2006, purports to bring a class action on behalf of
Plaintiffs and other individuals who are not parties
to this action, from September 15, 2000 through the
present, seeking to recover damages, *inter alia,* for
alleged failure to pay overtime and unlawful deduc-
tions from pay, in violation of the Fair Labor Stand-
ards Act ("FLSA") and Pennsylvania state law. De-
fendants deny Plaintiffs' substantive allegations.

On February 20, 2007, Magistrate Judge Mark Falk
entered a scheduling order, as modified on May 23
and July 1, 2007, providing that (1) discovery with
respect to conditional certification of Plaintiffs'
FLSA claims shall be completed by August 31,
2007; (2) motions for conditional certification to fa-
cilitate notice to putative class members pursuant to
29 U.S.C. § 216(b) of the FLSA (and other mo-
tions) shall be filed by September 15, 2007; and (3)
opposition briefs and reply briefs shall be filed by
October 17 and October 31, 2007, respectively
("Scheduling Order").

To date, Plaintiffs have not filed a motion seeking
conditional class certification to facilitate notice to
putative class members. Therefore, the first phase
of discovery for the FLSA claims has not been
completed. Nevertheless, on July 24, 2007,
Plaintiffs' counsel informed Defendants' counsel
that it intended to send a letter and "Consent To
Sue" form to putative class members prior to the
Court ruling on Plaintiffs' motion for conditional
certification and application for notice to putative
class members, as required by 29 U.S.C. § 216(b)
of the FLSA and Scheduling Order.

**II. DISCUSSION**

Notwithstanding the Court Order, this Court recog-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

nizes the low standard required for conditional certification for purposes of notice. At the notice stage, the court "usually has only minimal evidence before it" and thus, "determination is made using a fairly lenient standard."*See Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F.Supp.2d at 497 (quoting *Thiessen v. Gen. Elec. Capital Corp.*, 996 F.Supp. 1071, 1080 (D.Kan.1998)). Further, this Court recognizes Plaintiffs' right to solicit potential clients. *See Hoffman-LaRoche, Inc. v. Sperling*, 493 U .S. 165 (1989). Nevertheless, Plaintiffs' must abide by the appropriate court procedures.

*2 Plaintiffs' counsel's proposed letter ("Letter") usurps this Court's power and statutory duty to oversee the FLSA-mandated process for court-facilitated notice to potential collective action members, including the fair content of such notice. More fundamentally, it preempts this Court's ability to determine whether and to whom class-wide notice is appropriate. *See Hoffmann-La Roche, Inc.*, 493 U.S. at 169. With this mass communication, Plaintiffs are flouting the statutory framework for opt-in collective actions, the Scheduling Order and this Court's authority to oversee notice to the putative class. Therefore, the letter is essentially an improper and unauthorized *de facto* notice.

The Supreme Court of the United States has made clear that a district court has a managerial responsibility to oversee the process by which putative class members are given notice of, and allowed to join, a § 216(b) collective action. *See Hoffmann-La Roche*, 493 U.S. at 169. Court supervision of any notice issued to putative class members is necessary in an FLSA collective action because "the potential for misuse of the class device, as by misleading communications, may be countered by court-authorized notice."*Id.* at 171.The Court also emphasized the "wisdom and necessity for early judicial intervention in the management of litigation" as "[o]ne of the most significant insights that skilled trial judges have gained."*Id.* The Court noted that, "[b]y monitoring preparation and distribution of the notice, a court can ensure that the no-

tice is timely, accurate, and informative. Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed."*Id.* at 172.

Outside the context of a notice process supervised by the Court, plaintiffs' attorneys are not permitted unilaterally to send unsolicited notices regarding the case to putative FLSA class members not yet parties to an action conditionally certified by the Court. *See, e.g., Woods v. New York Life Ins. Co.*, 686 F.2d 578, 580 (7th Cir.1982); *Melendez Cintron, et al. v. Hershey P.R., Inc.*, 363 F.Supp.2d 10, 17-18 (D.P.R.2005); *Taylor v. CompUSA, Inc.*, Civ. Action No. 04-CV-0718, 2004 WL 1660939, at *3 (N.D. Ga. June 29, 2004).

Moreover, before an individual plaintiff may give notice to other potential class members of their right to opt-in as a party to an FLSA lawsuit, the district court has the discretionary authority whether to approve the notification of the putative class members. *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218-19 (11th Cir.2001); *Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623, 630-31 (D.Colo.2002). Here, Plaintiffs have neither sought, nor received this Court's permission to proceed as a collective action and begin notice pursuant to § 216(b). Plaintiffs' counsel, therefore, should be prohibited from sending their letter to putative plaintiffs and required to seek the Court's approval, pursuant to a proper motion to facilitate notice consistent with the Court's Scheduling Order, before attempting to notify putative plaintiffs of this case.

*3 Further, Plaintiffs' counsel's solicitation to putative class members is improper because it is deceptive, misleading and contains numerous false statements. Courts have consistently held that litigants (and their counsel) may not make pre-certification statements to putative class members that are inaccurate or misleading or that present one-sided assertions as undisputed or unqualifiedly true. *See, e.g., Taylor*, 2004 WL 1660939, at *3;*Gerlach v. Wells Fargo & Co.*, Civ. Action No. 05-CV-0585, 2006 WL 824652, at *4 (N.D.Cal. Mar. 28, 2006);

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 3396303 (D.N.J.)
**(Cite as: 2007 WL 3396303 (D.N.J.))**

Page 3

*see also Gulf Oil Co. v. Bernard,* 452 U.S. 89, 102 (1981); *In re Community Bank of N. Va.,* 418 F.3d 277, 311 (3d Cir.2005).

