**IN THE UNITED STATES DISTRICT COURT**
**IN AND FOR THE DISTRICT OF DELAWARE**

KATHRYN L. FITZGIBBON,　　　　　　　:
LAUREN M. FLEMING, and　　　　　　　:
ALL SIMILARLY SITUATED CURRENT :
AND FORMER EMPLOYEES OF　　　　　:
ING BANK, fsb, AND ITS WHOLLY　　:
OWNED SUBSIDIARIES,　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　Plaintiffs,　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:　　　C.A. NO. 07-735 (JJF)
　　　　　v.　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
ING BANK, fsb, (a Delaware corporation), :
and ALL OTHER WHOLLY OWNED　　:　　　JURY TRIAL DEMANDED
SUBSIDIARIES OF ING BANK, fsb,　　:
WHICH HAVE EMPLOYED　　　　　　:
SIMILARLY SITUATED CURRENT　　:
AND FORMER EMPLOYEES SINCE　　:
November 15, 2004,　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　Defendants.　　　　　　　　　:

---

**DEFENDANT ING BANK, FSB'S RESPONSE IN**
**OPPOSITION TO PLAINTIFFS' MOTION TO PROCEED**
**AS A COLLECTIVE ACTION, TO FACILITATE NOTICE AND**
**TO REQUIRE DEFENDANT TO PROVIDE INFORMATION**

---

Defendant ING Bank, fsb ("ING" or the "Bank"), by and through its undersigned

counsel, hereby responds in opposition to Plaintiffs' Motion to Proceed as a Collective Action, to

Facilitate Notice and to Require Defendant to Provide Information, and in support thereof states

as follows:

**I.　　INTRODUCTION**

　　　　1.　　In their Motion, Plaintiffs offer no evidence that other ING employees are

actually "similarly situated" to them, as required for conditional class certification. They instead

baldly assert that other unnamed and unidentified employees working in a different department

within ING for different supervisors are similarly situated to them simply because they, like Plaintiffs, have some responsibility for "preparing and making communications pertaining to ING's policies, products and services." This is not enough.

2.     Further, the actual evidence demonstrates that the positions that Plaintiffs seek to include within the putative class are, in fact, markedly different from Plaintiffs' own and entail different job duties. Accordingly, the Court should deny Plaintiffs' Motion.

## II.     FACTUAL BACKGROUND

### A.     <u>Procedural Posture</u>

3.     Plaintiffs Kathryn Fitzgibbon and Lauren Fleming ("Plaintiffs") are former ING employees who worked in ING's public relations group/department (known officially within ING as the Corporate Relations Department) prior to their separation in August 2007. Pl. Mot. at Exh. 4, ¶¶ 2, 6 and Exh. 5, ¶¶ 2, 6.

4.     At all times, ING treated Plaintiffs as "exempt" employees under the Fair Labor Standards Act ("FLSA"), meaning that they were paid a salary for all hours worked and were not entitled to additional pay for hours worked in excess of 40 per week.

5.     Plaintiffs filed this action on behalf of themselves and others similarly situated alleging, in relevant part, that ING misclassified them as "exempt" employees in violation of the FLSA and seeking overtime premium payments that they would have received if classified as "non-exempt" under the FLSA. D.I. 1. ING denies these allegations and maintains that it properly classified Plaintiffs. D.I. 7.

### B.     <u>Plaintiffs' Motion for Conditional Class Certification</u>

6.     Plaintiffs now ask this Court to certify the case as a collective action pursuant to 29 U.S.C. § 216(b) so that "similarly situated" employees may join in. Plaintiffs did not, in their

Motion, provide a proposed class definition that would define how the putative class would be defined. Instead, Plaintiffs seek certification of an undefined, open-ended, and unnamed class of current and former ING employees, particularly employees in ING's Marketing and Corporate Relations Departments. *See* Pl. Mot. at pp. 1-3.

