## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF DELAWARE

KATHRYN L. FITZGIBBON,               *
LAUREN M. FLEMING, and               *
ALL SIMILARLY SITUATED CURRENT *
AND FORMER EMPLOYEES OF              *
ING BANK, fsb, AND ITS WHOLLY        *
OWNED SUBSIDIARIES,                  *
                                     *
      Plaintiffs,                *
                                     *      C.A. NO. 07-735 (JJF)
                                     *
      v.                         *
                                     *
ING BANK, fsb, (a Delaware corporation), *
and ALL OTHER WHOLLY OWNED           *      JURY TRIAL DEMANDED
SUBSIDIARIES OF ING BANK, fsb,       *
WHICH HAVE EMPLOYED                  *
SIMILARLY  SITUATED CURRENT          *
AND FORMER EMPLOYEES SINCE            *
November 16, 2004,                   *
                                     *
      Defendants.                *

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO PROCEED AS A COLLECTIVE ACTION, TO FACILITATE NOTICE AND TO REQUIRE DEFENDANT  TO PROVIDE INFORMATION

Plaintiffs Kathryn L. Fitzgibbon and Lauren M. Fleming ("Named Plaintiffs"), by and through their undersigned counsel hereby submit this Reply in support of Plaintiffs' Motion to Proceed as a Collective Action and Facilitate Notice Under 29 U.S.C. § 216(b) and state as follows:

I.    **Plaintiffs Satisfied Their Burden for Conditional Class Certification and Notice**

      a.    **At the First Stage of the Two Step Class Certification Process, the Conditional Class Certification Stage, Plaintiffs Need Only Establish that the Putative Class Members Were Together the Victims of a Single Decision, Policy or Plan**

     1.    "Although the FLSA creates an opt-in mechanism, district courts nevertheless have wide discretion in managing joinder of parties and notice to parties." Goldman v. RadioShack Corp., 2003 WL 2125071 *6 (E.D. Pa. 2003)(attached hereto at Ex. 1); see also, Hoffman La-Roche, Inc. v. Sperling, 493 U.S. 165, 170-172 (1989)(urging early trial court management of the notice process in § 216(b) opt-in actions to ensure that parties are made aware of the action's benefits and avoiding multiple lawsuits).  At the conditional class certification stage, which is conducted very early in the litigation process, "the court has minimal evidence and consists of a preliminary inquiry into whether the plaintiff's proposed class consists of similarly situated employees who were collectively the victims of a single decision, policy, or plan ...." Lugo v. Farmer's Pride Inc., 2008 WL 638237, *3 (E.D. Pa. 2008)(attached hereto at Ex. 2)(quoting, Ruehl v. Viacom Inc., 500 F.3d 375, 388 (3d Cir. 2007), see also, Goldman v. RadioShack Corp., supra at *27 (E.D. Pa. 2003)("A court may conditionally certify the class for purpose of notice and discovery under a comparatively liberal standard, i.e., by determining that the members of the putative class were together the victims of a single decision, policy or plan.")(attached hereto at Ex. 1); Felix de Ascencio v. Tyson Foods, Inc., 130 F.Supp.2d 660, 663 (E.D. Pa. 2001)("courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.").

2.    The standard that ING asserts is required – that Plaintiffs establish that the communications prepared by the potential class members are similar in length, style and content and whether their communications were directed to the same recipients – is not appropriate at the first stage of the class certification process.  While Plaintiffs do not believe such an in depth inquiry would be relevant even at the second stage of the two step process, it clearly is not required at the first step where only minimal evidence is required.  Likewise, the affidavits submitted in support of ING's Opposition are not relevant at this point in the case. See, Bosley v. Chubb Corp., 2005 WL 1334565, *4 (E.D. Pa. 2005)(holding that three affidavits from employees alleging that the proposed class members did not perform the same duties as named plaintiffs may be significant after discovery and during the second step of the process, but does not compel the court to deny preliminary certification)(attached hereto at Ex. 3).

3.    Here, Plaintiffs met their burden of establishing that the members of their proposed class were victims of Defendant's single decision, policy or plan to improperly classify non-exempt employees in Defendants' marketing and public relations departments as exempt employees, thereby failing to pay them overtime compensation for the hours that they worked in excess of forty per week.  Once discovery is complete and the members of the potential class opt in, Defendant may, at that point, challenge the job duties of the class members and attempt to establish that by virtue of any alleged technical differences in the performance of their jobs, they are not similarly situated. Here, ING is attempting to decertify the class before the potential class members even have a chance to opt in to the lawsuit.

      **b.**    **Even Under a More Stringent Standard, Plaintiffs Established that the Other Potential Members of the Class are Similarly-Situated**

4.    Furthermore, even under a more stringent standard, Plaintiffs have nevertheless established that the potential class members are similarly situated. Named Plaintiffs specifically stated in their declarations that, based upon their first-hand knowledge, the job duties of the potential class performed job duties very similar to that which they performed and that these potential class members worked in the same departments in which Named Plaintiffs worked.

5.    In their Opposition, Defendants cite to potential differences in the communications generated by these individuals. However, all that is required is that the class be *similarly* situated – not *identically* situated. In this regard, all of the employees that are sought to be included in the class *are* similarly situated to Plaintiffs in terms of their job responsibilities and all are victims of the same decision, policy or plan to improperly withhold overtime compensation. This is all set forth in Named Plaintiff's declarations.

6.    Specifically, Named Plaintiffs' declarations assert that those employees in the class they propose to conditionally certify (exempt employees in the marketing and public relations departments at pay grade (G14) or below) are similarly situated to Named Plaintiffs in that all were responsible for preparing and making communications pertaining to ING's policies, products and services, (Fitzgibbon and Fleming Declarations at ¶ 7); none of these employees possessed or exercised any significant discretion or independent judgment to matters of significance to Defendant in their job functions, (Id. at ¶ 9); were not permitted to make any communications to individuals

outside of ING unless those communications were approved by ING employees of a superior position, (Id.); were prohibited from exercising any discretion outside of the confines of ING's procedures, rules and policies, (Id.); were required to badge in and out as a means for ING to keep track of the time that they were at work, (Id. at ¶ 10); had no supervisory authority, (Id.); and were required to work specific hours and therefore had no authority to arrive late or to leave early at their own discretion. (Id.). Therefore, based upon the Named Plaintiffs' declarations, there is sufficient evidence to find, at this first step in the process, that the class is similarly situated

7.    Defendants cite to Armstrong v. Weichert Realtors, 2006 WL 1455781 (D. N.J. 2006)(attached hereto at Ex. 4) in support of their contention that allegations in a complaint with a supporting declaration by a named plaintiff is insufficient to support a granting of conditional class certification. However, Armstrong does not stand for such a proposition. Instead, the court held that based upon the *contents* of Armstrong's declaration, it could:

> not determine ... whether Armstrong actually knew other particular officers who were required to perform unpaid overtime work, and what he knew specifically about their unpaid work. Conspicuously absent from the declaration is any specific statement about even one particular loan officer known to Armstrong as having been required to perform unpaid overtime work .... At best, Armstrong's declaration provides a factual basis for inferring that one loan officer – Armstrong – in one office was required to work unpaid overtime. It does not provide a basis to infer that a class of similarly situated loan officers exists."

Id. at *2. Stated differently, there is no rule that declarations in support of a motion for conditional class certification are insufficient evidence upon which to conditionally certify a class.

8.    In the present case, in contrast to <u>Armstrong</u>, Named Plaintiff's allege that they are, in fact, aware of other employees in both the marketing and public relations departments who were not paid overtime and they have specific knowledge of other individuals who would be interested in pursuing their claims. (Fitzgibbon and Fleming Declarations at ¶ 20). In other words, unlike the declaration in <u>Armstrong</u>, instead of vague, generalized statements that others don't get paid overtime and that the named plaintiff is the only individual who worked overtime and was not paid, Named Plaintiffs' declarations state that they have specific knowledge of others who worked and were not paid overtime. Furthermore, Named Plaintiffs specifically state that the individuals to be included in the proposed class exercised no significant discretion or independent judgment to matters of significance to ING in their job functions, were not permitted to make any communications to individuals outside of ING without prior approval; and that the duties of the proposed class are very similar to those that Named Plaintiffs performed.

9.    Defendants also cite to <u>Bosley v. Chubb Corp.</u>, <u>supra</u> (attached hereto at Ex. 3). In that case, plaintiffs moved for conditional class certification based upon a declaration by only one of the three named plaintiffs. <u>Id</u>. at *4. The court did, in fact, hold that plaintiffs did not meet the required standard. However, again, the court did not hold that a declaration from a named plaintiff is not enough evidence to conditionally certify a class. It held that based upon the evidence presented in that case, it was not enough to certify the class. Obviously, the courts make such decisions on a case-by-case basis, based upon the specific evidence presented to them. In the present case, *both* Named Plaintiffs executed declarations in support of the motion and, incorporating the arguments made above, the content contained in those declarations in addition to the

substantial allegations made in the Complaint, is more than sufficient to establish that the proposed class is similarly situated.

### c.    Marketing Department Employees Are Similarly Situatedto Named Plaintiffs

10.    Defendant's next argument is that there is no way to tell whether the employees in the marketing department are similarly situated to Named Plaintiffs who most recently worked in the public relations department. Defendant's argument in this regard ignores the fact that Named Plaintiffs also worked in the marketing department for Defendant during the relevant time period and their employment at this time forms the basis for part of their claim for unpaid overtime. In other words, Named Plaintiffs' duties as marketing department employees were similar to those other employees in the marketing department because they are doing the same or very similar work that Named Plaintiffs performed when they worked in the marketing department. Furthermore, the duties of the employees in the marketing department remained similar to those of Named Plaintiffs even after the public relations department became its own department because there was no change in Named Plaintiffs job duties – they simply fell under the umbrella of the newly-formed public relations department.

## II.    Class Notice

### a.    Plaintiffs Do Not Oppose Court Approval of Notice to be Sent to Potential Class Members

11.    Defendant opposes the Court approving class notice because no notice has been submitted for the Court's approval. Plaintiffs do not oppose the Court's prior approval of the notice to be sent and, in fact, agree that such approval is appropriate.

Should the Court grant Plaintiff's Motion, Plaintiffs stand ready to adhere to whatever instructions the Court gives as to the process for submitting that notice for the Court's approval.

**b.   Named Plaintiffs Sufficiently Defined Their Potential Class**

12.     Defendant asserts that no class has been defined to which notice may be sent or for which it may assemble a list of potential opt-in plaintiffs. As was stated in the Complaint, Defendant's employees typically identify themselves with the department in which they work rather than by their job title." (Compl. at ¶ 20). This statement was reiterated in Plaintiffs' declarations: "It is difficult to identify with specificity the job titles of the other individuals at ING who performed similar job functions as I because ING deemphasizes job titles and individuals are more likely to identify themselves with a specific department rather than their job title." (Fitzgibbon and Fleming Declarations at ¶ 20).

13.     Nevertheless, this inability to *specifically* identify job titles that would fall in the potential class is not fatal to Plaintiffs' motion. Instead, Plaintiffs propose to conditionally certify the class as any individual, classified as an exempt employee by Defendants who are or were employed in the marketing or public relations departments (the very departments in which Named Plaintiffs worked) at a salary grade equal to or less than Plaintiffs. Therefore, Named Plaintiffs have sufficiently defined their class as any current or former (during the relevant time period) exempt employee at the pay grade of G14 or below employed in the marketing or public relations departments.