Plaintiffs' counsel seeks to send the Letter and consent form to "all registered representatives," regardless of the title or position the individual held while employed by Defendants. Plaintiffs have not established that the various positions that fall under the category of "registered representatives" are similarly situated to their positions, that the positions are similarly situated to one another, or that the employees who occupied the positions are similarly situated to each other or to the named Plaintiffs. Conversely, Defendants contend that many of the positions included in Plaintiffs' putative class of "all registered representatives" are materially different from, and have a conflict of interest with, each other and with the named representatives who purport to represent their class. As a result, these positions are not properly joined together as positions eligible to join the lawsuit. *See, e.g., Threatt v. Residential CFR, Inc.,* Civil Action No. 05-CV-117, 2005 WL 2454164, at *4 (N.D .Ind. Oct. 4, 2005). Accordingly, Plaintiffs' counsel's Letter is misleading to the extent it suggests to putative class members that they are eligible to participate in this lawsuit collectively. *See Taylor,* 2004 WL 1660939, at *3.

## III. *CONCLUSION*

For the reasons stated, it is the finding of this Court that Defendants' motion to require Plaintiffs to cease and desist from their attempted notice and mass communications to putative plaintiffs is **granted.**An appropriate Order accompanies this Opinion.

D.N.J.,2007.
Bouder v. Prudential Financial, Inc.
Slip Copy, 2007 WL 3396303 (D.N.J.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 3

Westlaw.

Slip Copy                                                        Page 1
Slip Copy, 2005 WL 6103189 (W.D.Pa.)
**(Cite as: 2005 WL 6103189 (W.D.Pa.))**

Pontius v. Delta Financial Corp.
W.D.Pa.,2005.
Only the Westlaw citation is currently available.
United States District Court,W.D. Pennsylvania.
Douglas PONTIUS, Plaintiff,
v.
DELTA FINANCIAL CORP., d/b/a Fidelity Mortgage, Inc., Defendant.
**Civil Action No. 04-1737.**

June 24, 2005.

Donald H. Nichols, Paul J. Lukas, Michele R. Fisher, Nichols, Kaster & Anderson, P.L.L.P., Minneapolis, MN, for Plaintiff.
Andrew J. Voss, Minneapolis, MN, James MX. Ferber, Columbus, OH, Robert W. Pritchard, Littler Mendelson, P.C., Pittsburgh, PA, for Defendant.

### MEMORANDUM ORDER

GARY L. LANCASTER, District Judge.
*1 Plaintiff's complaint was received by the Clerk of Court on November 15, 2004, and was referred to United States Magistrate Judge Lisa Pupo Lenihan for pretrial proceedings in accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1), and Rules 72.1.3 and 72 .1.4 of the Local Rules for Magistrates.

The magistrate judge's Report and Recommendation (Doc. No. 23), filed on June 21, 2005, recommended that Plaintiffs Motion for Conditional Class Certification (Doc. No. 17-1) be granted, that Plaintiffs Motion to Authorize Judicial Notice (Doc. 17-2) be granted and that Plaintiffs Motion to Compel be granted in part and denied in part. The parties were informed that in accordance with Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, that they had ten (10) days to file any objections. The Defendant filed Objections (Doc. No. 24) on July 1, 2005 and plaintiff filed a response (Doc. No. 25) on July 19, 2005. After review of the pleadings

and the documents in the case, together with the report and recommendation and objections thereto, the following order is entered:

**AND NOW,** this *20th* day of *July,* 2005;

IT IS HEREBY **ORDERED** that Plaintiffs Motion for Conditional Class Certification (Doc. No. 17-1) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiffs Motion to Authorize Judicial Notice is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiffs Motion to Compel is **GRANTED** in part and **DENIED** in part as more fully stated in the Report and Recommendation of the magistrate judge.

**IT IS FURTHER ORDERED** that the Report and Recommendation (Doc. No. 23) of Magistrate Judge Lenihan, dated June 21, 2005, is adopted as the opinion of the court.

### REPORT AND RECOMMENDATION

LISA PUPO LENIHAN, United States Magistrate Judge.

### I. RECOMMENDATION

It is respectfully recommended that the Plaintiff's Motion for Conditional Class Certification be granted; that Plaintiff's Motion to Authorize Judicial Notice be granted; and that his Motion to Compel be granted in part and denied in part, all as more fully set forth herein.

### II. REPORT

This prospective class action involves claims related to Defendant's alleged illegal failure to pay overtime compensation to its loan officers, senior loan officers, and mortgage analysts (hereafter collectively referred to as "Mortgage Analysts") in ac-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 6103189 (W.D.Pa.)
**(Cite as: 2005 WL 6103189 (W.D.Pa.))**

Page 2

cordance with the relevant provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (the "FLSA"). Pontius (the "Named Plaintiff") attests that he and other Mortgage Analysts located in Defendant's eleven nation-wide branch offices and call centers are improperly classified as "exempt" employees under the FLSA and therefore not paid overtime. He further asserts that the position in which he is employed does not require or permit the exercise of individual discretion or authority necessary to excuse Defendant from responsibility for overtime payment, which payment is made to Defendants' telemarketers. Defendant maintains that the Mortgage Analysts are properly treated as exempt from overtime because they are responsible for "customizing" loan packages.FN1

> FN1. Defendant also asserts that the Mortgage Analysts are properly exempt because they have discretion to reduce loan origination fees. It is unclear whether this refers merely to an employee's freedom to accept a voluntary reduction of commission to complete a transaction. *See* Defendant's Consolidation Motion in Opposition at 20-21 (quoting employee Affidavits regarding employees' discretion to set the loan origination fees and to "[give] up some of the fees attached to the loan").