7.    Having taken no relevant discovery to date, Plaintiffs rely entirely on their own conclusory declarations to support their Motion. In these declarations, Plaintiffs state that while they worked in ING's Corporate Relations Department, other employees in a different department, the Marketing Department, performed "duties that are very similar to those that [they] performed in the [Corporate] [R]elations [D]epartment" – specifically "preparing and making communications pertaining to ING's policies, products, and services." Pl. Mot. at Exh. 4, ¶ 7 and Exh. 5, ¶ 7.

8.    Plaintiffs do not identify these other "similarly situated" employees. *Id.* Nor do they state such basics as whether the "communications" were the same in form, nature, scope, or length as those that Plaintiffs prepared; whether preparing communications was the unnamed employees' primary responsibility or whether they had other duties as well; and to whom the other employees' communications were sent (e.g., ING employees, customers, media, etc.). *Id.*

C.    **ING's Organizational Structure and Marketing Department Employees**

9.    As Plaintiffs state in their declarations, ING maintains separate Marketing and Corporate Relations Departments. *See* Pl. Mot. at Exh. 4, ¶ 7 and Exh. 5, ¶ 3. The two Departments serve different functions.

10.    ING's Corporate Relations Department plans and coordinates the development and delivery of external communications and messaging by writing and distributing press materials and contacting reporters to facilitate media coverage. Exh. A, Declaration of Cathy

MacFarlane (hereinafter, "MacFarlane Decl.") at ¶ 4. It also manages media relations, governmental relations, corporate sponsorships, and community events; coordinates ING executive interviews, speaking engagements and media coverage; and prepares internet postings and content for ING newsletters and websites. *Id.* at ¶ 5.

11.    The focus of ING's Marketing Department is different. Although written communications are an aspect of what the Department does, it is focused more broadly on building brand awareness by developing, delivering and analyzing results from the communication of the Bank's products and services. Exh. B, Declaration of John Owens (hereinafter, "Owens Decl.") at ¶ 4. The Department also develops the Bank's marketing, advertising, and communication strategies and plans in light of variable market and competitive conditions. *Id.* at ¶ 5.

12.    The Marketing and Corporate Relations Departments are headed by different managers, and the professionals working in the two departments have different supervisors. Plaintiffs were supervised at the time of their separation by Cathy MacFarlane. Exh. A, MacFarlane Decl. at ¶ 7. The Marketing Department, by contrast, is headed by John Owens, who on his own and through other leaders supervise a group of approximately 35 professionals. Exh. B, Owens Decl. at ¶ 3.

13.    Plaintiffs describe their positions as, "in essence, … prepar[ing] and deliver[ing] communications regarding ING's policies and products and services to internal ING audiences, external stakeholders, and various members of the media." Pl. Mot. at Exh. 4, ¶ 7 and Exh. 5, ¶ 3. While certain positions within the Marketing Department are also responsible for communications related to the Bank's products and services, the positions have different job descriptions and different duties and responsibilities. Exh. B, Owens Decl. at ¶ 7.

14.    For example, as detailed in John Owens' declaration, the Bank employs, within the Marketing Department, a Consumer Advocacy Manager, a Customer Marketing Associate, and an Email Marketing Specialist. Each of these employees has responsibility, on some level, for preparing Bank-related communications. However, their communication duties are very specialized and very different from those performed by Plaintiffs and other ING employees (*e.g.*, the Consumer Advocacy Manager manages content on the Bank's website, whereas the Email Marketing Specialist works solely with email-based communications). Further, each has additional duties that others in the Marketing Department do not, and which Plaintiffs did not, perform. *Id.* at ¶¶ 8, 9, and 10.

## III.    ARGUMENT

### A.    Plaintiffs Have Not Produced Sufficient Evidence That Other ING Employees Are "Similarly Situated" to Them.

15.    Collective actions under the FLSA are governed by 29 U.S.C. § 216(b), which, unlike Federal Rule of Civil Procedure 23, establishes an "opt-in" procedure for others who desire to join the litigation to be included. *Harris v. HealthCare Services Group, Inc.*, No. 06-2903, 2007 U.S. Dist. LEXIS 55221 at *4-5 (E.D. Pa. Jul. 31, 2007).