**III.   CONCLUSION**

8

As is set forth above, Plaintiffs have met their burden of establishing that the potential opt-in class plaintiffs are similarly situated to them for purposes of conditional class certification and a defined class has been established.    As such, Plaintiffs respectfully request that this Honorable Court grant their motion for conditional class certification, authorize Plaintiffs' attorneys to provide notice to potential class members of their right to opt-in to the lawsuit and require Defendant to provide Plaintiffs' attorney with the names and last known addresses of all potential plaintiff class members to facilitate providing such notice.

Respectfully submitted,
MARTIN & WILSON, P.A.

Timothy J. Wilson, Esq. (#4323)
Jeffrey K. Martin, Esq. (#2407)
1508 Pennsylvania Ave.
Wilmington, DE 19806
(302) 777-4680 telephone
(302) 777-5803 facsimile
twilson@martinandwilson.com
jmartin@martinandwilson.com

June 13, 2008

# EXHIBIT 1

Westlaw.

Not Reported in F.Supp.2d                                                                Page 1
Not Reported in F.Supp.2d, 2003 WL 21250571 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d, 2003 WL 21250571 (E.D.Pa.))

▷
Goldman v. RadioShack Corp.
E.D.Pa.,2003.
Only the Westlaw citation is currently available.
United States District Court,E.D. Pennsylvania.
Mark A. GOLDMAN Plaintiff,
v.
RADIOSHACK CORPORATION Defendant.
No. Civ.A. 2:03-CV-0032.

April 16, 2003.

*MEMORANDUM AND ORDER*

VANANTWERPEN, J.
*1 Presently before this court is Plaintiff Mark A.
Goldman's Motion for Conditional Certification of
a Federal Fair Labor Standards Act ("FLSA")
Claim and Facilitation of Notice Pursuant to 29
U.S.C. § 216(b), and for Class Certification of
Pennsylvania Minimum Wage Act ("MWA") and
Wage Payment and Collection Law ("WPCL")
Claims Pursuant to FED. R. CIV. P. 23 filed on
February 14, 2003 [Docket # 18]. Plaintiff's motion
will be granted in part and postponed in part. We
will grant Plaintiff's motion for conditional certific-
ation of the FLSA claim. We also believe that the
proposed state law class action meets all the re-
quirements of FED. R. CIV. P. 23(a) and the su-
periority requirement of FED. R. CIV. P. 23(b)(3),
but we will postpone class certification because fur-
ther discovery is needed regarding the predomin-
ance test of FED. R. CIV. P. 23(b)(3). We will
therefore refrain from a complete Rule 23(a) and
partial Rule 23(b)(3) inquiry until we rule on the
entire Rule 23(b)(3) motion.

*I. Background & Procedural History*

Goldman brings a three count complaint against
Defendant    RadioShack         Corporation
("RadioShack") on behalf of himself and all other
similarly situated plaintiffs. He worked at Radi-

oShack from November 1985 to September 2001.
Goldman alleges that RadioShack violated federal
and state minimum wage laws because it did not
pay its "Y" Store Managers FN1 overtime wages
when they worked in excess of forty hours per
week. RadioShack claims that Store Managers are
exempt from both federal and Pennsylvania over-
time pay requirements because they are exempt ex-
ecutive personnel under 29 U.S.C. § 213(a)(1), or
29 C.F.R. §§ 541.1-541.119. Goldman alleges that
the Store Managers were actually nothing more
than sales associates with a few extra tasks to pre-
form. He alleges that RadioShack merely put an ex-
ecutive sounding label on the Store Managers to
avoid paying overtime wages. Goldman has filed
affidavits of himself and four other former "Y"
Store Managers that describe their day-to-day activ-
ities. Each affidavit and the complaint alleges that
Store Managers performed sales associate tasks in-
cluding: sales; restocking shelves; and cleaning.
Moreover, they do not have the discretionary
powers associated with executive or managerial po-
sitions, including but not limited to: merchandising;
hiring or terminating employees; determining em-
ployee salaries; controlling inventory levels; setting
store hours; training employees; and designing
store layout. Goldman further alleges that Store
Managers were required to keep their managerial
activities to less than 22% of their work week
through the RadioShack "7-1-1" plan. The "7-1-1"
plan required Store Managers to work as sales asso-
ciates for seven out of every nine hours worked.
The "1-1" in the plan refers to one hour of paper-
work and one hour of training per day. *See* Pl.'s
Motion for Conditional Certification: Exs. 6 & 7,
filed on Feb. 14, 2003[# 18]. The plan also required
Store Managers to work at least 54 hours per week
without any overtime compensation.

> FN1. RadioShack "Y" stores are Radi-
> oShack locations that had over $500,000 in
> annual gross revenues in fiscal year 2000
> and thereafter.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21250571 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d, 2003 WL 21250571 (E.D.Pa.))

Page 2

**\*2** In defense, RadioShack argues that the percentage of time spent on managerial duties is not the correct test for whether an employee is exempt from the overtime pay statutes; and that the Store Managers are exempt employees because they are actual managers.

Goldman filed his complaint against RadioShack in Court of Common Pleas of Philadelphia County on December 17, 2002. Defendant properly removed the complaint to this court in January 2003. Goldman now moves to conditionally certify an FLSA opt-in representative action, and moves to certify a Rule 23(b)(3) opt-out class action alleging violations of MWA and WPCL. The FLSA suit would therefore include only those plaintiffs who expressly decide to take part while conversely the state actions consist of "all persons who were employed by RadioShack as a "Y" Store Manager in Pennsylvania at any time on or after December 11, 1999."*See* Pl .'s Motion filed on Feb. 14, 2003, at 2 [Docket # 18].[FN2]

> FN2. Goldman's complaint defines both the FLSA and the MWA/WCPL classes as:
>
> All persons who were employed by RadioShack as a "Y" store manager in Pennsylvania at any time on or after December 11, 1999, and during at least one workweek during that period worked in excess of 40 hours without receiving compensation for the excess hours at a rate not less than one and one-half times the regular rate at which the person was employed.
>
> *See* Def.'s Notice of Removal Exhibit: Pl.'s Complaint filed on Jan. 3, 2003 [# 1].

*II. Jurisdiction*

This case was properly removed to this court pursuant to 28 U.S.C. § 1441. We have original federal question jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331. We have supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because the MWA and WPCL claims form part of the same controversy between the parties as the FLSA claim. The FLSA and the MWA require overtime pay for each hour in excess of forty hours per week that the employee works. *Compare* 29 U.S.C. § 207(a); *with* PA. STAT. ANN. tit. 43 § 104(c). The WPCL requires overtime compensation to be paid in the next period. *See* PA. STAT. ANN. tit. 43 § 260.3. If the overtime wages are not timely paid, then the employer may be liable for liquidated damages under the WPCL. *See* PA. STAT. ANN. tit. 43 § 260.10. The FLSA, MWA and WPCL comprise the same case or controversy between Goldman, the proposed class and RadioShack.

RadioShack argues that we do not have jurisdiction over the state law claims brought on behalf of proposed class members who do not opt-into the FLSA representative action because in the absence of an accompanying individual federal claim we would not have original jurisdiction over their individual claims. RadioShack argues that the state law class should not encompass any proposed plaintiff that does not expressly opt-into the FLSA representative action. It argues that to exercise jurisdiction would be an impermissible and unauthorized use of so-called "pendent-plaintiff" jurisdiction. *See* Def.'s Mem. in Opp'n, at 44-45 filed on Feb. 2, 2003 [# 26-1].

In support, RadioShack cites two types of cases. First, RadioShack lists a series of cases decided before § 1367 was extensively altered in 1990. *See* *Sperling v. Hoffman-La Roche, Inc.,* 118 F.R.D. 392, 411-14(D.N.J.1988) (finding no pendent-party question because plaintiff voluntarily defined the Rule 23 state claims class as only those members in the opt-in ADEA representative class); *Robinson v. Sizes Unlimited, Inc.,* 685 F.Supp. 442, 444-49 (D.N.J.1988) (exercising discretion to refuse pendent-party jurisdiction over state law claims because court wanted to "effectively eliminate de-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 3
Not Reported in F.Supp.2d, 2003 WL 21250571 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d, 2003 WL 21250571 (E.D.Pa.))

fendant's concerns" regarding the jurisdictional problems but not deciding the jurisdictional issues when the ADEA class and the New Jersey state law class have few overlapping plaintiffs); *Pirrone v. No. Hotel Assocs.,* 108 F .R.D. 78, 83-84 (E.D.Pa.1985) (exercising discretion to refuse pendent-party jurisdiction because Congress had not yet extended pendent-party jurisdiction beyond the scope of the FLSA); *Isaac v. Wm. H. Pflaumer & Sons, Inc.,* Civ. A. No. 90-1622, 1990 WL 102808 (E.D.Pa. July 17, 1990) (exercising discretion pursuant to § 1441(c) to remand pendent-party class members to state court). In each of these four cases, the court declined to reach the issue of whether pendent-party jurisdiction existed. Instead, in three of the cases, court refrained from reaching the issue by exercising discretion pursuant to § 1441 or § 1367 to remand or refuse jurisdiction over the pendent-parties. In *Sperling,* the court did not face the question because the plaintiff did not move the court to exercise jurisdiction over non-opt-in potential class members. These cases are not analogous to the instant case.

*3 Moreover, these cases have no relevance since Congress altered § 1367 to overrule the Supreme Court's *Finley* decision. In *Finley,* the Supreme Court held that exercising pendent-party jurisdiction in federal question cases exceeded the statutory authority granted to the courts by Congress. *SeeFinley v. United States,* 490 U.S. 545, 549 (1989). The 1990 amendments to § 1367 combined pendent and ancillary jurisdiction into supplemental jurisdiction, and allowed supplemental jurisdiction to extend to the full limits of Article III in federal question cases, thus overruling *Finley.*Section 1367(a) states:

[I]n any civil action of which the district courts have original jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such jurisdiction shall include claims that involve the joinder or intervention of

*additional parties.*

28 U.S.C. § 1367(a) (emphasis added).

The text of the statute does not limit the additional parties to defendants, as RadioShack argues. Instead, § 1367(a) expressly allows supplemental jurisdiction over "additional parties" which we believe would include related claims of any additional party. By creating a class of all Pennsylvania "Y" Store Managers under Rule 23, Goldman is seeking their joinder to this action as additional parties with claims that form part of the same case or controversy. *SeeZahn v. International Paper Co.,* 414 U.S. 291, 296, 299-300 & n. 6 (comparing class action and joinder cases) (citations omitted); *Snyder v. Harris,* 394 U.S. 332, 397 (1969) (same); 7A Charles Alan Wright et al., *Federal Practice and Procedure,* § 1752 (discussing history of Rule 23, spurious class actions and joinder). Goldman is properly using § 1367(a). The proposed opt-out class members are "additional parties" bringing "claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."28 U.S.C. § 1367(a).