**\*2** First, because it is clear that the Named Plaintiff has met this Circuit's very lenient standard for conditional class certification-*i.e.,* he has made a colorable argument regarding a class of similarly-situated analysts, working within the same corporate department/division, and alleging the same unlawful conduct and seeking the same relief-conditional certification should be granted at this time.

Second, the notice should be distributed and opt-in permitted to all individuals employed by Defendant in a Mortgage Analyst position within the potentially applicable three-year statutory period; FN2 notice and opportunity to opt-in are to be given without regard to whether any individual employee had prior knowledge of this litigation, executed an

arbitration provision, or is classified as "highly compensated." Notice should be distributed in the usual manner, *i.e.,* by Plaintiff's counsel, with prior final approval of its content by this Court.

> FN2. Although FLSA claimants may collect damages within a two-year statute of limitations, damages may be awarded within a third year if a defendant's violation of the overtime laws was willful. *See*29 U.S.C. § 255(a).

Third, Plaintiff's Motion to Compel should be granted as to names and addresses, in electronic form, of all current and former loan officers/Mortgage Analysts employed by Defendant within the potentially applicable three-year statutory period. Plaintiff's Motion should be denied as to additional personal information requested.

**A. *Statement of Facts and Procedural History***

As discussed above, this is a civil class action for relief in consequence of Defendant's alleged illegal failure to pay overtime compensation to a class of employees whose position largely entails telephoning Defendant's potential home mortgage customers (*i.e.,* using "leads"), taking information necessary to the loan application, running the Company's computer program ("Click and Close") to determine what loan package(s) may be offered to that potential customer based on the financial information provided, and compiling customer documents for forwarding to a "loan processor" and thence to an underwriter. Defendant's Mortgage Analysts are paid $24,000 per year plus earned commissions.FN3

> FN3. The Named Plaintiff was employed as a loan officer in Defendant's Pittsburgh, Pennsylvania call center. He asserts that he and similarly-situated employees routinely worked in excess of forty (40) hours per week with no overtime compensation.

Defendant maintains that the Named Plaintiff mis-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 6103189 (W.D.Pa.)
**(Cite as: 2005 WL 6103189 (W.D.Pa.))**

represents the position, which involves "considerable" individual authority and discretion to structure and customize loan packages, and is therefore properly treated as exempt from the overtime requirements of the FLSA.[FN4]Defendant also asserts that employees who are employed outside the Pittsburgh office, who have executed arbitration provisions, who have seen prior advertisement regarding the potential litigation, or who are "highly compensated" are ineligible for inclusion in the prospective class and should not receive notice. For the reasons discussed below, this Court rejects each of those contentions. It does, however, concur with Defendant's objections to the scope of information requested in Plaintiffs' Motion to Compel and will therefore significantly narrow the information required to be produced.

> FN4.*See*29 U.S.C. §§ 207, 213(a)(1) (requiring compensation at one-and-a-half times regular rate for hours worked in excess of forty (40) per week, with certain exceptions for, *e.g.,* those employed in a *bona fide* administrative capacity).*Cf.* U.S. DOL Wage & Hour Div., Op. Letter, Feb. 16, 2001 (concluding loan officers did not exercise necessary discretion and independent judgement required to meet administrative exemption) (attached as Ex. G to Defendant's Consolidated Memorandum in Opposition).

### B. *Conditional Certification*

**\*3** In general, there are two requirements for an FLSA class action: plaintiffs must be "similarly situated" and members must file a consent to join the action ("opt-in").*Sperling v. Hoffman-LaRoche, Inc.,* 862 F.2d 439, 444 (3d Cir.1989).

This Court grants certification pursuant to the two-step analysis established in *Lusardi v. Lechner,* 855 F.2d 1062 (3d Cir.1988). Under *Lusardi,* to authorize notice to potential class members, the Court looks to pleadings and affidavits of record to determine if potential plaintiffs are "similarly situ-

ated" to representative plaintiff(s). This initial "determination is made using a fairly lenient standard and typically results in 'conditional certification' of a representative class."*Moss v. Crawford & Co.,* 201 F.R.D. 398 (W.D.Pa.2000); *Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1214 (5th Cir.1995).[FN5] When discovery is complete, defendant may move to decertify the class, and the Court applies a higher standard to analyze the similarly situated issue.[FN6]

> FN5.*See also Sperling v. Hoffman-La Roche. Inc.,* 118 F.R.D. 392, 406 (D.N.J.1988) (stating that "notice to absent class members need not await a conclusive finding of 'similar situations' "); *Severtson v. Phillips Beverage Co.,* 141 F.R.D. 276, 278 (D.Minn.1992) (requiring plaintiffs to establish only "a colorable basis" for their claim) (cited with approval in *Asencio v. Tyson Foods. Inc.,* 130 F.Supp.2d 660, 663 (E.D.Pa.2001)).

> FN6. At this stage, the Court will have more information upon which to make its factual determination on the question of "similarly situated." If the Court determines the parties meet the requirement, the case proceeds to trial; if not, the opt-in plaintiffs are dismissed without prejudice and the named plaintiff(s) proceed to trial on their individual claims. This two-step process "was implemented specifically to allow discovery on the circumstances of and facts surrounding the class members and named plaintiffs."*Lusardi,* 118 F.R.D. at 361.