16.    "There are two requirements for potential plaintiffs to be included in the collective action: plaintiffs must (1) be 'similarly situated' and (2) give written consent." *Id.* at *5 (quoting 29 U.S.C. § 216(b)).

17.    It is "Plaintiffs [who] bear the burden of showing they are similarly situated to the remainder of the proposed class." *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 496 (D.N.J. 2000) (citation omitted).

18.    "The determination of whether FLSA claimants are 'similarly situated' for the purposes of [29 U.S.C.] § 216(b) is a two-step procedure." *Smith v. Sovereign Bancorp, Inc.*,

No. 03-CV-2420, 2003 U.S. Dist. LEXIS 21010, at *4 (E.D. Pa. Nov. 13, 2003).

> The first step, generally conducted early in the litigation process, is a preliminary inquiry into whether the plaintiffs' proposed class is constituted of similarly-situated employees. The second step, usually conducted after the completion of class-related discovery, is a specific factual analysis of each employee's claim to ensure that each actual claimant is appropriately made party to the suit.

*Id.* at *4-5 (internal citations omitted). Plaintiffs' Motion implicates the first step.

19.    Although lenient, conditional certification of a Section 216(b) collective action at the first step is not automatic. *Id.* at *10. The prevailing view in this Circuit is that the plaintiffs must "make a basic factual showing that the proposed recipients of opt-in notices are similarly situated to the named plaintiffs." *Id.*; *see also Dreyer v. Altchem Environmental Servs., Inc.*, No. 06-2393, 2007 U.S. Dist LEXIS 71048 at *6-7 (D.N.J. Sept. 25, 2007) (noting and following "the trend within the [Third] Circuit in requiring 'some modest evidence, beyond pure speculation'").[1]

20.    Mere allegations in a complaint do not satisfy the plaintiffs' burden at this stage. Were a plaintiff able to obtain conditional certification based on mere allegations:

> [A]ny plaintiff who is denied overtime pay may file suit under FLSA and, as long as her complaint is well-pled, receive preliminary class certification and send court-approved notice forms to every one of her employer's hourly employees. This is, at best, an inefficient and overbroad application of the opt-in system, and at worst it places a substantial and expensive burden on a defendant to provide names and addresses of thousands of employees who would clearly be established

---

[1]    *See also Harris*, 2007 U.S. Dist. LEXIS 55221 at * 8 (adopting, as persuasive, the *Smith* Court's "modest factual showing" test); *Armstrong v. Weichert Realtors*, No. 05-3120, 2006 U.S. Dist. LEXIS 31351, at *3 and *8 (D.N.J. May 19, 2006) (court uses a "'modest factual showing' standard" at preliminary class certification stage "to prevent class action fishing expeditions"); *Bosley v. Chubb Corp.*, No. 04-cv-4598, 2005 U.S. Dist. LEXIS 10974, at *10 (E.D. Pa. June 3, 2005) (holding *Smith* rationale "compelling" and requiring plaintiffs "to provide some factual showing that the proposed recipients of opt-in notices are similarly situated to the named plaintiffs").

as outside the class if the plaintiff were to conduct even minimal class-related discovery. More importantly, automatic preliminary class certification is at odds with the Supreme Court's recommendation to "ascertain the contours of the [§216] action at the outset."