Second, RadioShack cites four post-1990 cases for the proposition that courts do not have supplemental jurisdiction over state law claims related to an FLSA representative action. *SeeMarquis v.. Tecumseh Prods.,* 206 F.R.D. 132, 162-65 (E.D.Mich.2002) (exercising discretion to decline certifying state law class action which included pendent-parties, because the named plaintiffs failed to exhaust their administrative remedies regarding their Title VII claims that gave court original jurisdiction and state law issues predominated); *Zelaya v. J.M. Macias, Inc.,* 999 F.Supp. 788, 782-83 (E.D.N.C.1998) (questioning federal jurisdiction over pendent-plaintiffs and declining jurisdiction under the court's discretion pursuant to § 1367(a)); *Ballaris v. Wacker Siltronic Corp.,* No. Civ. 00-1627-KI, 2002 WL 926272, at *3 (D.Or. Feb. 7, 2002) (noting absence of pendent-party issue because plaintiff intended to move for certification of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                        Page 4
Not Reported in F.Supp.2d, 2003 WL 21250571 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d, 2003 WL 21250571 (E.D.Pa.))

a state law Rule 23 class that consisted of only the FLSA opt-in members); *De La Fuente v. FPM Ipsen,* No. 02-C-50188, 2002 WL 31819226, at *1-2 (N.D.Ill.Dec. 16, 2002) (declining to rule on class certification until the conclusion of discovery; not addressing jurisdictional concerns).*Zelaya* is the only case cited by Defendant that is on point, because the court in the other three cases did not reach the pendent-plaintiff jurisdictional issue. We decline to follow *Zelaya.*

**\*4** *Zelaya* was concerned with the risk that plaintiffs could manufacture original jurisdiction over the case in an attempt to gain federal jurisdiction over the tenuously related state law claims. See*Kelley v. SBC, Inc.,* [5 Wages-Hours] Lab. L. Rep .(BNA) 16, 1998 U.S. Dist. LEXIS 18643, at *38 (N.D.Cal. Nov. 13, 1998) (exercising supplemental jurisdiction over state law claims when original jurisdiction was founded upon FLSA claims and distinguishing *Zelaya* because *Kelley* was removed by the defendant). No such risk exists here because Goldman filed in state court and it was RadioShack which chose to remove this case to federal court. RadioShack had the option of litigating the claims in state court because the FLSA allows concurrent state and federal court jurisdiction. *See*29 U.S.C. § 216(b) ("An action ... may be maintained against an employer in any Federal or State court of competent jurisdiction ....") (parenthetical omitted). If the case had remained in Pennsylvania state court, Goldman would have been able to maintain the FLSA opt-in representative action and bring the state law claims under Pennsylvania's opt-out class action mechanism. *See*PA. R. CIV. P. 1702 & 1708 (listing requirements and factors to be considered for certifying a class). Goldman did not choose the federal forum to gain federal jurisdiction over tenuously related state claims.

We note also that *Zelaya* has not received a welcomed reception in federal courts. See*Ansoumana v. Gristede's Operating Corp.,* 201 F.R.D. 81, 95-96 (S.D.N.Y.2001) (criticizing *Zelaya* and citing cases holding that supplemental jurisdiction is proper) (citations omitted); *Kelley,* 1998 U.S. Dist. LEXIS 18643, *38 (distinguishing *Zelaya* and exercising supplemental jurisdiction).*Zelaya* has not been followed. District Courts routinely exercise supplemental jurisdiction over related state labor law claims when the original jurisdiction is founded on 28 U.S .C. § 1331 and the plaintiffs are bringing an FLSA representative action. *See*Scott v. Aetna Servs., Inc.,* 210 F.R.D. 261 (D.Conn.2002) (certifying FLSA opt-in and Rule 23 opt-out classes without limiting opt-out class to only opt-in members); *O'Brien v. Encotech Const Servs.,* 203 F.R.D. 346, 350-53 (N.D.Ill.2001) (same); *Ansoumana,* 201 F.R.D. at 89-96 (providing an extensive history and discussion of the topic and exercising supplemental jurisdiction because § 1367(a) retained the pre-1990 restrictions only for cases where original jurisdiction was founded solely on § 1332 diversity jurisdiction); *Brychnalski v. Unesco, Inc.,* 35 F.Supp.2d 351 (S.D.N.Y.1999) (same as *Scott,* 210 F.R.D. 261);*Ladegaard v. Hard Rock Concrete Cutters, Inc.,* No. 00-C-5755, 2000 WL 1774091 (N.D.Ill.Dec. 1, 2000) (same); *DeAsencio v. Tyson Foods, Inc.,* [8 Wages-Hours 2d] Lab. L. Rep. (BNA) 190, 2002 WL 1585580, at *5 (E.D.Pa. July 17, 2002) (exercising supplemental jurisdiction); *Kelley,* 1998 U.S. Dist. LEXIS 18643, at *38 (same); *cf.Dunlop-McCullwn v. Parham,* No. 97-Civ.-0195, 2002 WL 31521012, at * *9-10 (S.D.N.Y. Nov. 13, 2002) (exercising supplemental jurisdiction over state law claims when original jurisdiction was founded on §§ 1331 & 1337 when plaintiff brought a LMRDA case). The clear weight of authority is in favor of exercising supplemental jurisdiction.

**\*5** We find that § 1367(a) gives us the power to exercise supplemental jurisdiction over the opt-out plaintiffs who are not opt-in members of the FLSA action. The question remains as to whether we will exercise that power because § 1367 allows us to exercise our discretion and retain or remand these claims. We choose to retain these claims. It is prudent to try these related claims together in the interest of judicial economy. See*West Mifflin v.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 5
Not Reported in F.Supp.2d, 2003 WL 21250571 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d, 2003 WL 21250571 (E.D.Pa.))

*Lancaster,* 45 F.3d 780, 788 (3d Cir.1995) ("
'[C]onsiderations of judicial economy, convenience
and fairness to litigants' weigh in favor of hearing
the state law claims at the same time as the federal
law claims.") (quoting *United Mine Workers v.
Gibbs,* 383 U.S. 715, 726 (1966)). The FLSA and
WPCL claims "are premised on the same events"
and "parallel one another." *De Asencio,* 2002 WL
1585580, at \*5. "It is likely that the two claims will
either prevail or fail together."*Id.* If we were to re-
mand certain class members, the two cases would
be so related that any decision on the merits in one
action would have preclusive effects on the other
action. If the preclusive effects did not come to
fruition, the cases may result in conflicting findings
or judgments. Proceeding in both forums would
needlessly increase litigation expenses for both
parties.FN3

> FN3. Judge Hellerstein stated the reason-
> ing well:
>
>> If the related FLSA and [state] Minimum
>> Wage Act claims were to be litigated in
>> parallel fashion, ..., there would be great
>> potential for confusion of issues; consid-
>> erable unnecessary costs, inefficiency
>> and inconsistency of proceedings and
>> results; and other problems inherent in
>> parallel class action litigation ..... Con-
>> gress enacted § 1367 to avoid such prob-
>> lems. Defendants short-sightedly argue
>> to reverse the Congressional wisdom. I
>> decline to do so.
>
>> *SeeAnsouman,* 201 F.R.D. at 96;*seeDe
>> Asencio,* 2002 WL 1585580, at \*5
>> (exercising discretion for the sake of ju-
>> dicial economy).

Moreover, we do not want to create incentives for
defendant forum shopping. This action could have
easily been maintained in state court because the
Pennsylvania courts have jurisdiction over the
FLSA and state law claims. RadioShack choose this
forum. Defendants might be encouraged to remove

to federal court, not because they are an out of state
defendant, but because the federal forum's jurisdic-
tional limitations would complicate plaintiffs' case
and increase plaintiffs' litigation expenses.

Pursuant to § 1331, we have original jurisdiction
over the opt-in FLSA representative class. For the
reasons stated, we will exercise our discretion to as-
sume supplemental jurisdiction pursuant to §
1367(a) over the related state law claims and the
proposed Rule 23 opt-out class as well.

*III. FLSA Representative Class*

*A. Applicable Law*

Employers are required to pay time and a half for
each hour in excess of forty hours that the employ-
ee works. *See*29 U.S.C. § 207(a). There are excep-
tions to the rule, including one which provides that
employees who are employed in a bona fide execut-
ive capacity are not entitled to overtime wages.
*See*29 U.S.C. § 213(a)(1). An employee may bring
an action on behalf of himself and other similarly
situated employees pursuant to 29 U.S.C. § 216(b).
FLSA claims are not subject to the usual Rule 23
class action requirements. Instead, 29 U.S.C. §
216(b) provides a special opt-in representative ac-
tion mechanism for joining claims and plaintiffs.
Each employee who wishes to join the action must
affirmatively consent to be a member of the action
by filing written consent to that effect. *See*29
U.S.C. § 216(b); *Lusardi v. Lechner,* 855 F.2d
1062, 1068 n. 8 (3d Cir.1988).

\*6 Although the FLSA creates an opt-in mechan-
ism, district courts nevertheless have wide discre-
tion in managing joinder of parties and notice to
parties. *See*FED. R. CIV. P. 83(b) (allowing court
discretion to manage cases when the rules are silent
on an issue); *cited by Sperling,* 493 U.S. at 170-72
(urging early trial court management of the notice
process in § 216(b) opt-in actions to ensure that
parties are made aware of the action's benefits and
avoiding multiple lawsuits); *De Ansencio v. Tyson*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 6
Not Reported in F.Supp.2d, 2003 WL 21250571 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 21250571 (E.D.Pa.))**

*Foods, Inc.,* 130 F.Supp.2d 660, 662 (E.D.Pa.2001).

Before facilitating notice, we must first find that the action can proceed as an FLSA representative action. *See De Ansencio,* 130 F.Supp.2d at 662. There are only two requirements under § 216(b) for an action to proceed as a representative action: (1) class members must be "similarly situated"; and (2) all members must affirmatively consent to join the action. *See* 29 U.S.C. § 216(b); *Sperling,* 862 F.2d at 444,*aff'd* 493 U.S. 165;*De Ansencio,* 130 F.Supp.2d at 662. The statute does not provide an express test for determining who are "similarly situated" employees under § 216(b). In the absence of Third Circuit or Supreme Court guidance, a two-tiered test structure has developed among the district courts in the Third Circuit. *See De Ansencio,* 130 F.Supp.2d at 662-63;*Mueller,* 201 F.R.D. 425, 427-28 (W.D.Pa.2001); *Morisky v. Public Serv. Elec. & Gas Co.,* 111 F.Supp.2d 493, 497 (D.N.J.2000); *Lusaridi v. Xerox Corp.,* 118 F.R.D. 351 (D.N.J.1987), *modified* 122 F.R.D. 463 (D.N.J.1988) (decertifying class because representative action members not "similarly situated"); *Bunnion v. Consol. Rail Corp.,* [5 Wages-Hours 2d] Lab. L. Rep. (BNA) 717, 1998 WL 372644, at *17 (E.D.Pa. May 14, 1998); *see also* *Hipp v. Liberty Nat. Life Ins. Co.,* 252 F.3d 1208 (11th Cir.2001) (adopting the two-tiered approach and citing *Lusardi,* 118 F.R.D. 351);*Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1213-14 (5th Cir.1995) (adopting the *Lusardi,* 118 F.R.D. 351, two-tiered test).

The first tier of the test occurs at the beginning of the case when the court has minimal evidence. *See De Asencio.,* 120 F.Supp.2d at 662-63. At this stage, the court may only conditionally certify the class so that the Plaintiff may send notice to the potential representative action members. *Id.;Mueller,* 201 F .R.D. at 428. "A court may conditionally certify the class for purpose of notice and discovery under a comparatively liberal standard, i.e., by determining that the members of the putative class 'were together the victims of a single decision,

policy or plan." ' *Mueller,* 201 F.R.D. at 428 (quoting *Sperling,* 118 F .R.D. at 407). The conditional certification is by no means final.

The second tier of the test occurs after all opt-in forms have been received and discovery has concluded. At that time, the court may make a more thorough finding regarding the "similarly situated" requirement. *Id.* The court will conduct a "fact-specific review of each class member who has opted-in, taking into account factors such as employment setting," variations in employment activities, employment oversight and instruction, and discretionary powers entrusted to individual opt-in plaintiffs. *See* *id.* If the court then decides that the plaintiffs are not "similarly situated," the FLSA representative action will be decertified and the plaintiffs will proceed with their individual claims. *See De Asencio,* 130 F.Supp.2d at 663.