> *See generally Hoffman-LaRoche, Inc.,* 493 U.S. at 170 (noting that a collective action both allows "plaintiff the advantage of lower individual costs to vindicate rights" and benefits the judicial system by "efficient resolution ... of common issues of law and fact arising from the same alleged ... activity").

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 6103189 (W.D.Pa.)
(Cite as: 2005 WL 6103189 (W.D.Pa.))

Page 4

In *Lockhart v. Westinghouse Credit Corp.*, the Third Circuit quoted with approval the following three-prong test for whether plaintiffs are similarly situated: "(1) employed in the same corporate department, division and location; (2) advanced similar claims ...; and (3) sought substantially the same form of relief ."879 F.2d 43, 51 (3d Cir.1989) (quoting *Plummer v. General Electric Co.,* 93 F.R.D. 311, 312 (E.D.Pa.1981)).

As to the first factor, the Circuit Court went on, however, to explain that the holding in *Plummer*"did not rest upon the fact that [plaintiffs] "worked in the same department, the same division and in the same location."*Id.* at 52 & n. 10.[FN7]Moreover, the Court concluded that, under a "balancing of the factors outlined in *Plummer*", there was "sufficient homogeneity" among plaintiffs who were within the Financial Services Division "albeit in different branch locations" where plaintiffs claimed the same unlawful conduct and sought the same relief. *Id.* at 52 .[FN8]

> FN7.*See also id.* at 61 (J. Garth, dissenting) (noting that *Plummer* involved employees who worked "in various departments and divisions" raising question of adequacy of representation and implicating defenses based on particular employment decisions of different managers).

> FN8.*See Mershon v. Elastic Stop Nut Division of Harvard Industries, Inc.,* 1990 WL 484152. *6 (D.N.J. Mar. 23, 1990) (noting that *Lockhart* expanded the *Plummer* rule by holding that "the fact that class members work in different locations does not invalidate a representative action" and granting conditional certification); *Lawrence v. City of Philadelphia,* 2004 WL 945139 (E.D. Pa. April 29, 2004) (conditionally certifying FLSA class of City paramedics seeking compensation for unpaid regularly-scheduled overtime where plaintiffs had same general job description, but differences in units, locations and su-

pervisors).

> Cf. *Asencio,* 130 F.Supp.2d 660 (applying *Lockhart* and granting conditional certification to employees at same facility); *Moss,* 201 F.R.D. at 409 (certifying FLSA class of insurance adjusters/invoice reviewers assigned to oil spills and working at branch and temporary offices and other locations on varying assignments).

In so holding, the *Lockhart* Court emphasized that plaintiffs alleged wrongful conduct "as a result of a pattern, plan or practice" having effect "in the same corporate division".*Id* See also *Mershon,* 1990 WL 484152 at *6 (noting that this was "central theme" of *Lockhart* ).[FN9] Other courts have similarly held that plaintiffs meet their initial "similarly situated" burden in an FLSA overtime case simply "by alleging that defendants compensated [other potential plaintiffs], who performed duties similar to the named plaintiffs, in the same manner ..., on a commission basis without additional compensation for overtime."[FN10]Finally, the Court also considered "whether separate defenses advanced by [defendant] would render the action unmanageable."879 F.2d at 51 (concluding they would not).FN11

> FN9.*See also Sperling,* 188 F.R.D. at 407 (explaining that at conditional certification/notice stage "courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan"); *Reab v. Electronic Arts, Inc.,* 214 F.R.D. 623, 627 (D.Colo.2002) (concluding conditional certification was appropriate where plaintiffs were allegedly victims of defendant's plan to pay less compensation than due under the FLSA); *Realite v. Ark. Restaurants Corp.,* 7 F.Supp.2d 303, 306 (S.D.N.Y.1998) requiring only a "modest factual showing" that potential class members were victims

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 6103189 (W.D.Pa.)
(Cite as: 2005 WL 6103189 (W.D.Pa.))

of a common illegal policy or plan); *Asencio,* 130 F.Supp.2d at 663 (concluding that broad averments in pleadings and declarations of four employees were sufficient "under the first tier's lenient standard" and that the detailed information submitted by defendants might "play a more significant role after discovery").

*Cf Moss,* 201 F.R.D. at 409 (concluding that differences in duties, geographic location, etc. did "not differentiate the collective basis of the class to the extent" that it defeated their common claim of violation of the FLSA by failing to pay overtime wages where the parties produced \$7F' 'substantial evidence' of a 'single decision, policy or plan" and denying motion for decertification).

FN10.*See Montova v. Rescue Industries, Inc.,* 1999 WL 240247, *11 (10th Cir. April 20, 1999) (concluding district court abused discretion in decertifying nationwide class of service technicians for overtime under FLSA because burden shifted to defendant); *id.*(citing both *Brzychnalski v. Unesco, Inc.,* 35 F.Supp.2d 351, 353 (S.D.N.Y.1999) (proposed class members were similarly situated because all were asbestos workers subject to common scheme to deprive them of overtime compensation) and *Lockhart v. Barnett,* 2002 WL 1023161 at *1 ("To establish that employees are similarly situated, a plaintiff must show that they are [such] with respect to their job requirements and ... pay provisions. [The] positions need not be identical, but similar.") (quoting *Tucker v. Labor Leasing, Inc.,* 872 F.Supp. 941, 947 (M.D.Fla.1994)).