*Smith*, 2003 U.S. Dist. LEXIS 21010 at *7-8 (citations omitted).[2]

21.    Likewise, a named plaintiff's conclusory declaration that "similarly situated" employees exist is inadequate. *See Armstrong*, 2006 U.S. Dist. LEXIS 31351, at *3-4 (rejecting plaintiffs' reliance on conclusory declaration as "insufficient to constitute a modest factual showing"); *Santelices v. Cable Wiring & S. Fla. Cable Contractors, Inc.*, No. 98-7489, 2001 U.S. Dist. LEXIS 6787, at *5 (S.D. Fla. Mar. 7, 2001) (finding the evidence insufficient where plaintiff "submitted only his own affidavit").[3]

22.    In this case, Plaintiffs have not made any factual showing, even a modest one, that other ING employees are similarly situated to them. For support, they rely entirely on the following one paragraph, which is stated identically in each declaration:

> As a former member of the marketing department, I have knowledge of the job duties of employees in the marketing department who were not in my specific group. Those duties are very similar to those that I performed in the public relations

---

[2]    *See also Haynes v. Singer Co.*, 696 F.2d 884, 887 (11th Cir. 1983) (rejecting class notice to other employees because "[t]he judge had before him only counsel's unsupported assertions that FLSA violations were widespread and that additional plaintiffs would come from other stores"); *Burns v. Village of Wauconda*, No. 99 C 0800, 1999 U.S. Dist. LEXIS 11230, at *9 (N.D. Ill. July 15, 1999) ("it is incumbent upon plaintiffs to offer something beyond the mere allegation of the complaint in order to warrant the broad court-assisted notice that they seek"); *Tracy v. Dean Witter Reynolds, Inc.*, 185 F.R.D. 303, 305 (D. Colo. 1998) (stating that "[c]lass plaintiffs are not permitted to send notices to prospective members of a class if the only evidence of a class action consists of the bare allegations of the complaint, or of counsel").

[3]    *See also Pfaahler v. Consultants for Architects, Inc.*, No. 99C6700, 2000 U.S. Dist. LEXIS 1772, at *6 (N.D. Ill. Feb. 11, 2000) (holding that the plaintiff "must point to something concrete aside from his belief"); *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 266 (D. Minn. 1991) ("allegations, standing alone, are an insufficient basis for determining whether sending court-authorized notice is appropriate").

> department. Specifically, both are responsible for preparing and
> making communications pertaining to ING's policies, products and
> services.

Pl. Mot. at Exhs. 4 and 5, ¶ 7.

23.     Plaintiffs do not identify to whom they are referring, whether by name, title or

description, other than that the supposedly similarly situated employees work in ING's

"marketing department" – a different department from Plaintiffs' own and one that is managed

by different supervisors. Without evidence to the contrary, this fact alone defeats Plaintiffs'

claim that these employees are similarly situated to them. *See Donihoo v. Dallas Airmotive Inc.*,

No. 3:97-cv-0109-P, 1998 U.S. Dist. LEXIS 2318, at *4-6 (N.D. Tex. Feb. 20, 1998) (rejecting

proposed class definition because it was based on the plaintiff's unsubstantiated "mere belief that

there are other similarly situated employees" and limiting class to employees who hold or held

the same position as the named plaintiff).

24.     Further, although Plaintiffs maintain that "preparing and making

communications" is the glue that bonds Plaintiffs and the unnamed Marketing Department

employees together, they do not state whether the communications prepared by the supposedly

"similarly situated" employees are the same or similar in length, style and content as those that

Plaintiffs' prepared; whether their respective communications were directed to the same or

different recipients (*e.g.*, other ING employees, customers, the media, etc.); whether preparing

communications constitutes some, most or all of the supposedly similarly situated employees'

job duties; and whether the supposedly similarly situated employees operate with similar levels

of authority and discretion.

25.     Without this information, it is impossible to tell whether the Plaintiffs' jobs and

those of the unnamed Marketing Department employees are in fact similarly situated or whether

instead, they merely share a common job function at the most basic level. *See Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp.2d 941, 945 (W.D. Ark. 2003) (for conditional certification, "it is necessary to make a preliminary determination that Plaintiff's duties are generally comparable to those he seeks to represent" through an FLSA collective action); *Pfahler*, 2000 U.S. Dist. LEXIS 1772, at *5 ("[a] collective action under the FLSA is only appropriate where those in the pool of potential claimants perform the same duties as the plaintiff") (citations omitted); *Morisky*, 111 F. Supp. 2d at 498 (the term "'similarly situated' ... must be analyzed in terms of the nature of the job duties performed by each class member, as the ultimate issue to be determined is whether each employee was properly classified as exempt").