### B. RadioShack's Arguments Against Conditional Certification

*7 RadioShack argues that the first tier conditional certification is unwarranted in this case because: (1) there is a pending FLSA representative action in United States District Court of the Northern District of Illinois which has yet to be certified; (2) Goldman is not an appropriate representative because he is an exempt employee under the FLSA; and (3) the proposed representative action members are not "similarly situated." We do not find RadioShack's arguments persuasive.

### 1. The Illinois Action

Comity does not dictate that we postpone first tier conditional certification until certification of the FLSA representative action in Illinois is decided. RadioShack claims that Pennsylvania "Y" Store Managers could simply join the nationwide representative action in Illinois, rendering this action redundant. RadioShack's arguments fail for two reasons. First, we are dealing with two different *opt-in* actions. If the Illinois court was entertaining a mo-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                Page 7
Not Reported in F.Supp.2d, 2003 WL 21250571 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d, 2003 WL 21250571 (E.D.Pa.))

tion to certify a nationwide *opt-out* class, then our proceeding with a Pennsylvania - wide action could well complicate and frustrate our sister court's jurisdiction. Creating two overlapping opt-out classes would create conflict. This is not the present situation. We are dealing with two *opt-in* actions. No plaintiff will be a member of both representative actions because they must choose one or the other.FN4

> FN4. If RadioShack is dissatisfied with this result it may make a 28 U.S.C. § 1407 request to transfer to the Judicial Panel on Multidistrict Litigation to consolidate the two actions. *See* Manual for Complex Litigation § 31.13 (discussing multidistrict transfers under § 1407).

Second, while the two cases are similar, they provide different relief and benefits. The Illinois FLSA action does not include any state claims. Therefore, the opt-in plaintiffs will be entitled to two years of back overtime wages if they prevail. They could also recoup three years of back overtime wages but only if they prove RadioShack's alleged willfulness to the court. Damages under the FLSA are limited to "the payment of wages lost and an additional equal amount as liquidated damages."29 U.S.C. § 216(b). The FLSA statute of limitations is not tolled until the employee opts-in.

The Pennsylvania action in our case may allow greater relief to class members because Goldman filed a class action alleging violations of the MWA and the WPCL. Unlike the FLSA, the state statute of limitations is three years without the extra burden of proving willful conduct. Damages under the MWA and the WPCL amount to the unpaid wages, plus liquidated damages equal to the greater of $500 or 25% of the lost wages due, plus reasonable attorney's fees and costs. *See* PA. STAT. ANN. tit. 43 §§ 260.10 & 333.113. Thus, the Pennsylvania action allows a longer period of recovery without the extra burden of proving willful conduct, but provides for lower liquidated damages. The Illinois case does not provide these extra opportunities for recovery.

Moreover, the opt-out nature of the potential Rule 23(b)(3) class allows potential class members to be included in the class without making a public declaration. Although the FLSA protects current workers from employer retribution, the reality is that some current employees may be hesitant to join a opt-in class out of fear of retribution. The opt-out class will allow current employees relief-albeit not identical relief-as the opt-in plaintiffs without the same concerns regarding retribution.

*2. Goldman's Exempt Status Is Irrelevant At This Stage*

*8 RadioShack argues that Goldman should not be allowed to pursue an FLSA representative action because he is an exempt employee who is not entitled to overtime wages. *See* Def.'s Memo. in Opp'n, at 19-31, filed on Mar. 21, 2003 [# 26]. We will not consider the substance of RadioShack's arguments on the merits at this stage because only a motion for conditional certification is presently before us. *See Eisen v. Carlisle & Jacqueline,* 417 U.S. 156, 178 (1974) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits...."); *Ansoumana,* 201 F.R.D. at 85 (merits of the case are irrelevant to class certification); *Hoffman v. Sbarro, Inc.,* 982 F.Supp. 249, 262 (S.D.N.Y.1997) (merits of the case are irrelevant to "similarly situated" test); *Jackson v. New York Tel. Co.,* 163 F.R.D. 429, 432 (S.D.N.Y.1995) (merits of the case irrelevant to motion for authorization of notice). All of RadioShack's arguments on this issue go to the merits of Goldman's case. The conditional certification inquiry only focuses on the lenient first tier "similarly situated" test. At this stage, with little evidence before us, we believe that Goldman and other "Y" Store Managers were similarly situated because they all had the same minimum weekly hours and did not receive overtime compensation. If Goldman is an exempt employee under the FLSA, it is likely

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                      Page 8
Not Reported in F.Supp.2d, 2003 WL 21250571 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d, 2003 WL 21250571 (E.D.Pa.))

that the other "Y" Store Managers are also exempt employees. However, the merits of the plaintiff's case are not at issue today because this is a motion for conditional certification and not a summary judgment motion.[FN5]

> FN5. RadioShack's discussion of Department of Labor's newly proposed regulations, 68 Fed.Reg. 15560, governing exemptions to the FLSA's overtime requirements are not relevant. *See* Def.'s Supp. Br. in Opp'n filed on Apr. 8, 2003[# 31]; Def.'s Notice of Errata filed on Apr. 10, 2003 [# 32]. First, the regulations defining exempt employees go to the merits of the case which are not currently at issue. Second, the proposed regulations are just that, only proposed regulations and not actual regulations. If and when they are enacted, and if they are binding on this case which was filed before 68 Fed.Reg. 15560 was proposed, the new regulation will be relevant only when the merits of Goldman's case are at issue.

*3. A Fact-Specific "Similarly Situated" Inquiry Is Premature*

RadioShack contends that Goldman was a special "Y" Store Manager that was not similar to regular "Y" Store Managers because: (1) his store had fifteen employees instead of the normal two employees; (2) Goldman was trained three times to become a District Manager; and (3) Goldman was designated a "Hiring Manager" with the responsibility to hire employees at several locations; and (4) RadioShack labeled Goldman a "Team Captain."

This may or may not be the case, but we will not delve into a fact-specific "similarly situated" inquiry at this time. As discussed *supra* Section III.A., conditional certification requires a lax showing of "similarly situated." During this first-tier inquiry, we ask only whether the plaintiff and the proposed representative class members allegedly suffered from the same scheme. A fact-specific in-

quiry is conducted only after discovery and a formal motion to decertify the class is brought by the defendant. Moreover, any class certification effort should not turn on the merits of the case even after the discovery period has closed. *SeeEisen,* 417 U.S. at 178;*Ansoumana,* 201 F.R.D. at 85;*Hoffman,* 982 F.Supp. at 262;*Jackson,* 163 F.R.D. at 432. It is simply premature to do so now because we lack sufficient evidence to conduct a more rigorous inquiry.

*C. Conditional Certification is Warranted*

*\*9* We find that the potential members of Goldman's FLSA representative action are "similarly situated" under the first tier test because they were all subjected to the same employment contract with RadioShack. They were all required to work at least 54 hours per week and all were denied overtime pay. We will conditionally certify the FLSA representative action at this time so that Goldman may send notification to potential opt-in plaintiffs. To this end, we will order RadioShack to produce the names and last known addresses of all potential members of the FLSA representative action. This potential group consists of all RadioShack "Y" Store Managers who worked at Pennsylvania RadioShack locations at any time on or after December 11, 1999.[FN6]

> FN6. This group may be over inclusive after a more thorough analysis of the FLSA statute of limitations. For our present purposes, we would rather be over inclusive rather than under inclusive so that potential action members may state their claim and influence any future statute of limitations debate.

*IV. MWA and WCPL Rule 23(b)(3) Class Action*

Unlike the FLSA claims, Pennsylvania's MWA and WCPL do not provide independent joinder mechanisms. Therefore, the proposed MWA and WCPL class actions are opt-out classes governed by FED.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21250571 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d, 2003 WL 21250571 (E.D.Pa.))

Page 9

R. CIV . P. 23. In order to certify a class under Rule 23, the class representative must fully comply with the four requirements of Rule 23(a) and fulfill the requirements of either Rule 23(b)(1), 23(b)(2) or (b)(3).*See Monahan v. City of Wilmington,* 49 Fed. Appx. 383, 384 (3d Cir.2002). Goldman seeks to certify a Rule 23(b)(3) class of all Pennsylvania RadioShack "Y" employees who worked as Store Managers at any time on or after December 11, 1999. At this time, we believe that Goldman's proposed Rule 23(b)(3) class complies with all of the requirements of Rule 23(a) and the superiority requirement of Rule 23(b)(3). However, we believe it is premature to find that the proposed class complies with the predominance requirement of Rule 23(b)(3). Specifically, we are concerned that common issues may not predominate over individual issues relating to each manager's employment setting, employment activities, and discretionary powers. RadioShack discussed how Goldman's "Y" store differed from other stores because the larger number of employees meant that he may have spent more time on managerial duties and less time on sales associate duties when compared to average "Y" Store Managers. RadioShack mentioned these allegations and theories in an effort to prevent conditional certification of the FLSA claim. We have already stated that such discussions are premature during an FLSA conditional certification inquiry. However, we believe they are relevant to a Rule 23(b)(3) class certification analysis because it is not a conditional or preliminary certification mechanism. In light of RadioShack's contentions, a more developed record is obviously required before we rule that common issues of fact and law predominate over individual variations.[FN7]

> FN7. At this time, we are not predisposed to either finding regarding predominance.

We will postpone a Rule 23(b)(3) finding, pursuant to Local Rule 23.1(c), until the close of discovery, at which time Goldman may move anew for 23(b)(3) class certification. *See* E.D. PA. R. 23.1(c) ("In ruling upon a motion, the Court may allow the

action to be so maintained, may disallow and strike the class action allegations, or *may order postponement of the determination pending discovery* or such other preliminary procedures as appear to the appropriate and necessary in the circumstances.") (emphasis added); *Slater v. Philadelphia Hous. Auth.,* 1999 WL 997758, at * 5 (E.D.Pa. Nov. 2, 1999) (denying defendant's motion to dismiss plaintiff's class action complaint because the court's earlier denial of class certification without prejudice was a delay of the class action certification pending discovery pursuant to Local Rule 23.1(c) and not a denial on the merits) (citations omitted); *Gomberg v. Western Union Corp.,* 1997 WL 338938, *5 (E.D. Pa. June 16, 1997) (allowing motion for certification to proceed following discovery pursuant to Local Rule 23.1(c) when the parties treated the action as a class action throughout litigation, defendant refused to participate in discovery unless the motion was delayed, and defendant suffered no undue hardship); *see also De La Fuente,* 2002 WL 31819226, at * 1-2 (declining to rule on class certification until after discovery concluded). We will not discuss the requirements of Rule 23 because any such discussion would be dicta at this time. We acknowledge receipt of RadioShack's March 21, 2003 letter requesting oral arguments on all certification issues. We believe that oral arguments may well be appropriate, but it would be more productive if the oral arguments and accompanying testimony were heard following discovery. The parties should remember that a proposed class action shall proceed as if it is a class action until class certification is denied or the class is decertified. *See* Manual for Complex Litigation § 30.11 ("When an action has been filed as a class action, the court must treat it as one until it has determined otherwise.").