FN11.*See also Moss,* 201 F.R.D. at 410 (concluding fact that employer would raise exempt-status defense for each opt-in plaintiff did not warrant decertification

where plaintiffs worked as monitors, adjusters, invoice reviewers and supervisors and duties of one would not be substantially distinct from those of another working in same position, so that court could coordinate exemption issue). More generally, the Court notes that Defendant's protestations to the contrary notwithstanding-it is certainly not clear at present that the potential plaintiffs are either so numerous or so diverse as to render a class action unmanageable.

In the case at hand, Plaintiff alleges, in pleading and by Affidavit, that he and other Mortgage Analysts are employed in the same department/division, perform similar duties, and are similarly compensated for their work in a position not legally excluded from overtime compensation under the FLSA. FN12

FN12. Defendant's own deposition testimony is of centralized decision-making and planning regardless of geographic location. More specifically, Defendant's representative testified that its Mortgage Analysts utilize and are employed under Company-wide written orientation and training materials, job descriptions, performance goals, compensation structure/payroll, and other policies, and, as a matter of policy, are not paid overtime. *See* Deposition of Sarojini Baltrus (excerpts attached as Exhibit B to Plaintiff s Motion for Conditional Class Certification).

Although Defendant also submits Affidavits of selected Mortgage Analysts contradicting Plaintiff's factual assertions regarding the nature of the position, they should not alter this Court's conclusion that Plaintiff has met the lenient test for conditional certification. *See Asencio,* 130 F.Supp.2d at 663-664 (noting that at this early stage plaintiffs could "not counter every assertion made

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

by the defendant" who "already has access to all of the information it requires concerning the running of its own facilities"); *Severtson,* 141 F.R.D. at 278-79 (discussing "colorable claim" standard and noting that determination on authorization for judicial notice does not require that court make findings of fact or credibility determinations with respect to contradictory evidence). Relatedly, the Court notes Defendant's estimate that it currently employs approximately 341 Mortgage Analysts, and its projection of 960 potential plaintiffs. (The Court also observes that Defendant's figures suggest a highly transient workforce in this position.)

### C. *Judicial Notice of Collective Action*

**\*4** Unlike a standard class action under Fed.R.Civ.P. 23, an FLSA class action is "opt-in" rather than opt-out (individuals may only join by giving written consent to Court).[FN13] In addition, the statute of limitations is not tolled; thus, valid damages claims, if any, are being lost or reduced. Therefore, the Court "has discretion to allow a party asserting FLSA claims on behalf of others to notify potential plaintiffs".*Barnett v. Countrywide Credit Industries, Inc.,* 2002 WL 1023161, *1 (N.D.Tex. May 21, 2002) (citing *Hoffman-LaRoche, Inc. v. Sperling,* 493 U.S. 165, 169 (1989)).[FN14]

> FN13.*See*29 U.S.C. § 216(b) (providing that "one or more employees" may maintain an FLSA action in behalf of "themselves and other employees similarly situated", but that "[n]o employee shall be a party plaintiff ... unless he gives his consent in writing ... and such consent is filed in the court in which such action is brought").

> FN14. The *Barnett* Court followed *Lusardi* and conditionally certified a nation-wide

class of home loan consultants, loan officers and loan originators. *Id.*

(1) *To whom:* Defendant asserts that employees subject to voluntarily-entered arbitration agreements should be excluded from notice;[FN15] as should employees aware of prior advertisement related to the litigation,[FN16] employed outside the Pittsburgh branch, and/or "highly compensated." Defendant's suggestion of a regional limitation is rebutted by the case law discussed, *supra;* for reasons already reviewed, nationwide notice is appropriate in this action. Similarly, Defendant's observation that employees with annual compensation in excess of $100,000 who "customarily and regularly perform any one or more of the exempt duties or responsibilities of an administrative employee" should also not bar notice or opt-in at this stage.FN17 Nor should employees be excluded at this early stage because they may have been aware of this litigation through prior advertising [FN18] and/or have signed agreements containing arbitration clauses. Rather, notice and an opt-in opportunity should be broadly given, even though the Court may subsequently conclude, following discovery and additional legal analysis, that such individuals are ineligible for class participation. *See Carter v. Countrywide Credit Indus., Inc.,* 189 F.Supp.2d 606, 621 (N.D.Tex.2002) (dismissing cases of named and opt-in plaintiffs who had signed arbitration agreements).[FN19]

> FN15. The number of potential class members to have executed some form of arbitration provision appears to be 208. *See* Defendant's Consolidated Memorandum in Opposition at 6-7 (lioting that a "current version" of the arbitration agreement "has been executed by approximately 138 mortgage analysts" and that "[a]pproximately 70 mortgage analysts who were employed ... within the last three years are parties" to an earlier arbitration agreement).

> FN16. Defendant asserts that in November, 2004, when this action was filed, Plaintiff's

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2005 WL 6103189 (W.D.Pa.)

(Cite as: 2005 WL 6103189 (W.D.Pa.))

Page 7

counsel sent an advertisement to 62 individuals employed as Mortgage Analysts within the last three years. *See id* . at 8.

FN17. Defendant's Consolidated Motion in Opposition at 34 (citing 29 C.F.R. § 541.601(a)).

FN18.*See infra* n. 24.

FN19.*Cf. Barnett,* 2002 WL 1023161 at *2 (ordering Defendant to provide list of names and lastknown addresses (in electronic form) of current and former loan consultants/originators employed within statutory period and classified as exempt from provisions of FLSA, with list to be divided into those who signed arbitration agreements and those who did not; latter could receive notice but were not permit to return consent form and opt-in to suit).