26.    Plaintiffs also do not propose any type of workable class description that the Court and parties can use to evaluate who may and may not join the putative collective action. This fact is not only indicative of the total lack of evidence that Plaintiffs are similarly situated to other Bank employees, but it also, as a practical matter, makes it impossible for the Court to conditionally certify a defined class and provide notice to a limited class of individuals.

27.    Although it is impossible to know for sure the positions that Plaintiffs maintain are "similarly situated" to their own because they do not identify or describe them in any meaningful way, the evidence indicates that the Marketing Department positions to which they apparently refer are, in actuality, significantly different from their own and that the employees in those positions are *not* similarly situated to Plaintiffs.

28.    As set forth above, there are several positions within ING's Marketing Department – including the Consumer Advocacy Manager, Customer Marketing Associate and Email Marketing Specialist positions described in Mr. Owens' declaration (*see* Exh. B), just to name a few – that have some element of communication creation and delivery as part of their job

duties. But the communications aspects of each of these positions is markedly different, and each position has wide-ranging additional and different duties that render the positions wholly distinguishable from Plaintiffs'. Thus, the actual evidence, far from meeting Plaintiffs' burden that such positions are "similarly situated," shows the opposite to be true. *See Morisky*, 111 F. Supp. 2d at 499 (denying class certification where "[t]he proposed class consists of a group of individuals with different jobs and different job responsibilities who believe they have been improperly classified as exempt and denied overtime wages"); *Pfahler*, 2000 U.S. Dist. LEXIS 1772, at *6 (motion for conditional class certification denied because the plaintiff "makes no showing that other potential claimants performed the same type of duties as himself").

29.     *Armstrong v. Weichert Realtors* is on all fours with this case. In *Armstrong*, the named plaintiff relied on his own declaration in which he made vague, general statements about "all Loan Officers employed by Weichert Realtors" without stating to whom he was referring and the basis for his knowledge. 2006 U.S. Dist. LEXIS 31351 at *3-4. The New Jersey District Court denied the plaintiff's conditional class certification motion, holding that the declaration was "insufficient to constitute a modest factual showing." *Id.* at *3-6.

30.     Similarly, in *Bosley v. Chubb Corp.*, the plaintiffs initially sought class certification based on allegations in the complaint and the affidavit of one of the named plaintiffs that they were similarly situated to the other members of the putative class. The Eastern District of Pennsylvania denied the plaintiffs' motion, holding that, even considering the affidavit, the "[p]laintiffs did not provide a sufficient factual showing that the proposed opt-in recipients are similarly situated." 2005 U.S. Dist. LEXIS 10974 at *10-11. The Court subsequently approved conditional class certification across one position, but only after the plaintiffs had conducted

limited discovery and submitted evidence to support their motion. *Id.*[4]

31.    In sum, Plaintiffs' attempt at an automatic class certification of an unknown number of unnamed employees is precisely the "class action fishing expedition" that *Armstrong* court held is impermissible. *See Armstrong*, 2006 U.S. Dist. LEXIS 31351 at *6. ING thus respectfully submits that Plaintiffs' Motion should be denied.

**B.    Plaintiffs' Request for Consent to Mail a Class Notice and for ING to Provide the Names and Addresses of Potential Opt-In Plaintiffs Should be Denied.**

32.    Plaintiffs also seek (a) authorization for "Plaintiffs' attorneys to provide notice to potential class members concerning the case and their right to participate by 'opting in' as plaintiffs" and (b) an order requiring ING "to provide Plaintiffs' attorney with the names and last known address of all potential plaintiff class members to facilitate providing such notice." Pl. Mot. at p. 3. ING respectfully submits that the Court should deny these requests as unsupported and premature.