### *V. Conclusion*

**\*10** We will conditionally certify Goldman's proposed FLSA federal representative action because he has fulfilled the first tier test for certification. RadioShack's fact-specific arguments on the merits are premature. We will postpone Goldman's motion

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                      Page 10
Not Reported in F.Supp.2d, 2003 WL 21250571 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d, 2003 WL 21250571 (E.D.Pa.))

for class certification of the state claims until dis-covery is concluded. We believe that it is proper to rule on the final FLSA certification and the Rule 23 class certification at the same time because: (1) the parties and the court will have a better understand-ing of the facts after conducting discovery; and (2) the second tier of the similarly situated inquiry overlaps with the Rule 23 inquiry such that they are properly analyzed together. Goldman may move for class certification after discovery and the parties may request oral argument at that time.

An appropriate Order follows.

### ORDER

AND NOW, this 16th day of April, 2003, upon consideration of Plaintiff Mark A. Goldman's Mo-tion for Conditional Certification of the Federal Fair Labor Standards Claim Pursuant to 29 U.S.C. § 216(b) and for Class Certification of the Pennsylvania Minimum Wage Act and Wage Pay-ment and Collection Law Claims Pursuant to FED. R. CIV. P. 23 filed on February 14, 2003 [Docket # 18]; Plaintiff's Supplemental Memorandum in Sup-port filed on February 25, 2003 [# 21]; Defendant RadioShack Corporation's Memorandum in Opposi-tion filed on March 21, 2003 [# 26]; Plaintiff Mark A. Goldman's Reply Memorandum filed on April 4, 2003[# 30]; and Defendant RadioShack Corpora-tion's Supplemental Brief in Opposition filed on April 8, 2003 [# 31], it is hereby ORDERED con-sistent with the foregoing memorandum that:

1. Plaintiff Mark A. Goldman's Motion for Class Certification of the Pennsylvania Minimum Wage Act and Wage Payment and Collection Law Claims Pursuant to FED. R. CIV. PRO. 23(b)(3) is DENIED at this time pursuant to Local Rule E.D. PA. R. 23.1(c) WITHOUT PREJUDICE to Plaintiff Mark A. Goldman's right to move for Class Certi-fication of these Pennsylvania claims following the close of discovery;

2. Plaintiff Mark A. Goldman's Motion for Condi-

tional Certification of the Federal Fair Labor Stand-ards Act Claim and Facilitation of Notice Pursuant to 29 U.S.C. § 216(b) is GRANTED at this time subject to further review as set forth in our memor-andum;

3. Pursuant to 29 U.S.C. § 216(b) and FED. R. CIV. P. 83, this Court conditionally certifies an opt-in Class of all former or current employees of Radi-oShack Corporation (and/or Tandy Corporation) who managed a RadioShack "Y" store in Pennsylvania at any time on or after December 11, 1999, for the claim under the Federal Fair Labor Standards Act;

4. Plaintiff Mark A. Goldman is conditionally des-ignated as the representative of the Class;

5. Plaintiff's Counsel, Roda & Nast, P.C. and the Wexler Firm, are hereby appointed as Counsel for the Class;

6. Within thirty (30) business days from the date of this Order, Defendant RadioShack Corporation SHALL PRODUCE to Plaintiff's Counsel a list of the names and last known addresses of all potential members of the Class described in the Paragraph Three of this Order;

*11 7. Plaintiff's Counsel SHALL CAUSE to be sent by first-class mail, to all members of the Class described in Paragraph Three of this Order, a No-tice Packet consisting of a Notice and Notice of Consent form that are substantially in the form of Exhibits Six and Nine attached to Plaintiff's Sup-plemental Memorandum in Support filed on Febru-ary 28, 2003 [Docket # 21]; and

8. Any person who fits within the Class described in Paragraph Three of this Order may join this ac-tion by sending a completed Notice of Consent form to Plaintiff's Counsel postmarked on or before July 31, 2003. Any person who does not send a completed Notice of Consent form to Plaintiff's Counsel postmarked on or before July 31, 2003 SHALL NOT be permitted to participate in the Fed-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21250571 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 21250571 (E.D.Pa.))**

eral Fair Labor Standards Act Representative Action.

E.D.Pa.,2003.
Goldman v. RadioShack Corp.
Not Reported in F.Supp.2d, 2003 WL 21250571
(E.D.Pa.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 2

Westlaw.

Slip Copy                                                                                                      Page 1
Slip Copy, 2008 WL 638237 (E.D.Pa.)
(Cite as: 2008 WL 638237 (E.D.Pa.))

H

Lugo v. Farmer's Pride Inc.
E.D.Pa.,2008.
Only the Westlaw citation is currently available.
United States District Court,E.D. Pennsylvania.
Luz LUGO, et al.
v.
FARMER'S PRIDE INC.
**Civil Action No. 07-cv-00749.**

March 7, 2008.

Brian P. McCafferty, Kenney Lennon & Egan PC, Plymouth Meeting, PA, Philip A. Downey, Unionville, PA, for Luz Lugo, et al.
George C. Werner, Jill S. Welch, Barley Snyder, Lancaster, PA, for Farmer's Pride Inc.

### *MEMORANDUM RE: PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION*

BAYLSON, District Judge.
*1 Presently before this Court is Plaintiff's Motion for Class Certification, or alternatively for Conditional Class Certification. Upon careful review of the parties' briefings and the relevant case law, the Court will conditionally certify the group and allow the parties fourteen (14) days to submit a proposed order, including a notice and discovery schedule.

## I. Background

### A. Factual Background

According to the Complaint and Plaintiff's Motion, Plaintiffs are former and current production and support employees of Farmer's Pride, Inc (hereinafter, "Defendant," "Farmer's Pride"), who worked as hourly production workers at the Farmer's Pride facility in Fredericksburg, Pennsylvania. While they were compensated for their work on the production line, Farmer's Pride allegedly did not and does not compensate Plaintiffs for other activities they encountered on the job. Specifically,

Plaintiffs state in their Complaint that Farmer's Pride does not pay production line workers for the time it takes to receive, don, doff and sanitize the required personal protective equipment ("PPE") and clothing, the time it takes to sanitize themselves at the beginning and end of their shifts (both prior to lunch and after lunch), time spent walking from their lockers to the production line, time spent sanitizing, discarding the protective equipment and clothing, and time spent walking to their lockers after the production line has stopped. Plaintiffs contend they were also not compensated for time spent sharpening knives required for use in production line activities, waiting in line to sharpen knives, and waiting in line to receive other required tools and supplies for their activity on the production line.

Defendants dispute these allegations.

Plaintiffs filed a Representative Action Complaint before this Court, claiming that Defendant's failure to pay them for these activities is a violation of the **Fair** Labor Standards Act ("FLSA"). Plaintiffs now seek conditional certification for themselves and other similarly situated current and former production line workers at Defendant's Fredericksburg, Pennsylvania plant.

### B. Procedural History

Plaintiffs Luz Lugo and Yesenia Marco filed a Complaint on February 23, 2007. (Doc. No. 1). Defendant filed a Motion to Dismiss (Doc. No. 34), which the Court denied. (Doc. No. 54). Plaintiffs filed the present Motion to Certify the Class. (Doc. No. 50). Plaintiffs filed an amended Representative Action Complaint, naming 37 Plaintiffs on behalf of themselves and others similarly situated (Doc. No. 55). Defendant filed an Answer to Plaintiff's Representative Action Complaint. (Doc. No. 60).

On January 23, 2008, the Court held an unrecorded telephone conference call with the parties to discuss

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                      Page 2
Slip Copy, 2008 WL 638237 (E.D.Pa.)
(Cite as: 2008 WL 638237 (E.D.Pa.))

discovery. After being advised that all parties wished to have certain limited discovery on the class action issue, the Court allowed Defendant to depose one (1) of the original Plaintiffs and allowed Plaintiffs to depose one (1) of Defendant's authorized representatives. As instructed by the Court, Plaintiff filed a Memorandum of Law addressing the issue of what discovery was needed, if any, to adjudicate Plaintiffs' Motion for **conditionalclasscertification**. (Doc. 57). Defendant filed a Response to Plaintiff's Motion concerning discovery. (Doc. 59).

## II. Contentions of the Parties

**\*2** In their Motion for Class Certification, Plaintiffs request that the Court (1) grant conditional certification of the Plaintiff class; (2) authorize Plaintiffs' attorneys to provide notice to potential class members concerning the case and their right to participate by "opting in" as plaintiffs; and (3) compel Defendant to provide Plaintiffs' attorney with the names and last known addresses of all potential plaintiff class members to facilitate providing such notice. Plaintiffs allege that the unlawful conduct at issue is the same or similar in nature as to all members of the class (both named Plaintiffs and optins). Plaintiffs assert the Court should use the two-step analysis used in *Ruehl v. Viacom Inc. .,* 500 F.3d 375 (3d Cir.2007), as opposed to the Rule 23 class action test.[FN1]

> FN1. Plaintiffs do allege, however, that the case meets the class certification requirements under either standard.

Plaintiffs take the position that no discovery is needed at the present time during the initial "notice stage" of the FLSA certification process. Plaintiffs believe that they have met the burden of making "substantial allegations" that they were collectively "the victims of a single decision, policy or plan" and are thus "similarly situated."

Defendant contends that Plaintiffs' pleadings and declarations do not meet the minimum threshold of establishing that they are sufficiently "similarly situated" to proceed in a representative capacity. In particular, Plaintiffs' pleadings are insufficient because they ignore Defendant's calculation and payment of employees for precisely the time that Plaintiffs contend they were not paid. As such, the Court should first allow limited merits discovery and take evidence on Defendant's lawful pay procedures prior to a decision on conditional certification and class-wide notice. Defendant contends there is no illegal policy or practice at issue here. Plaintiffs work in different departments, put on different equipment, and thus individualized inquiry is more appropriate. Defendant argues that the majority of the issues on which Plaintiffs rely to establish that they are similarly situated either are not compensable activities under the FLSA or do not apply to Farmer's Pride production employees in this case. Finally, Defendant argues that Plaintiffs have failed to establish that conditional certification would promote judicial efficiency, and that preliminary merits discovery could avoid unnecessary costs.

## III. Jurisdiction

This Court has jurisdiction over Plaintiffs' claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

## IV. Discussion

This court has the power to authorize notice in collective actions in order to set time limits for various pre-trial steps and to avoid a multiplicity of duplicative suits. *Hoffman-La Roche Inc. v. Sperling,* 493 U.S. 165, 171-73, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989).[FN2] Class actions and collective actions can often be confused with one another. In *Ruehl v. Viacom Inc.,* 500 F.3d 375, 379, n. 3 (3d Cir.2007), the Court of Appeals for the Third Circuit noted: "Most courts, ours included, have not been methodical in their use of the terms 'class action' and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 638237 (E.D.Pa.)
(Cite as: 2008 WL 638237 (E.D.Pa.))

'collective action.' The result is that numerous cases about FLSA 'collective actions' use the Rule 23 term 'class action.' " The Court acknowledged that Third Circuit decisions use the terms interchangeably, and refers to members of a "collective action" as part of a "class." *Id.*

> FN2.*Hoffman-La Roche* involved the Age Discrimination in Employment Act, which incorporates the collective action provisions of the FLSA.