Subsequent consideration of the arbitration provisions, if any, may raise issues regarding enforceability. *Compare, e.g., Walker v. Countrywide Credit Indus., Inc.,* 2004 WL 246404 * (N.D.Tex. Jan. 15, 2004) (granting motion to compel arbitration in FLSA loan officer case, holding that dispute was within scope of arbitration agreement and enforcement of arbitration provision was not otherwise barred) *with Ferguson v. Countrywide Credit Indus., Inc.,* 298 F.3d 778, 785 (9th Cir.2002) (invalidating loan officer's arbitration agreements as unconscionable in light of unequal bargaining power of parties and expenses employees would be forced to incur).

(2) *By whom:* Defendant's request that notice be given through an independent administrator as opposed to Plaintiff's counsel is unusual. Defendant has provided no information regarding the nature of the other "discovery dispute" related to its mortgage analysts, as to which it states notice is being given by an "independent class action claims administrator" ("Rust Consulting, Inc."), nor has it provided any authority for its request.[FN20]To this Court's knowledge, notice of conditional certification is most commonly given by Plaintiff's counsel and the Court sees no reason to depart from that practice in this case. Plaintiff should therefore be given leave to send judicial notice in accordance with the other provisions of this report and recommendation.

FN20. Defendant's Consolidated Motion in Opposition at 38.

(3) *Content:* At bottom, this Court has a responsibility to facilitate and monitor the content and efficient distribution of appropriate notice to potential opt-in class members. Notice should not encourage joinder or communicate any approval of suit on the merits. *Hoffman-LaRoche.* 493 U.S. at 170 (discussing same).

*5 In accordance with the argument heard by this Court on June 15, 2005, [FN21] the reference date of such Notice will be three (3) years prior to the date of the mailing and the Notice will refer to Plaintiff in the singular. In addition, the Notice shall reflect that claims are limited to a two, or potentially three, year statute of limitations and the Notice shall further require that to join the lawsuit a prospective plaintiff must submit the Consent Form on or before a date seventy-five. (75) days from the date of mailing of the Notice.[FN22]

FN21. Andrew Voss, Esq. and Rachel O'Driscoll appeared on behalf of the Plaintiff; Paul Lukas and Donald Nichols appeared on behalf of the Defendant.

FN22. This time frame is in accordance with the Report of Parties' Rule 26(f) Conference on January 10, 2005.

That said, the remainder of the language of the proposed Notice objected to by Defendant, more specifically, the caption and the judicial notice lan-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

guage-are entirely in keeping with the form of Notice sanctioned by the Third Circuit. The Notice specifically informs the recipient that the Court "has taken no position regarding the merits" of the case, and the Court therefore deems the remaining language of the proposed Notice proper in this case.FN23 Plaintiff shall therefore simply modify the Notice in accordance with the agreements reached at argument, and as set forth above.

> FN23. These reasons also underlie the Court's rejection of Defendant's argument that Judicial Notice to individuals who may have prior advertisement-based knowledge of the litigation would constitute an inappropriate "invitation" or "solicitation" to join the suit. *See* Section II(c)(2), *supra*. *Compare* Defendant's Consolidated Motion in Opposition at 39-40 (citing Pennsylvania Rules of Professional Conduct cautioning practitioners against repeated unauthorized solicitations).

**D. *Motion to Compel***

The information requested by the Named Plaintiff is well beyond that necessary to give notice. He is entitled to the full names and last-known addresses, in electronic form, of all individuals employed by Defendant as loan officers and/or Mortgage Analysts within the potentially applicable three-year limitations period. *See Asencio.* 130 F.Supp.2d at 663 (holding that court may facilitate notice by allowing discovery of names and addresses of potential plaintiffs); *Barnett, supra.*Further information need not be provided for this purpose and Defendant rightfully complains of certain confidentiality issues.

**III. *CONCLUSION***

For the reasons set forth above, it is recommended that Plaintiff's Motion for Conditional Class Certification be granted; Plaintiff's Motion to Authorize Judicial Notice be granted, subject to revision and

final approval by this Court; and his Motion to Compel be granted as to the names and addresses of all individuals meeting the above-parameters. Defendant shall promptly (*i.e.*, within ten (10) days from the date of service hereof) disclose to Plaintiff's counsel the full names and last known mailing addresses of all past and present employees who worked as loan officers and/or Mortgage Analysts within the potentially applicable three-year statutory period. Plaintiff shall revise and resubmit the proposed Notice for Court approval within ten (10) days from the date of service hereof.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1) (B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

W.D.Pa.,2005.
Pontius v. Delta Financial Corp.
Slip Copy, 2005 WL 6103189 (W.D.Pa.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 4

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF DELAWARE

KATHRYN L. FITZGIBBON,　　　　　*
LAUREN M. FLEMING, and　　　　　*
ALL SIMILARLY SITUATED CURRENT *
AND FORMER EMPLOYEES OF　　　*
ING BANK, fsb, AND ITS WHOLLY　　*
OWNED SUBSIDIARIES,　　　　　　*
　　　　Plaintiffs,　　　　　　　　*
　　　　　　　　　　　　　　　　*　　C.A. NO.
　　　　　　　　　　　　　　　　*
　　　　v.　　　　　　　　　　　*
　　　　　　　　　　　　　　　　*
ING BANK, fsb, (a Delaware corporation), *
and ALL OTHER WHOLLY OWNED　*　　JURY TRIAL DEMANDED
SUBSIDIARIES OF ING BANK, fsb,　　*
WHICH HAVE EMPLOYED　　　　　*
SIMILARLY　SITUATED CURRENT　*
AND FORMER EMPLOYEES SINCE　*
November 16, 2004,　　　　　　　*
　　　　　　　　　　　　　　　　*
　　　　Defendants.　　　　　　　*

## DECLARATION OF LAUREN M. FLEMING

1.　　　My name is Lauren M. Fleming and I have made claims in this action against ING Bank ("ING") for overtime pay.

2.　　　I was employed at ING from June 2003 until my employment was terminated on August 27, 2007. I worked at ING's Wilmington, DE facility. My supervisor at the time my employment was terminated was Cathy MacFarlane, Head of Corporate Relations. The Corporate Relations Department included corporate communication, public relations, media relations, government relations and investor relations.