**1.    *The Court May Not Approve a Class Notice Where No Proposed Notice Has Been Reviewed by the Parties and Submitted for the Court's Consideration.***

---

[4]    The cases relied on by Plaintiffs are not to the contrary. For example, *Herring v. Hewitt Assoc., Inc.*, No. 06-267 (GEB), 2007 WL 2121693 (D.N.J. July 24, 2007), follows *Bosley* and recognizes both that "Plaintiff[s] bear the burden of showing [they are] similarly situated to the remainder of the proposed class" and that they "must show a 'factual nexus between their situation and the situation of other current and former [employees] sufficient to determine that they are 'similarly situated'." *Id.* at 5. The Court ultimately approved conditional certification only after it had received and reviewed information that far exceeded, in detail and scope, that which Plaintiffs have provided here. *Id.*

Plaintiffs cite *Pontius v. Delta Financial Corp.*, No. 04-1737, 2005 WL 6103189 (W.D. Pa. June 24, 2005), to argue that they need only make a "colorable argument regarding a class of similarly-situated analysts." Pl. Mot. at p. 2, ¶ 2. However, to the extent *Pontius* suggests that a court may conditionally certify a class without some factual showing, it is inconsistent with the great weight of case law in this Circuit. Further, *Pontius* involved one position, Mortgage Analysts, who worked in the same department – a scenario very different factually from that presented here.

33.    The appropriate class notice procedure is for the Court to consider proposed class notice language only after it has conditionally certified a class of opt-in plaintiffs and after both parties have had an opportunity to negotiate, or at least present their respective positions as to, the proposed notice language. *See Harris*, 2007 U.S. Dist. LEXIS 55221, at *13 (requiring parties, after conditional certification, to "meet and confer as practicable regarding the form and content of the notice to putative class members"); *Bosley*, 2005 U.S. Dist. LEXIS 10974 at *14 (requiring parties to meet and confer over proposed class notice before court will consider it).

34.    A plaintiff's counsel may not contact potential opt-in plaintiffs to solicit their joining the action prior to the Court's approval of a class notice. *See Boulder v. Prudential Financial, Inc.*, No. 06-cv-4359 (DMC), 2007 WL 3396303, at *2 (D.N.J. Nov. 8, 2007) ("[o]utside the context of a notice process supervised by the Court, plaintiffs' attorneys are not permitted unilaterally to send unsolicited notices regarding the case to putative FLSA class members not yet parties to an action conditionally certified by the Court") (and cases cited therein).

35.    Here, Plaintiffs have not submitted a form of class notice for the Court's consideration. Nor have they presented one to ING's counsel for consideration. Instead, it appears that they seek permission to prepare and send out their own to-be-created notice. This is improper.

2.    *The Court Should Not Require ING to Provide a List of Names and Addresses of Potential Collective Action Members Where The Case Has Not Been Certified a Collective Action and ING Cannot Possibly Know Who is to Be Included in the Potential Class.*

36.    As with the class notice, Plaintiffs have put the cart before the horse in seeking an Order requiring ING to provide the names and addresses of potential class members before providing a proposed class definition and obtaining conditional certification. Name and address

information is typically provided only upon conditional certification of a defined class of employees. *See Evans v. Lowe's Home Centers, Inc.*, No. 3:cv-03-0438, *15, 2004 U.S. Dist. LEXIS 15716, (M.D. Pa. June 17, 2004). Further, it goes without saying that a defendant cannot provide such a list without guidance as to who should be, and should not be, included on the list.

37.    In this case, because Plaintiffs have not provided any class definition and have not made the factual showing necessary to obtain class certification, ING submits that the Court should refrain from ordering ING to provide particular information to Plaintiffs.