*3 To be included in a collective action, plaintiffs must be "similarly situated" and give written consent. The FLSA does not define the term "similarly situated." Courts have developed a two-step process for implementing notice and determining who is "similarly situated." *Harris v. Healthcare Services Group, Inc.,* 2007 WL 2221411, *2 (E.D.Pa. July 31, 2007). The first step is conducted early in the litigation process, when the court has minimal evidence and consists of a preliminary inquiry into whether the plaintiff's proposed class consists of similarly situated employees who were collectively "the victims of a single decision, policy, or plan ...."*Ruehl,* 500 F.3d at 388. If the plaintiff meets this lenient standard, the court grants only conditional certification for the purpose of notice and discovery. *Id.,* citing *Bosley v. Chubb Corp.,* 2005 U.S. Dist. LEXIS 10974, at *5 (E.D. Pa. June 6, 2005); *see also Ruehl,* 500 F.3d at 388 (labeling the standard for conditional certification at the "notice stage" as "comparatively liberal").

The second step of this process is usually conducted after merits discovery has occurred, and consists of a specific factual analysis of each employee's claim to ensure that each proposed plaintiff is an appropriate member of the collective action. At this second stage, the court will again make a certification decision based on the "similarly situated" standard, but will require a higher level of proof than was necessary at the first stage for conditional certification. If the conditional group of plaintiffs does not meet this standard at the second stage, the group is then decertified, the opt-in plaintiffs are

dismissed without prejudice and any remaining plaintiffs are permitted to move onto the trial stage of litigation. *Id.; see also Ruehl* at 389, n. 17;*Chabrier v. Wilmington Finance, Inc.,* 2006 WL 3742774, *2 (E.D.Pa. Dec.13, 2006).

Courts have differed on the level of proof that is necessary in the first step of the inquiry. District courts in the Third Circuit have applied the "mere allegation" approach or the "modest factual showing" test to determine whether a plaintiff is entitled to preliminary certification and court-supervised notice. This is a lenient burden for the plaintiffs, where the court need not evaluate the merits of plaintiffs' claims in order for notice to be approved and disseminated to potential collective action plaintiffs. *Harris,* 2007 WL 2221411, at *3;*Chabrier,* 2006 WL 3742774, at *6.

Thus, Plaintiffs in the present case have a very lenient burden to bear at this initial stage of certification. While Defendant relies heavily on the argument that its business practices are lawful, the legality is not decided at this stage of the action. The Court does not evaluate the merits of the claim at this stage, but only considers whether Plaintiffs have shown they are similarly situated. From the affidavits and filings, Plaintiffs have met their burden and the Court shall grant Plaintiff's Motion for conditional certification. If, after future discovery, the Court finds that some Plaintiffs are not similarly situated under the FLSA, the Court will revoke conditional certification with respect to those Plaintiffs.FN3

> FN3. This approach is in some respects more even-handed than the frequent practice under Rule 23, where certification of a class puts tremendous economic pressures on the defendant. Although a Rule 23 class can be de-certified, it is not a frequent occurrence.

*4 Counsel shall discuss amongst themselves a formal schedule for notice and discovery, such as the one provided in the Order by Judge Shapiro in

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                              Page 4
Slip Copy, 2008 WL 638237 (E.D.Pa.)
**(Cite as: 2008 WL 638237 (E.D.Pa.))**

*Chabrier.*The parties will have fourteen (14) days
to file either a joint proposed notice and discovery
schedule, or if there is any disagreement, the parties
shall file separate orders with the Court.

### *ORDER*

AND NOW, this 7th day of March, 2008, for the
reasons stated in the foregoing memorandum, it is
hereby ORDERED that the Motion of Plaintiff Luz
Lugo, et. al., for Conditional Class Certification
(Doc. No. 50) is GRANTED. The parties should
discuss a notice and discovery schedule, and within
fourteen (14) days file a joint proposed order or two
separate proposed orders with the Court.

E.D.Pa.,2008.
Lugo v. Farmer's Pride Inc.
Slip Copy, 2008 WL 638237 (E.D.Pa.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 3

Westlaw.

Not Reported in F.Supp.2d                                                                                    Page 1
Not Reported in F.Supp.2d, 2005 WL 1334565 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d, 2005 WL 1334565 (E.D.Pa.))

**H**
**Bosleyv. Chubb** Corp.
E.D.Pa.,2005.
Only the Westlaw citation is currently available.
United States District Court,E.D. Pennsylvania.
Leonard BOSLEY, et al.
v.
CHUBB CORPORATION, et al.
**No. Civ.A. 04CV4598.**

June 3, 2005.

Alice W. Ballard, Law Office of Alice W. Ballard,
PC, Philadelphia, PA, for Leonard Bosley, Todd
German and Angela Kleckner on behalf of all similarly situated current and former employees.
James G. Fannon, Drinker Biddle & Reath LLP,
Philadelphia, PA, for Chubb Corporation and The
Chubb Institute, Inc.

*MEMORANDUM & ORDER*

SURRICK, J.
*1 Presently before the Court is Plaintiffs' Memorandum Of Law In Support Of Renewed And
Amended Motion To Proceed As A Collective Action And For Approval And Facilitation Of Notice
(Doc. No. 24), Defendant The Chubb Institute, Inc.
("TCI")'s [FN1] Memorandum Of Law In Opposition
To Plaintiffs' Renewed And Amended Motion To
Certify A Collective Class Of Persons "Similarly
Situated" Pursuant To 29 U.S.C. § 216(b) And For
Approval And Facilitation Of Notice (Doc. No. 25),
and Defendant Chubb Corporation's ("Chubb")
Memorandum Of Law In Support Of Its Cross-
Motion To Dismiss The Complaint Filed By
Plaintiffs And In Opposition To Plaintiff's Renewed
And Amended Motion To Certify A Collective Action And For Approval And Facilitation Of Notice
(Doc. No. 26). For the following reasons, Plaintiffs'
Motion will be granted in part and denied in part
and Defendant Chubb Corporation's Motion will be
granted.

FN1. The Chubb Institute's name has been
changed to TCI Education, Inc. Defendant
refers to itself as TCI throughout its Response.

I. BACKGROUND

Plaintiffs, former employees of TCI, worked for
TCI's Springfield, Pennsylvania campus as Admissions Representatives. (Doc. No. 16 at 1.) Plaintiffs
assert claims for unpaid overtime premiums under
the Fair Labor Standards Act of 1938 ("FLSA") and
the Pennsylvania Minimum Wage Act of 1968
("PMWA").(Id.) Plaintiffs allege that Defendants
misclassified them as "exempt" from the FLSA's
and PMWA's overtime provisions and consequently
Plaintiffs claim entitlement to overtime compensation for hours worked over forty (40) in certain
workweeks. (Id.) Plaintiffs assert that Defendants
employed them as inside salespersons and that such
employees are non-exempt from the FLSA and PM-
WA overtime provisions. (Id.) TCI asserts that
Plaintiffs were exempt employees by virtue of the
duties each Plaintiff performed as an Admissions
Representative. (Id. at 2.) Defendant Chubb asserts
that it is not a proper party to this action because it
did not employ any or all of the Plaintiffs at any
time. (Id.)

On January 13, 2004, Plaintiffs filed a Motion To
Certify A Collective Class Of Persons "Similarly
Situated" Pursuant To 29 U.S.C. § 216(b) And For
Approval And Facilitation Of Notice. (Doc. No.
13.) After a conference with counsel on March 1,
2005, we entered an Order dated March 2, 2005,
denying Plaintiffs' motion without prejudice (Doc.
No. 18), and directing Plaintiffs to conduct discovery by April 5, 2005, on matters related to preliminary certification. (Id.) On April 21, 2005, Plaintiffs
filed the instant Motion. On May 9, 2005, Defendant TCI filed its Memorandum of Law in opposition
to Plaintiffs' Motion, and Defendant Chubb filed its
Cross-Motion To Dismiss The Complaint Filed By
Plaintiff And In Opposition To Plaintiffs' Renewed

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 2
Not Reported in F.Supp.2d, 2005 WL 1334565 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d, 2005 WL 1334565 (E.D.Pa.))

And Amended Motion To Certify A Collective Action And For Approval And Facilitation of Notice. (Doc. No. 26)

## II. LEGAL STANDARD

The FLSA's collective action procedure provides:

An action to recover the liability prescribed [by the FLSA] may be maintained against any employer ... by any one of more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*2 29 U.S.C. § 216(b) (2000). There are two requirements for FLSA group plaintiffs: (1) all plaintiffs must be "similarly situated;" and (2) all plaintiffs must consent in writing to taking part in the suit. *Id.* The FLSA does not define the term "similarly situated." *See Briggs v. United States,* 54 Fed. Cl. 205, 206 (2002) ("The term 'similarly situated' is defined neither in the FLSA nor in its implementing regulations."). The FLSA also does not provide specific procedures by which claimants may opt-in. The Supreme Court has stated that "district courts have discretion ... to implement [§ 216(b) ]... by facilitating notice to potential plaintiffs."*Hoffman La-Roche, Inc. v. Sperling,* 493 U.S. 165, 169, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989).

In the absence of guidance from the Supreme Court and the Third Circuit, district courts have developed a two-tiered test to determine whether FLSA claimants are "similarly situated" for the purposes of § 216(b).*Smith v. Sovereign Bancorp, Inc.,* No. 03-2420, 2003 U.S. Dist. LEXIS 21010, at *4 (E.D.Pa. Nov. 13, 2003); *see also Goldman v. RadioShack Corp.,* No. 03-CV-0032, 2003 U.S. Dist. LEXIS 7611, at *19 (E.D.Pa. Apr. 16, 2003); *Felix de Ascencio v. Tyson Foods, Inc.,* 130 F.Supp.2d 660, 663 (E.D.Pa.2001). The first step in this test is

conducted early in the litigation process, when the court has minimal evidence. This step is a preliminary inquiry into whether the plaintiff's proposed class is constituted of similarly-situated employees.*Felix de Ascencio,* 130 F.Supp.2d at 663. At this stage, the court grants only conditional certification of the class for the purpose of notice and discovery, and this is done under a comparatively liberal standard. *Mueller v. CBS, Inc.,* 201 F.R.D. 425, 428 (W.D.Pa.2001); *Goldman,*2003 U.S. Dist. LEXIS 7611, at *19. The second step is usually conducted after the completion of class-related discovery. *Mueller,* 201 F.R.D. at 428. During the second step, the court conducts a specific factual analysis of each employee's claim to ensure that each claimant is an appropriate party. *Id.* Plaintiffs bear the burden of showing they are similarly situated to the remainder of the proposed class. *Morisky v. Pub. Serv. Elec. & Gas. Co.,* 111 F.Supp.2d 493, 496 (D.N.J.2000). The instant Motion concerns the first step of the procedure.

## III. DISCUSSION

Plaintiffs assert that they and other inside sales employees are similarly situated for notice stage purposes because they were employed in the same corporate department (the Admissions Department of TCI), they performed the same duties (inside sales), and they were victims of a single decision, policy, or plan (the misclassification of inside sales personnel). (Doc. No. 24 at 4-7.) Defendants respond that Plaintiffs' Motion should be denied because each Plaintiff's claim would require a highly fact-specific analysis of the duties that he or she actually performed; because Plaintiffs have not presented evidence that the other proposed class members worked in the same corporate department, division and location; and because Plaintiffs have not presented evidence that the other proposed class members performed the same duties or acted with the same level of discretion and independent judgment as the named Plaintiffs. (Doc. No. 25 at 4-8.)