3.　　　While working for ING, my primary responsibilities were to monitor and review internal and external communications; execute internal and external communications plans; and facilitate communications regarding ING's community involvement. In essence, I prepared and delivered communications regarding ING's policies, products and services to internal ING audiences, external stakeholders, and various members of the media. However, all of these communications required approval from another ING employee in a superior position; any external communication required additional approval from an executive level employee within ING.

4.  I was not involved in the formulation or implementation of any policies for ING, but merely to produce work product in the form of communications that adhered to previously formulated or implemented ING policies.

5.  During my employment with ING, I worked overtime hours for which I was not compensated.

6.  I initially worked in the marketing department (in the public relations group) and later the public relations group within the marketing department became its own department: the public relations department.

7.  As a former member of the marketing department, I have knowledge of the job duties of employees in the marketing department who were not in my specific group. Those duties are very similar to those that I performed in the public relations department. Specifically, both are responsible for preparing and making communications pertaining to ING's policies, products and services.

8.  It is difficult to identify with specificity the job titles of the other individuals at ING who performed similar job functions as I because ING deemphasizes job titles and individuals are more likely to identify themselves with a specific department rather than their job title.

9.  Neither I nor my peers at my pay grade (G14) or those at the exempt pay grades below me in the public relations and marketing departments exercised any significant discretion or independent judgment to matters of significance to ING in our job functions. In particular, we were not permitted to make any communications to individuals outside of ING unless those communications were approved by ING employees of a superior position. Any discretion that we did have was required to be exercised within the confines of ING's procedures, rules and policies.

10. I and my co-workers in the public relations and marketing departments at pay grade (G14) and below were required to badge in and out as a means for ING to keep track of the time that we were at work, we had no supervisory authority and were required to work from 8:00 a.m. to 5:00 p.m. As such, we had no authority to arrive late or to leave early at our own discretion.

11. I am aware of other employees or former employees in the marketing and public relations departments at ING who were not paid for all of their overtime hours worked. I have knowledge that some of these individuals are interested in pursuing their claim for unpaid overtime compensation and I believe others in these departments would be interested in knowing about their right to pursue a claim in this regard against ING.

11.    I am aware of other employees or former employees in the marketing and public relations departments at ING who were not paid for all of their overtime hours worked. I have knowledge that some of these individuals are interested in pursuing their claim for unpaid overtime compensation and I believe others in these departments would be interested in knowing about their right to pursue a claim in this regard against ING.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date: 5/4/08

Lauren M. Fleming

**IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE**

KATHRYN L. FITZGIBBON,          *
LAUREN M. FLEMING, and          *
ALL SIMILARLY SITUATED CURRENT  *
AND FORMER EMPLOYEES OF         *
ING BANK, fsb, AND ITS WHOLLY   *
OWNED SUBSIDIARIES,             *
    Plaintiffs,            *
                            *    C.A. NO.
                            *
      v.                   *
                            *
ING BANK, fsb, (a Delaware corporation),  *
and ALL OTHER WHOLLY OWNED      *    JURY TRIAL DEMANDED
SUBSIDIARIES OF ING BANK, fsb,  *
WHICH HAVE EMPLOYED             *
SIMILARLY  SITUATED CURRENT     *
AND FORMER EMPLOYEES SINCE      *
November 16, 2004,              *
                            *
    Defendants.                *

## DECLARATION OF KATHRYN L. FITZGIBBON

1.     My name is Kathryn L. Fitzgibbon and I have made claims in this action against ING Bank ("ING") for overtime pay.

2.     I was employed at ING from September 2004 until my employment was terminated on August 27, 2007. I worked at ING's Wilmington, DE facility. My supervisor at the time my employment was terminated was Cathy MacFarlane, Head of Corporate Relations.  The Corporate Relations Department included corporate communication, public relations, media relations, government relations and investor relations.

3.     While working for ING, my primary responsibilities were to monitor and review internal and external communications; execute internal and external communications plans; and facilitate communications regarding ING's community involvement.  In essence, I prepared and delivered communications regarding ING's policies, products and services to internal ING audiences, external stakeholders, and various members of the media. However, all of these communications required approval from another ING employee in a superior position; any external communication required additional approval from an executive level employee within ING.

4.     I was not involved in the formulation or implementation of any policies for ING, but merely to produce work product in the form of communications that adhered to previously formulated or implemented ING policies.

5.     During my employment with ING, I worked overtime hours for which I was not compensated.

6.     I initially worked in the marketing department (in the public relations group) and later the public relations group within the marketing department became its own department: the public relations department.

7.     As a former member of the marketing department, I have knowledge of the job duties of employees in the marketing department who were not in my specific group. Those duties are very similar to those that I performed in the public relations department. Specifically, both are responsible for preparing and making communications pertaining to ING's policies, products and services.

8.     It is difficult to identify with specificity the job titles of the other individuals at ING who performed similar job functions as I because ING deemphasizes job titles and individuals are more likely to identify themselves with a specific department rather than their job title.