**IV.    CONCLUSION**

38.    Plaintiffs have not identified, by name, position or other reference, any potentially "similarly situated" employees, much less presented evidence that such employees are in fact similarly situated to them. For this reason, and others set forth above, Defendant ING Bank, fsb, respectfully asks the Court to deny Plaintiffs' Motion.

Respectfully submitted,

Dated: June 6, 2008

/s/ *David P. Primack*
David P. Primack (I.D. No. 4449)
DRINKER BIDDLE & REATH LLP
1100 N. Market Street
Wilmington, DE 19801-1254
(302) 467-4220
david.primack@dbr.com

OF COUNSEL:
DRINKER BIDDLE & REATH LLP
David J. Woolf (admitted *pro hac vice*)
Edward N. Yost (admitted *pro hac vice*)
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103

# EXHIBIT A

## DECLARATION OF CATHY MACFARLANE

I, Cathy MacFarlane, hereby declare that the following statements are true and correct, and are based upon my personal knowledge:

1.    I am currently employed by ING Bank, fsb ("ING" or "the Bank") as Head of Corporate Communications.  I have worked for ING for approximately two years and have held my current position since I began my employment with the Bank.

2.    By virtue of my position, I am very familiar with the staffing and workings of the Corporate Relations Department and the job duties and responsibilities that the professionals in the Department perform.

3.    I supervised Kathryn Fitzgibbon and Lauren Fleming from August 2006, when I assumed my current role, until August 27, 2007, when Ms. Fitzgibbon and Ms. Fleming were terminated for performance reasons.

4.    The Corporate Relations Department's primary mission is to plan and coordinate the development and delivery of external communications and messaging by personal outreach and contact with reporters to facilitate earned media coverage of ING DIRECT and writing and distributing press materials, including media advisories and press releases.

5.    The Corporate Relations Department also performs the professional responsibilities necessary to accomplish the media relations, governmental relations, corporate sponsorships, community events and other initiatives of the bank that require the coordination of ING executive interviews, speaking engagements and media coverage.

6.    The Corporate Relations Department also prepares internet postings and content for ING newsletters and websites.

7.    ING's Corporate Relations Department is not a part of the Marketing Department within ING's Corporate structure, and the two departments, including the professionals working

in those departments, perform different functions and tasks. The Corporate Relations

Department and the Marketing Department are separate departments with independent reporting

structures, budget and goals.

I declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury that the foregoing is true

and correct. Executed on June __, 2008.


Cathy MacFarlane

2

# **EXHIBIT B**

## DECLARATION OF JOHN OWENS

I, John Owens, declare that the following statements are true and correct, and are based upon my personal knowledge:

1.    I am currently employed by ING Bank, fsb ("ING DIRECT" or "the Bank") as Head of Marketing, a position in the Marketing Department. I have worked for ING DIRECT for 7 years and have held my current position since July 1, 2006. Prior to my current position, I served as Head of Asset Marketing, also in the Marketing Department.

2.    By virtue of my position, I am very familiar with the staffing and workings of the Marketing Department and the job duties and responsibilities that the professionals in the Department perform.

3.    The Marketing Department is currently staffed by a group of approximately 35 professionals (i.e., non-clerical employees), who have a range of different duties and responsibilities.

4.    The Marketing Department's mission is to build awareness of the ING DIRECT brand by developing, delivering and analyzing results from the communication of the Bank's products and services.

5.    To accomplish its mission, the Marketing Department develops ING DIRECT's marketing, advertising, and communication strategies and plans in light of variable market and competitive conditions.

6.    ING DIRECT's Marketing Department is separate from the Corporate Relations Department within ING DIRECT's corporate structure. The Marketing Department has a different budget, different corporate mission, and different management than the Corporate Relations Department. Professionals working in our Department have different supervisors than professionals in the Corporate Relations Department.

7.      Some positions within the Marketing Department are responsible for developing, reviewing and/or editing communications related to the Bank's products and services. Each of these positions is different, however. And, while some similarities exist, the positions have different job descriptions and different duties and responsibilities from each other and other positions in ING DIRECT's Corporate Relations Department.