*3 While it appears that all of our courts apply the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

two-tier framework in determining whether poten-
tial class members are "similarly situated," courts
differ in the level of proof necessary in the first step
of the inquiry. Some courts have determined that
plaintiffs need merely allege that the putative class
members were injured as a result of a single policy
of a defendant employer. *See Goldman,*2003 U.S.
Dist. LEXIS 7611, at *27 ("During this first-tier in-
quiry, we ask only whether the plaintiff and the
proposed representative class members allegedly
suffered from the same scheme."); *Felix de Ascen-
cio,* 130 F.Supp.2d at 663 ("Courts appear to re-
quire nothing more than substantial allegations that
the putative class members were together the vic-
tims of a single decision, policy or plan."); *Sperling
v. Hoffman-La Roche,* 118 F.R.D. 392, 407
(D.N.J.1988) (same), *aff'd on other grounds,*862
F.2d 439 (3d Cir.1988), *aff'd,*493 U.S. 165, 110
S.Ct. 482, 107 L.Ed.2d 480 (1989).

Other courts have applied a stricter, although still
lenient, test that requires the plaintiff to make a
"modest factual showing" that the similarly-situated
requirement is satisfied. *See Dybach v. Fla. Dep't of
Corr.,* 942 F.2d 1562, 1567-78 (11th Cir.1991)
("Before determining to exercise [its] power [to ap-
prove notice to potential plaintiffs], the district
court should satisfy itself that there are other em-
ployees ... who desire to 'opt-in' and who are
'similarly situated'...."); *Mueller,* 201 F.R.D. at 428
(requiring plaintiff to provide "a sufficient factual
basis on which a reasonable inference could be
made" that potential plaintiffs are similarly situ-
ated); *Harper v. Lovett's Buffet, Inc.,* 185 F.R.D.
358, 362 (M.D.Ala.1999) ( "Plaintiffs have the bur-
den of demonstrating that a reasonable basis for
crediting their assertions that aggrieved individuals
exist in the broad class that they propose."); *Jack-
son v. New York,* 163 F.R.D. 429, 431
(S.D.N.Y.1995) ("Plaintiffs need merely provide
some factual basis from which the court can de-
termine if similarly situated potential plaintiffs ex-
ist."); *Briggs,* 54 Fed. Cl. at 207 (requiring "modest
factual showing that [plaintiffs] are similarly-situ-
ated with other, unnamed potential plaintiffs").

In the case of *Smith v. Sovereign Bancorp., Inc.,* the
court pointed out that under the "mere allegation"
approach of *Goldman* and *Felix de Ascencio,* pre-
liminary certification is rendered automatic "as
long as the Complaint contains the magic words:
'other employees similarly situated.' "*Smith,*2003
U.S. Dist. LEXIS 21010, at *8. The court went on
to observe:

Under this rationale, any plaintiff who is denied
overtime pay may file suit under FLSA and, as long
as her complaint is well-pled, receive preliminary
class certification and send court-approved notice
forms to every one of her employer's hourly em-
ployees. This is, at best, an inefficient and over-
broad application of the opt-in system, and at worst
it places a substantial and expensive burden on a
defendant to provide names and addresses of thou-
sands of employees who would clearly be estab-
lished as outside the class if the plaintiff were to
conduct even minimal class-related discovery.
More importantly, automatic preliminary class cer-
tification is at odds with the Supreme Court's rec-
ommendation to "ascertain the contours of the [§
216] action at the outset."

*4 *Id.* (quoting *Hoffman La-Roche,* 493 U.S. at
171-72.) We find this rationale compelling. We also
note that while Plaintiffs are required to provide
some factual showing that the proposed recipients
of opt-in notices are similarly situated to the named
plaintiffs, this standard is still an "extremely lenient
standard." *Id.* at *10.

In our Order of March 2, 2005, we denied
Plaintiffs' original motion without prejudice be-
cause, even considering the lenient standard,
Plaintiffs did not provide a sufficient factual show-
ing that the proposed opt-in recipients are similarly
situated. (Doc. No. 18.) In their original motion,
Plaintiffs merely provided a Declaration from one
of the three named Plaintiffs. (Doc. No. 13 Ex. A.)
*See Santelices v. Cable Wiring,* No. 98-7489, 2001
U.S. Dist. LEXIS 6787, at *4 (S.D.Fl. Mar. 7,
2001) ("[Plaintiff] has submitted only his own affi-
davit, and thus has failed to meet the evidentiary

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1334565 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d, 2005 WL 1334565 (E.D.Pa.))

burden required [to prevail on a motion for court notification to potential plaintiffs under § 216(b).]"). However, we permitted Plaintiffs to conduct limited discovery that would allow them to provide a more substantial factual basis. In their renewed Motion, Plaintiffs have provided the following: Plaintiff Leonard Bosley's ("Bosley") Declaration stating that TCI trains its Admissions Representatives using a standard training program (Doc. No. 24 Ex. A); a 2004 "Admission Rep. Start Report" entitled "THE FINISH LINE" showing that Plaintiffs Bosley and Angela Kleckner ("Kleckner") were two of a roughly thirty-person sales force in the Admissions Department of TCI FN2(*id.*Ex. B); the Admissions Department's job description for Admissions Representatives (*id.*Ex. C); an August 10, 2004, email from Kevin Tice, Regional Director of Admissions of TCI, congratulating Plaintiffs Kleckner, Bosley, and other Admissions Representatives for the number of their enrollments (*id.*Ex. D); a copy of the Admissions Sales Training Manual TCI uses to train all Admissions Representatives (*id.*Ex. E); a copy of the Admissions Board Reports, a TCI internal summary tracking the performance of Admissions Representatives (*id.*Ex. F); and a March 26, 2005, Internet job posting for the position of Admission Representative showing no distinction between the Admissions Representative openings at various campus locations (*id.*Ex. G).

FN2. Plaintiff Todd German is not listed.

Plaintiffs emphasize that the Admissions Training Manual provides that "[t]his manual is designed to maintain consistency in admission training."(*Id.* Ex. E at 1.) Furthermore, the Admissions Board Report uses the same criteria to evaluate the performance of Admissions Representatives. (*Id.* Ex. F.)

Defendants submit three TCI employee Declarations in support of their contention that the proposed class members did not perform the same duties as the named Plaintiffs.FN3(Doc. No. 25 Ex. 2.) While this evidence may be significant after discovery, and during step two of the process, at this stage, it does not compel us to deny preliminary certification. In *Felix de Ascencio,* the court stated:

> FN3. Defendants also assert that cases involving challenges to "exempt" classification involve " 'a highly fact-specific analysis of each employee's job responsibilities' " that are not appropriate for class treatment. (Doc. No. 25 at 5 (citing *Morisky,* 111 F.Supp.2d at 498 ("Exemption determinations are fact-intensive inquiries which frequently turn on the particular duties of specific employees."))). Defendants neglect to point out that the court in *Morisky* did not conduct a step one analysis. *Morisky,* 111 F.Supp.2d at 498. Rather, the court pointed out:

>> This case is somewhat different. It is clearly beyond the first tier of the above analysis, as over 100 potential plaintiffs have already opted into this lawsuit. Further, pursuant to the most recent scheduling order ... discovery was to have been completed ... well before the present motion was filed. It is appropriate, therefore, for the Court to apply a stricter standard in its analysis of the question before it.

> *Id.* at 497-98.In the instant case, in contrast, we do apply a first tier analysis. The fact-intensive inquiry applies during a second-tier analysis. *See Evans v. Berry,* No. 03-CV-0438, 2004 U.S. Dist. LEXIS 15716, at *10 (M.D. Pa. June 17, 2004) ("The Defendant argues that a particularized factual analysis is necessary as to each Plaintiff.... I wish to make it clear that I am not deciding that at this point in the proceedings that Defendant is wrong. It may well be that Defendant is right.").

*5 Defendant submits detailed declaration and information ... to show that the potential plaintiffs are

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 5
Not Reported in F.Supp.2d, 2005 WL 1334565 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 1334565 (E.D.Pa.))**

not similarly situated to the representative Plaintiffs. While this information may play a more significant role after discovery and during an analysis of the second and final similarly situated tier, Plaintiffs have advanced sufficient evidence to meet their low burden at this first tier of the similarly situated question. At this stage of the proceedings, before discovery is completed, Plaintiffs cannot counter every assertion made by the Defendant.... [Forcing] Plaintiffs to counter every one of Defendant's assertions concerning the similarly situated question at this early stage of the action would "condemn any large class claim under the [FLSA] to a chicken-an-egg limbo."
130 F.Supp.2d at 663 (E.D.Pa.2001) (quoting *Sperling,* 118 F.R.D. at 406). Under all of the circumstances, we conclude that Plaintiffs have now satisfied the lenient first tier factual showing for pretrial certification.

*A. Notice Form*

In our Order of March 2, 2005, we stated that "Counsel shall meet and confer with regard to the content of the proposed notice to be sent to potential plaintiffs."(Doc. No. 18.) Plaintiffs have included a proposed Notice with their Motion. Defendants state that "Plaintiffs' counsel have totally ignored the Court's instruction that they meet and confer with TCI counsel concerning the content of any revised Notice that Plaintiffs seek to provide to putative class members."(Doc. No. 25 at 4.) Our Order provided that Counsel shall meet and confer with regard to the proposed notice and then submit the proposed notice to the Court. When counsel have complied with our Order, we will consider the proposed notice.

*B. Defendant Chubb's Cross-Motion To Dismiss*

Defendant Chubb has filed a Cross-Motion to Dismiss the Complaint in which it asserts that Plaintiffs were never employed by Chubb, and therefore Plaintiffs have improperly included

Chubb as a Defendant. (*Id.*) During the March 1, 2004, Conference, we instructed Plaintiffs to determine whether Chubb is a viable Defendant in this case. Plaintiffs failed to even mention this issue in their Motion. Moreover, Plaintiffs have failed to respond to Defendant Chubb's Motion to Dismiss. Defendant Chubb's Motion will be granted as unopposed. FN4

> FN4. We note that Defendants correctly state that a parent corporation is not, under normal circumstances, liable as the employer of its subsidiaries' employees. (Doc. No. 26 at 8 (citing *Marzano v. Computer Science Corp.,* 91 F.3d 497, 513 (3d Cir.1997) ("[W]hen a subsidiary hires employees, there is a strong presumption that the subsidiary, not the parent company, is the employer."(citation omitted)).)

IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion will be granted in part and denied in part and Defendant Chubb's Motion will be granted.

An appropriate Order follows.

*ORDER*

AND NOW, this 3rd day of June, 2005, it is ORDERED as follows:

1. Plaintiffs' Motion To Proceed As A Collective Action And For Approval And Facilitation Of Notice (Doc. No. 24, No. 04-CV-4598) is GRANTED in part and DENIED in part.

2. Defendant Chubb Corporation's Cross-Motion To Dismiss The Complaint Filed By Plaintiffs And In Opposition To Plaintiff's Renewed And Amended Motion To Certify A Collective Action And For Approval And Facilitation Of Notice (Doc. No. 26, No. 04-CV-4598) is GRANTED.

*6 3. Counsel shall meet and confer with regard to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 6
Not Reported in F.Supp.2d, 2005 WL 1334565 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 1334565 (E.D.Pa.))**

the content of the proposed notice to be sent to the
potential plaintiffs and re-submit the proposed no-
tice to the Court within twenty (20) days.

IT IS SO ORDERED.

E.D.Pa.,2005.
Bosley v. Chubb Corp.
Not Reported in F.Supp.2d, 2005 WL 1334565
(E.D.Pa.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 4

Westlaw.

Slip Copy                                                                                          Page 1
Slip Copy, 2006 WL 1455781 (D.N.J.), 11 Wage & Hour Cas.2d (BNA) 1017
**(Cite as: 2006 WL 1455781 (D.N.J.))**

**H**
Armstrong v. Weichert Realtors
D.N.J.,2006.

United States District Court,D. New Jersey.
William ARMSTRONG, Individually and on Be-
half of All Others Similarly Situated, Plaintiffs,
v.
WEICHERT REALTORS and Weichert Financial
Services, Defendants.
**Civil Action No. 05-3120 (JAG).**

May 19, 2006.