9.     Neither I nor my peers at my pay grade (G14) or those at the exempt pay grades below me in the public relations and marketing departments exercised any significant discretion or independent judgment to matters of significance to ING in our job functions. In particular, we were not permitted to make any communications to individuals outside of ING unless those communications were approved by ING employees of a superior position. Any discretion that we did have was required to be exercised within the confines of ING's procedures, rules and policies.

10.     I and my co-workers in the public relations and marketing departments at pay grade (G14) and below were required to badge in and out as a means for ING to keep track of the time that we were at work, we had no supervisory authority and were required to work from 8:00 a.m. to 5:00 p.m. As such, we had no authority to arrive late or to leave early at our own discretion.

11.     I am aware of other employees or former employees in the marketing and public relations departments at ING who were not paid for all of their overtime hours worked. I have knowledge that some of these individuals are interested in pursuing their claim for unpaid overtime compensation and I believe others in these departments would be interested in knowing about their right to pursue a claim in this regard against ING.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date: _5/7/08_

Kathryn L. Fitzgibbon

## ING BANK, fsb PLAINTIFF CONSENT FORM

    I hereby consent to join the action against ING BANK, fsb, and all of its wholly owned subsidiaries ("ING") as a Plaintiff to assert claims for overtime pay. If this case does not proceed collectively, I also consent to join a subsequent action to assert these same claims. During the past three years, there were occasions when I worked over 40 hours per week for ING as a public relations associate, marketing associate or other similar nonexempt positions at ING pay grade G14 when I did not receive overtime compensation.

Lauren M. Fleming
5107 Diana Drive
Wilmington, DE 19808

If any of the above information has changed, please update.

_Lauren M Fleming_ 11/9/07
Signature                          Date

_302 - 373 - 8333_
Best Telephone Numbers

_lfleming5@gmail.com_
Email Address

_4922_
Last Four Digits of Social Security Number

_Gloria Fleming 302 239 3846_
Emergency Contact (in case we lose contact)

Fax, Mail or Email to:

Martin & Wilson, P.A.
Attn. Timothy J. Wilson
1508 Pennsylvania Ave.
Wilmington, DE 19806
(302) 777-4681 Telephone
(302) 777-5803
twilson@martinandwilson.com
Web: www.overtimelawyers.org

## ING BANK, fsb PLAINTIFF CONSENT FORM

I hereby consent to join the action against ING BANK, fsb, and all of its wholly owned subsidiaries ("ING") as a Plaintiff to assert claims for overtime pay. If this case does not proceed collectively, I also consent to join a subsequent action to assert these same claims. During the past three years, there were occasions when I worked over 40 hours per week for ING as a public relations associate, marketing associate or other similar nonexempt positions at ING pay grade G14 when I did not receive overtime compensation.

Kathryn L. Fitzgibbon
1327 North Clayton Street
Wilmington, DE 19806

If any of the above information has changed, please update.

_Kathryn L. Fitzgibbon_          4/8/07
Signature                              Date

_302-743-0721 (cell) - 302-504-5254_
Best Telephone Numbers                    (work)

_Kfitzgib107@gmail.com_
Email Address

_1110_
Last Four Digits of Social Securityy Number

_Patrick Callihan - 302-983-3928_
Emergency Contact (in case we lose contact)

Fax, Mail or Email to:        Martin & Wilson, P.A.
                              Attn. Timothy J. Wilson
                              1508 Pennsylvania Ave.
                              Wilmington, DE 19806
                              (302) 777-4681 Telephone
                              (302) 777-5803
                              twilson@martinandwilson.com
                              Web: www.overtimelawyers.com

**IN THE UNITED STATES DISTRICT COURT**
**IN AND FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| KATHRYN L. FITZGIBBON, | * | |
| LAUREN M. FLEMING, and | * | |
| ALL SIMILARLY SITUATED CURRENT | * | |
| AND FORMER EMPLOYEES OF | * | |
| ING BANK, fsb, AND ITS WHOLLY | * | |
| OWNED SUBSIDIARIES, | * | |
|     Plaintiffs, | * | |
| | * | C.A. NO. 07-735 (JJF) |
| | * | |
|     v. | * | |
| | * | |
| ING BANK, fsb, (a Delaware corporation), | * | |
| and ALL OTHER WHOLLY OWNED | * | JURY TRIAL DEMANDED |
| SUBSIDIARIES OF ING BANK, fsb, | * | |
| WHICH HAVE EMPLOYED | * | |
| SIMILARLY  SITUATED CURRENT | * | |
| AND FORMER EMPLOYEES SINCE | * | |
| November 15, 2004, | * | |
| | * | |
|     Defendants. | * | |

## CERTIFICATE OF SERVICE

I, Timothy J. Wilson, the undersigned counsel for Plaintiff in the above-captioned case, hereby certify that the foregoing *Plaintiff's Motion to Proceed as a Collective Action, To Facilitate Notice and to Require Defendant to Provide Information* was filed via CM/EMF on May 19, 2008 to the following:

Darryl A. Parson, Esquire
Drinker Biddle & Reath LLP
1100 N. Market Street
Wilmington, DE 19801-1254

MARTIN & WILSON, P.A.

TIMOTHY J. WILSON, ESQUIRE
DE Bar I.D. No.: 4323
1508 Pennsylvania Ave
Wilmington, DE 19806
(302) 777-4681
twilson@martinandwilson.com
*Attorney for Plaintiffs*

DATED:      May 19, 2008