8.      For example, ING DIRECT employs a Consumer Advocacy Manager ("CAM") in the Marketing Department, whose responsibilities include managing the content on the Bank's website regarding customer deals, promotions and "tips and tools." The CAM employee also is responsible for a variety of other matters, however, such as managing certain Bank customer databases and mailboxes, implementing customer satisfaction surveys, developing promotional strategies and partnership opportunities and other tasks that differ greatly from other positions that have responsibility for preparing some form of Bank-related communication.

9.      ING DIRECT also employs a Customer Marketing Associate in the Marketing Department. This individual is not only responsible for writing and editing communications for ING DIRECT's products, but she is also responsible for building and managing the system for maintaining and organizing paper and electronic communications, reviewing communications generally to ensure that they are consistent in message and tone, and auditing the various on-file communication templates to ensure that they are up to date. Moreover, the communications generated by the Customer Marketing Associate are largely customer-driven, individualized letters regarding changes in terms and conditions of the Bank's products and processes.

10.     ING DIRECT also employs an Email Marketing Specialist in the Marketing Department. This employee is responsible for drafting and ensuring the delivery of email communications related to ING DIRECT's products and services. To do this job, she must be

2

aware of and implement industry best practices related to the delivery of commercial email, responsibilities that others engaged in a communication function do not have. Additionally, the employee is responsible for analyzing and reporting on the level of success of the various email programs, responsibilities that other employees in and outside the Marketing Department do not have.

11.     Thus, although these three positions (as well as other positions within the Bank) share the common element of having responsibility, on some level, for preparing Bank-related communications, the positions are overall very different from each other.

I declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury that the foregoing is true and correct. Executed on June 5, 2008.


_____
John Owens

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF DELAWARE

KATHRYN L. FITZGIBBON,         :
LAUREN M. FLEMING, and        :
ALL SIMILARLY SITUATED CURRENT :
AND FORMER EMPLOYEES OF     :
ING BANK, fsb, AND ITS WHOLLY   :
OWNED SUBSIDIARIES,        :
                               :
     Plaintiffs,            :
                               :     C.A. NO. 07-735 (JJF)
         v.             :
                               :
ING BANK, fsb, (a Delaware corporation), :
and ALL OTHER WHOLLY OWNED   :     JURY TRIAL DEMANDED
SUBSIDIARIES OF ING BANK, fsb,   :
WHICH HAVE EMPLOYED       :
SIMILARLY SITUATED CURRENT   :
AND FORMER EMPLOYEES SINCE   :
November 15, 2004,           :
                               :
     Defendants.          :

## ORDER

AND NOW, this _____ day of _____, 2008, upon consideration of

Plaintiffs' Motion to Proceed as a Collective Action, to Facilitate Notice and to Require

Defendant to Provide Information and Defendant ING Bank, fsb's response thereto, it is hereby

ORDERED that said Motion is DENIED.

BY THE COURT

_____

Joseph J. Farnan, Jr., U.S.D.J.

## CERTIFICATE OF SERVICE

I, David P. Primack, do hereby certify that, on this date, a true and correct copy of ING

Bank, fsb's proposed form of order in its Response in Opposition to Plaintiffs' Motion to

Proceed as a Collective Action, to Facilitate Notice and to Require Defendant to Provide

Information was timely served by CM/EMF and by first class mail, postage prepaid, upon the

following counsel for Plaintiffs:

> Timothy J. Wilson, Esquire
> Martin & Wilson, P.A.
> 1508 Pennsylvania Avenue
> Wilmington, Delaware 19806

Dated: June 6, 2008

*/s David P. Primack*
David P. Primack (I.D. No. 4449)
DRINKER BIDDLE & REATH LLP
1100 N. Market Street
Wilmington, DE 19801-1254
(302) 467-4220
(302) 467-4201 fax
david.primack@dbr.com