Jonathan I. Nirenberg, Resnick Nirenberg & Sieg-
ler, Roseland, NJ, for Plaintiffs.
Jennifer A. Rygiel-Boyd, Ogletree Deakins Nash
Smoak & Stewart, Morristown, NJ, for Defendants.

OPINION

GREENAWAY, JR., U.S.D.J.
*1 This matter comes before the Court on the mo-
tion for class certification by Plaintiff William
Armstrong, pursuant to the Fair Labor Standards
Act ("FLSA"), 29 U.S.C. § 216(b), and the motion
for summary judgment, pursuant to FED. R. CIV.
P. 56, by Defendants Weichert Realtors and Weich-
ert Financial Services (collectively, "Defendants").
For the reasons set forth below, Plaintiff's motion
will be denied, and Defendants' motion will be
granted.

BACKGROUND

William Armstrong alleges that he was employed
as a loan officer by Weichert Realtors and Weichert
Financial Services. He contends that Defendants
have a policy requiring loan officers to work over-
time without paying proper compensation, in viola-
tion of the FLSA. Armstrong alleges that there is a
class of similarly situated loan officer employees
who may wish to opt in and join this lawsuit.

*LEGAL STANDARD*

I. *Class certification*

Class actions under the FLSA are governed by 29
U.S.C. § 216(b): "no employee shall be a party
plaintiff to any such action [under the FLSA] unless
he gives his consent in writing to become such a
party and such consent is filed in the court in which
such action is brought."29 U.S.C. § 216(b). For an
action to proceed as a collective action, § 216(b)
sets two basic requirements: (1) class members
must be "similarly situated" and (2) members must
affirmatively consent to join the action.

Neither the Third Circuit nor the Supreme Court
have interpreted the "similarly situated" require-
ment of § 216(b), but district courts in the Third
Circuit have developed a two-stage test. *Moeck v.
Gray Supply Corp.,*2006 U.S. Dist. LEXIS 511,
11-13 (D .N.J.2006); *Morisky v. Public Serv. Elec.
& Gas Co.,* 111 F.Supp.2d 493 (D.N.J.2000). The
first stage is the notice stage. At this stage, the
court determines whether notice should be given to
potential class members, and the court's determina-
tion typically results in conditional certification of a
representative class. *Id.* at 497.At the second stage,
when the court has more evidence and the case is
ready for trial, the court makes a final certification.
*Id.*

Although there is no controlling authority that
defines the quantum of evidence that must be
presented in order for a court to grant a motion for
conditional class certification, the parties agree that
this issue should be determined under the "modest
factual showing" standard. (Pl.'s Reply Br. 1.)

*DISCUSSION*

I. Plaintiff's motion for class certification

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 1455781 (D.N.J.), 11 Wage & Hour Cas.2d (BNA) 1017
**(Cite as: 2006 WL 1455781 (D.N.J.))**

A. *Has Plaintiff made a modest factual showing that there is a class of similarly situated Plaintiffs?*

Plaintiff offers the one-page declaration of William Armstrong as the sole piece of evidence in support of the motion for class certification. This is insufficient to constitute a modest factual showing.

To make a meaningful decision about whether certain people are similarly situated, this Court must have, as a factual foundation, information about who is in the potential class and the basis for inferring that the potential members are similarly situated. Armstrong's declaration does not provide this. Armstrong makes vague, general statements about "all Loan Officers employed by Weichert Realtors," but does not define who he is referring to and how he has knowledge of them. (Armstrong Dec. ¶ 5.) This Court cannot determine, from this declaration, whether Armstrong actually knew other particular officers who were required to perform unpaid overtime work, and what he knew specifically about their unpaid work. Conspicuously absent from the declaration is any specific statement about even one particular loan officer known to Armstrong as having been required to perform unpaid overtime work. Plaintiff thus offers no evidence that other loan officers were required to perform unpaid overtime work.

**\*2** Nor does Armstrong's statement provide a basis to generalize to other Weichert offices. Armstrong's statement does not mention any loan officers outside of Plaintiff's office, no less state knowledge of them. Armstrong provides no factual foundation for his statement that all other loan officers were required to work unpaid overtime. This Court has no factual basis to infer that there are loan officers in other offices subject to such requirements.

Lastly, Armstrong's statement provides no factual basis to support the inference that Weichert has the company policy that Plaintiff claims. Armstrong provides no factual foundation for his statement that Weichert Human Resources policies mandated

that loan officers not be paid overtime. This appears to be a conclusory allegation; in the absence of any supporting factual assertions, it does not allow this Court to infer the existence of a company policy that would be expected to result in a class of similarly situated loan officers.

At best, Armstrong's declaration provides a factual basis for inferring that one loan officer-Armstrong-in one office was required to work unpaid overtime. It does not provide a basis to infer that a class of similarly situated loan officers exists.

The risk of allowing conditional certification on such minimal evidence is that it can facilitate class action abuse. In the key case on this issue, *Hoffmann-La Roche, Inc. v. Sperling,* 493 U.S. 165, 171 (1989), the Supreme Court observed that "class actions serve important goals but also present opportunities for abuse."Requiring a Plaintiff to make a modest factual showing that others have suffered the same injury works to prevent class action fishing expeditions.

Plaintiff has failed to make a modest factual showing that a class of similarly situated loan officers exists. Plaintiff's motion for class certification will be denied.

B. *Additional materials*

Plaintiff submitted a reply brief with two exhibits attached, alleged to be Weichert's job postings and a list of loan officers. Plaintiff contends that the list of loan officers "prove[s] that these loan officers are subject to similar policies and practices and share similar job duties."(Pl.'s Reply Br. 6.) In response, Defendants sought leave to file a rebuttal brief.

Defendants' request for leave to file a rebuttal brief will be denied because there is nothing that needs rebuttal. Plaintiff's additional submissions are meaningless. Plaintiff has submitted unidentified and unauthenticated pages. This Court cannot derive any information from them.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Moreover, Plaintiff's claims about the meaning of these exhibits are farfetched. Plaintiff contends that exhibit B provides a list of loan officers. (Pl.'s Reply Br. Ex. B.) Even if valid and authentic, the pages in exhibit B provide a list of names identified as "Gold Services Manager[s]." Plaintiff has provided no basis for this Court to conclude that these names represent loan officers. The list provides no information from which this Court could make any inferences about employment policies and practices. Nor could this Court infer how these purported policies and practices affect these employees. Thus, even if this Court were inclined to consider this new material, it would provide no additional factual support for Plaintiff's motion.

*3 After Defendants filed a request for leave to file a rebuttal brief, Plaintiff filed an opposition brief with further new material. Submission of this brief was in violation of the federal and local civil rules, and this brief has been excluded from consideration.

II. Defendants' motion for summary judgment

Defendants have moved for summary judgment, pursuant to FED. R. CIV. P. 56, as to Weichert Co., d/b/a Weichert Realtors. Defendants contend that Weichert Co. cannot have any liability under the FLSA because Weichert Co. never employed Plaintiff or any mortgage loan officers; Defendants rely on the affidavit of Sanford Epstein, Director of Human Resources for Weichert Co., as evidence of this. (Epstein Aff. ¶¶ 8, 9.) Plaintiff did not respond to Defendants' motion, and this Court infers that Plaintiff concedes that Defendants are correct. Defendants' motion for summary judgment, as to Weichert Co., will be granted.

### CONCLUSION

For the reasons stated above, this Court finds that Plaintiff has not made a modest factual showing that a class of similarly situated potential plaintiffs

exists. Plaintiff's motion for class certification is denied. Defendant's motion for leave to file a rebuttal brief is denied. Defendants' motion for summary judgment, pursuant to FED. R. CIV. P. 56, as to Weichert Co., is granted.

D.N.J.,2006.
Armstrong v. Weichert Realtors
Slip Copy, 2006 WL 1455781 (D.N.J.), 11 Wage & Hour Cas.2d (BNA) 1017

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## Complaints and Other Initiating Documents

1:04-cv-01391-JJF Ward v. Taylor, et al
PaperDocuments, VACANTJUDGESHIP

### U.S. District Court

### District of Delaware

## Notice of Electronic Filing

The following transaction was entered by Martin, Jeffrey on 6/10/2008 at 12:19 PM EDT and filed on 6/10/2008

**Case Name:**    Ward v. Taylor, et al
**Case Number:**    1:04-cv-1391
**Filer:**    Timothy Ward
**Document Number:** 107

**Docket Text:**
**AMENDED COMPLAINT against all defendants- filed by Timothy Ward. (Attachments: # (1) Certificate of Service)(Martin, Jeffrey)**

**1:04-cv-1391 Notice has been electronically mailed to:**

Stephani J. Ballard    stephani.ballard@state.de.us, Jennifer.Mitchell@state.de.us

Herbert G. Feuerhake    herblaw@verizonmail.com

Jeffrey K. Martin    jmartin@martinandwilson.com, bdolphin@martinandwilson.com, lmccloskey@martinandwilson.com

Daniel L. McKenty    dmckenty@hfddel.com

Daniel L. McKenty    dmckenty@hfddel.com, nvangorder@hfddel.com

**1:04-cv-1391 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=6/10/2008] [FileNumber=580606-0]
[8cfda1aa6ea4f8597c7e0581d95c9b1ab67a54d0614a4f38ffa8be0ecd4d946deaeb

3204d000bd2f3c4c0cae085117d3ab9ff16b81d456db7f54730d6c796806]]
**Document description:** Certificate of Service
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=6/10/2008] [FileNumber=580606-1]
[41ae72b7f7d45d92462de72aea2ebbe3a99babd14caa56b9639a13b6f4298de0b39d
499363117856c65474ca5ca8f09b7c6665a48647b5fc1fbc28da5277c484]]

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF DELAWARE

KATHRYN L. FITZGIBBON,         *
LAUREN M. FLEMING, and       *
ALL SIMILARLY SITUATED CURRENT *
AND FORMER EMPLOYEES OF      *
ING BANK, fsb, AND ITS WHOLLY  *
OWNED SUBSIDIARIES,           *
       Plaintiffs,                *
                               *         C.A. NO. 07-735 (JJF)
                               *
           v.                     *
                               *
ING BANK, fsb, (a Delaware corporation), *
and ALL OTHER WHOLLY OWNED    *         JURY TRIAL DEMANDED
SUBSIDIARIES OF ING BANK, fsb,    *
WHICH HAVE EMPLOYED         *
SIMILARLY  SITUATED CURRENT    *
AND FORMER EMPLOYEES SINCE    *
November 15, 2004,              *
                               *
       Defendants.             *

## CERTIFICATE OF SERVICE

I, Timothy J. Wilson, the undersigned counsel for Plaintiff in the above-captioned

case, hereby certify that the foregoing *Plaintiff's Reply in Support of Their Motion to*

*Proceed as a Collective Action, To Facilitate Notice and to Require Defendant to*

*Provide Information* was filed via CM/EMF on June 13, 2008 to the following:

Darryl A. Parson, Esquire
Drinker Biddle & Reath LLP
1100 N. Market Street
Wilmington, DE 19801-1254

MARTIN & WILSON, P.A.

TIMOTHY J. WILSON, ESQUIRE
DE Bar I.D. No.: 4323
1508 Pennsylvania Ave
Wilmington, DE 19806
(302) 777-4681
twilson@martinandwilson.com
*Attorney for Plaintiffs*